# EXHIBIT A

# Electronic Commerce Agreement

This agreement (hereinafter "Agreement") is made and entered into between ___OJ Commerce, LLC___ (hereinafter referred to as "Company") and Ashley Furniture Industries, Inc., a Wisconsin corporation with its principal place of business at One Ashley Way, Arcadia, Wisconsin 54612 (hereinafter referred to as "Ashley")

WHEREAS, Company wishes to receive certain information and certain confidential and proprietary information from Ashley, which includes but is not limited to information necessary to determine availability and pricing of Ashley's products; Company's current orders, previous order history, current account balance, and historic account balance and exclusive product photographs, advertising materials, and terms and conditions of transactions (hereinafter collectively the "Information"), and

WHEREAS, Ashley wishes to disclose the Information to Company subject to the terms and conditions of this Agreement in order to facilitate the business relationship of Ashley and Company for the mutual benefit of the parties, and

WHEREAS, Ashley and Company also desire, for the mutual benefit of the parties, to facilitate purchase and sale transactions (hereinafter "Transactions") by electronically transmitting and receiving data in agreed formats in substitution for conventional paper-based documents and to ensure that such Transactions are legally valid and enforceable.

NOW, THEREFORE, in consideration of the mutual promises herein set forth, the parties agree as follows

1   **ELECTRONIC COMMERCE.** Subject to the terms and conditions of this Agreement, the parties agree to disclose certain information to each other, and Ashley and Company agree to electronically transmit and receive data and information, in substitution for conventional paper-based documents, using one or more of the following methods (hereinafter collectively referred to as "Electronic Commerce")

A   **Internet Electronic Data Interchange**

i   Internet Electronic Data Interchange (hereinafter referred to as "Internet EDI") shall mean the exchange of data and information between the parties using the "internet" or "world-wide-web" via an internet site operated by Ashley or its contractors and shall consist of two types of data exchanges  i) data and information sent without using Special Security (hereinafter "SS") and ii) data and information sent using SS

ii   "SS" shall mean security procedures which assure the authenticity, integrity, and source of electronically transmitted data, whether through software or a third-party including but not limited to a certificate authority (hereinafter "CA") which uses the public and private key encryption method, as well as other encryption methods (any such third-party shall hereinafter be referred to as a "SS Provider")

B   **Non-Internet Electronic Data Interchange**

i   Non-Internet Electronic Data Interchange (hereinafter referred to as "Non-Internet EDI") shall mean the exchange of data and information between the parties by means other than using the "internet" or "world-wide-web" and shall consist of two types of data exchanges  i) data and information sent using a Value Added Network (hereinafter referred to as "VAN") and ii) data and information sent using Ashley's direct-dial electronic data interchange (hereinafter referred to as "Direct-dial EDI")

ii   "VAN" shall mean a third party network provider which hosts data and information from Ashley and Company and makes it available for use by the other party

2   **PROPRIETARY INTEREST**   Nothing in this Agreement shall be construed to grant Company a license to any information disclosed or to any patents, patent applications, copyrights, trademarks, or tradenames derived from the Information disclosed   Company specifically agrees and understands that all products or any of the ideas and expressions related to Electronic Commerce and all physical embodiments thereof and material developed in relation thereto by Ashley pursuant to this Agreement or any other agreement between the parties are and shall remain the property of Ashley   Software developed independently by Company for its own internal use in processing and integrating data received through Electronic Commerce shall become and remain the property of Company   Such software shall be considered Confidential Information under the terms of this Agreement.

3   **THIRD-PARTY SOFTWARE**   Ashley may provide to Company software licensed to Ashley by various third-party software providers (hereinafter "Third-Party Software")   Company acknowledges that Ashley provides this Third-Party Software pursuant to a license agreement between the Third-Party Software provider and Ashley; and Company agrees that Ashley provides this Third-Party-Software to Company for the sole and exclusive use of Company, and that Company shall not give, provide, sell, or distribute the Third-Party Software to any third-party   Upon the termination of this Agreement, Company agrees to either return the Third-Party Software to Ashley or destroy any copies of the Third-Party Software in Company's possession

4   **TERM AND TERMINATION**   This Agreement shall remain in effect until terminated by either party giving a written notice of termination to the other party   The notice shall specify the effective date of termination and shall be sent by facsimile transmission to the fax number set forth below the signature line of the party to this Agreement who will receive the notice   The termination of this Agreement shall not affect any Transaction entered into prior to the effective date of termination nor any of the respective duties and obligations of the parties under this Agreement prior to the effective date of termination

5   **COMPANY'S DUTIES AND LIABILITY**

A   **Technical Site Administrator**   If Company utilizes Internet EDI, Company will appoint one employee as a Technical Site Administrator ("TSA"), to administer Internet EDI for Company   The TSA will have the following responsibilities

i   determining the "level" of access to data and information for each employee who will have access to Internet EDI, including but not limited to access to order entry screens,

ii   applying to Ashley for access to Internet EDI for each employee,

iii   terminating a password in the event an employee of Company with Internet EDI access leaves Company's employ, or in the event of a breach or potential breach of Internet EDI access and/or confidentiality, TSA shall also notify Ashley immediately in those instances,

2

iv maintaining site contact information within the Internet EDI system as required by Ashley; this will include, but not be limited to, name, address, phone number, E-mail address of the Chief Financial Officer, Chief Logistic Manager, Chief Executive Officer, and TSA, and

v ensuring the Company's compliance with all procedures and security measures required by Ashley and any SS Provider, if any

B **Non-Internet EDI** If Company utilizes Non-Internet EDI, Company shall comply with the procedures for administration and security of Non-Internet EDI required by the VAN and/or Ashley

C **Third-Party Access to Electronic Commerce** Company will not permit any third party to use Electronic Commerce Each employee from Company utilizing Electronic Commerce will be required to furnish his/her Social Security number This Social Security number will be used for employment verification to confirm the status as an employee of Company and the last four digits of same will be used as identification when a call is placed to the Electronic Commerce help desk

D **Liability for Unauthorized Access** Company acknowledges that it voluntarily enters into this Agreement and willingly agrees to assume all risks involving a breach of accessibility and confidentiality by i) the public utilizing a terminal or work station operated by Company, ii) Company's employees, or iii) Company's former employees if Company fails to terminate the former employee's password as required by this Agreement, including without limitation all liability related to orders transmitted to and accepted by Ashley

E **Confidentiality of Passwords** Company will ensure that its employees will not share passwords with any other person, whether employees of Company or not, TSA, or a Company representative if Company has no TSA, will immediately notify Ashley if an employee is sharing his/her password and will immediately terminate that employee's password

6 **PREREQUISITES.**

A **Documents, Standards.** i Each party may electronically transmit to or receive from the other party the following (herein collectively referred to as "Documents")

a) if the Company utilizes Internet EDI, transactions sets listed in the Appendix for Internet EDI,

b) if the Company utilizes VAN transaction sets listed in the Appendix for "Non-Internet EDI—VAN"

c) if the Company utilizes Direct-dial EDI, transactions sets listed in the Appendix for Non-Internet EDI—Direct-dial EDI" and

d) transaction sets that the parties by written agreement add to the Appendix

ii Certain Documents transmitted via Internet EDI only shall be sent using SS, as specified in the Appendix, and shall not be considered Documents unless properly transmitted using the SS required by this Agreement

iii Any transmission of data or information pursuant to Electronic Commerce that is not a Document shall have no force or effect between the parties

iv All Documents shall be transmitted in accordance with the terms and condition of this Agreement and Appendix and with the standards and published industry guidelines set forth in the Appendix, and any Document which is not so transmitted shall have no force or effect between the parties

B **Third-Party Service Providers - Internet EDI.**

i If Company utilizes Internet EDI, Documents will be transmitted electronically to each party, as specified in this Agreement and Appendix, including the SS to be used, if any, either directly or through any third-party service provider ("Provider") with which either party may contract and the SS Provider set forth in the Appendix, if any

ii Each party shall be responsible for the costs of any Provider or SS Provider with which it contracts, unless otherwise set forth in the Appendix

iii Each party shall be liable for the acts or omissions of its Provider, if any, or any SS Provider while transmitting, receiving, storing or handling Documents, or performing related activities, for such party; provided, that if both the parties use the same Provider or SS Provider to effect the transmission and receipt of a Document, the originating party shall be liable for the acts or omissions of such Provider or SS Provider as to such Document

C **Third-Party Service Providers - VAN.**

i If Company utilizes a VAN, Documents will be transmitted electronically to each party, as specified in this Agreement and Appendix, through any third-party VAN service provider ("VAN Provider") with which either party may contract Either party may modify its election to use not use, or change a VAN Provider upon 30 days prior written notice to the other party

ii Each party shall be responsible for the costs of any VAN Provider with which it contracts, unless otherwise set forth in the Appendix

iii Each party shall be liable for the acts or omissions of its VAN Provider, if any, while transmitting, receiving, storing or handling Documents, or performing related activities for such party; provided, that if both the parties use the same VAN Provider to effect the transmission and receipt of a Document, the originating party shall be liable for the acts or omissions of such VAN Provider as to such Document

D **System Operations.** Each party at its own expense, shall provide and maintain the equipment, software services and testing necessary to effectively and reliably transmit and receive data, information, and Documents using Electronic Commerce

E **Security Procedures.** Each party shall properly use those security procedures including those specified in this Agreement and the Appendix, if any, that are reasonably sufficient to ensure that all transmissions of Documents are authorized, complete, accurate, and secure against being altered in the course of transmission and to protect its business records and data from improper access Each party shall be liable to the other for the failure of its employees to properly use the specified security procedures

3

F **Signatures.**

i For use with Non-Internet EDI and Internet EDI without SS, each party shall adopt as its signature an electronic identification consisting of symbol(s) or code(s) that are to be affixed to or contained in each Document transmitted by such party ("Signatures"). Each party agrees that any Signatures of such party affixed to or contained in any transmitted Document shall be sufficient to verify that such party originated such Document. Neither party shall disclose to any person the Signature of the other party.

ii When using SS, the parties agree that the signatures created for each party by the encryption method utilized by the SS and/or SS Provider (herein "Digital Signatures") when contained in any transmitted Document shall be sufficient to verify that such party originated the Document provided that the recipient can accurately determine using the signer's public key a) whether the Document was created using the signer's private key and b) whether the initial Document has been altered since the Document was created.

7 **TRANSMISSIONS.**

A **Proper Receipt.** Documents shall not be deemed to have been properly received, and no Documents shall give rise to any obligation, until accessible to the receiving party at such party's receipt Computer.

B **Verification.** Upon proper receipt of any Document, the receiving party shall promptly and properly transmit a functional acknowledgement in return, unless otherwise specified in the Appendix.

C **Acceptance.** Acceptance by Ashley of all Purchase Orders is required and any such Purchase Order that has been properly received by Ashley shall not give rise to any obligation unless and until Company has properly received in return an Acceptance Document (as specified in the Appendix) from Ashley. If acceptance of any other Document is required by the Appendix, any such Document that has been properly received shall not give rise to any obligation unless and until the party initially transmitting such Document has properly received in return an Acceptance Document.

D **Garbled Transmissions.** If any properly transmitted Document is received in an unintelligible or garbled form, the receiving party shall promptly notify the originating party (if identifiable from the received Document) in a reasonable manner. In the absence of such a notice, the originating party's records of the contents of such Document shall control.

E **Retention of Documents.** Each party shall maintain a data log containing each Document, Acceptance Document, and functional acknowledgment, sent or received without modification for a period of six (6) years from the date of the Document, Acceptance Document, and functional acknowledgement was either sent or received. This obligation shall survive the termination of this Agreement for a period of six (6) years from the date of last transmission between the parties involving Electronic Commerce.

8 **TRANSACTION TERMS.**

A **Confidentiality.** Unless specified otherwise in the Appendix, Information contained in any Document shall be considered Confidential Information.

B **Validity, Enforceability.**

i This Agreement has been executed by the parties to evidence their mutual intent to create binding purchase and sale obligations pursuant to the electronic transmission and receipt of Documents specifying certain of the applicable terms.

ii Any Document properly transmitted pursuant to this Agreement shall be considered, in connection with any Transaction or this Agreement, to be a "writing" or "in writing", and any such Document when containing, or to which there is affixed, a Signature or Digital Signature ("Signed Documents") shall be deemed for all purposes to have been "signed" and to constitute an "original" when printed from electronic files or records established and maintained in the normal course of business.

iii The conduct of the parties pursuant to this Agreement, including the use of Signed Documents properly transmitted pursuant to this Agreement, shall, for all legal purposes, evidence a course of performance accepted by the parties in furtherance of this Agreement.

iv The parties agree not to contest the validity or enforceability of Signed Documents under the provisions of any applicable law relating to whether certain agreements be in writing and signed by the party to be bound thereby. Signed Documents, if introduced as evidence on paper in any judicial, arbitration, mediation or administrative proceedings, will be admissible as between the parties to the same extent and under the same conditions as other business records originated and maintained in documentary form. Neither party shall contest the admissibility of copies of Signed Documents under either the business records exception to the hearsay rule or the best evidence rule of the basis that the Signed Documents were not originated or maintained in documentary form.

C **TERMS AND CONDITIONS.** All Transactions contemplated by this Agreement subsequent to the execution of this Agreement shall be controlled and governed by Ashley's Standard Terms and Conditions of Sale (hereinafter referred to as "Standard Terms and Conditions"), attached hereto as Exhibit A and incorporated herein by reference. Any terms and conditions contained in a purchase order form, or other form submitted by Company to Ashley with any order, shall be automatically amended, without notice, and without further action by the parties to this Agreement, to be identical to the Standard Terms and Conditions.

9 **GOVERNING LAW/CHOICE OF VENUE.** This Agreement and all Transactions shall be governed by, and construed in accordance with, the internal laws of the State of Wisconsin. The Company consents to the jurisdiction of any local or state court located within the State of Wisconsin and waives any objection which it may have based on improper venue or forum inconvenience to the conduct of any proceeding in any such court.

10 **WARRANTY.** ASHLEY'S INTERNET SITE AND ITS DIRECT-DIAL EDI SYSTEM AND SOFTWARE ARE PROVIDED ON AN "AS IS" BASIS. ASHLEY MAKES NO WARRANTIES, AND COMPANY RECEIVES NO REPRESENTATIONS AND WARRANTIES OF ANY KIND, WITH RESPECT TO THE INTERNET SITE AND ITS CONTENT, ITS DIRECT DIAL EDI SYSTEM AND SOFTWARE, AND ELECTRONIC COMMERCE IN GENERAL, AND SPECIFICALLY THE ELECTRONIC COMMERCE SYSTEM AND SOFTWARE. ASHLEY EXPRESSLY DISCLAIMS ALL SUCH REPRESENTATIONS AND WARRANTIES INCLUDING BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

4

11  **LIMITATION ON DAMAGES**
NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOST PROFITS, ARISING FROM OR AS A RESULT OF ANY DELAY, OMISSION OR ERROR IN THE ELECTRONIC TRANSMISSION OR RECEIPT OF ANY DOCUMENT PURSUANT TO THIS AGREEMENT EVEN IF EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES

12  TAXES  In the event any taxing agency, federal, state or local, imposes a tax upon the electronic data transmitted by the use of the Electronic Commerce software then payment for said taxes shall be the sole responsibility of Company

13  SEVERABILITY  Any provision of this Agreement that is determined to be invalid or unenforceable will be ineffective to the extent of such determination without invalidating the remaining provisions of this agreement or affecting the validity or enforceability of such remaining provisions

14  FORCE MAJEURE  No party shall be liable for any failure to perform its obligations in connection with any transaction or Document, where such failure results from an act of God or other cause beyond such party's reasonable control (including, without limitation, any mechanical, electronic or communications failure) that prevents such party from transmitting or receiving any Documents

15  INTERPRETATION

A  Complete Agreement, Modification  Each party acknowledges that it has read this Agreement in its entirety (including the Appendix and the Exhibit A Standard Terms and Conditions), understands it, and agrees to be bound by its terms  This Agreement constitutes the complete agreement of the parties relating to the matters specified in this Agreement and supersedes and merges all prior proposals, understandings, representations and agreements, whether oral or written, with respect to such matters  No oral modification or waiver of any of the provisions of this Agreement shall be binding on either party and this Agreement may not be modified or altered except by written instrument duly executed by both parties  No obligation to enter into any Transaction is to be implied from the execution or delivery of this Agreement. This Agreement is for the benefit of, and shall be binding upon, the parties and their respective successors and assigns

B  Limitation on Suits  No action, regardless of form, arising out of this Agreement may be brought by Company more than two years after the cause of action has arisen

C  No Assignment  This Agreement is not assignable by either party

D  Waiver  The waiver or failure of Ashley to exercise in any respect any right provided for herein shall not be deemed a waiver of any further right hereunder

E  Titles  The titles used herein are for the convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement

F  Appendix and Exhibits  The Appendix and Exhibit A referred to in this Agreement are attached to this Agreement and their terms are incorporated into this Agreement by reference

G  Recitals  The Recitals are hereby incorporated in this Agreement, constitute a part of this Agreement, and are made a part of this Agreement fully and completely as if set out herein in their entireties

5

Agreement dated this 14 day of May 2013

**Agreed to**

ASHLEY FURNITURE "to be signed by an Executive of Ashley"

BY _____

Signature _____

Fax No ___608-323-6045___ Do Not Fax this agreement.

**COMPANY**

BY OJ Commerce, LLC

Signature _____

Customer No 3354200

Telephone No 954-519-2555   Fax No _____

Address 1700 NW 84 St STE 460

City Fort Lauderdale   State FL   Zip 33309

E-Mail Address info@ojcommerce.com

Company URL www.ojcommerce.com

PPENDIX

Selected standards include, as applicable, all data dictionaries, segment dictionaries, and transmission controls referenced in those standards, but include only the Transactions Sets listed in the DOCUMENTS section of category below. The provisions of the Agreement (including this Appendix) shall control in the event of any conflict with any listed guidelines

## INTERNET EDI

Standards: specify ALL applicable standards (and the issuing organization, if any) N/A

Documents

| Ashley s Document | Acceptance Document Required Yes/No | Confidential Yes/No | Special Security Required Yes/No |
|---|---|---|---|
| Invoices | No | Yes | No |
| Purchase Order | Yes | Yes | Yes |
| Functional Acknowledgment | No | No | No |

Special Security ("SS") procedures: Certificate Authority-VeriSign Certificate, 128 bit encryption

SS Provider: VeriSign

Specify ALL published industry guidelines: SET

## NON-INTERNET EDI—VAN

Standards: specify ALL applicable standards (and the issuing organization, if any) ANSI ASC X 12

Documents.

| Trans Set No. | Ashley s Document | Acceptance Document Required Yes/No | Confidential Yes/No |
|---|---|---|---|
| 204 | Motor Carrier Shipment Information | No | No |
| 810 | Invoices | No | Yes |
| 812 | Credit/Debit Adjustment | No | Yes |
| 820 | Payment Order/Remittance Advice | No | Yes |
| 846 | Inventory Advice | No | No |
| 850 | Purchase Order | Yes | Yes |
| 855 | Purchase Order Acknowledgment (Acceptance Document) | No | Yes |
| 860 | Purchase Order Change | Yes | Yes |
| 864 | Text Message | No | No |
| 996 | File Transfer | No | No |
| 997 | Functional Acknowledgment | No | No |

VAN PROVIDER used by Ashley: Advantis

VAN PROVIDER used by Company: Company shall provide this information to Ashley at least ten (10) days prior to its using a VAN.

Specify ALL published industry guidelines N/A

## NON-INTERNET EDI—DIRECT DIAL EDI

Standards: specify ALL applicable standards (and the issuing organization, if any) N/A

Documents

| Ashley s Document | Acceptance Document Required Yes/No | Confidential Yes/No |
|---|---|---|
| Invoices | No | Yes |
| Purchase Order | Yes | Yes |
| Functional Acknowledgment | No | No |

Specify ALL published industry guidelines N/A

7

# EXHIBIT A
## STANDARD TERMS AND CONDITIONS OF SALE

1. **Capitalized Terms.** Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Electronic Commerce Agreement executed by the parties

2. **Exclusive Terms.** These Standard Terms and Conditions of Sale (hereinafter called "Terms and Conditions") shall govern and control all Transactions between Company and Ashley These Terms and Conditions supersede all prior oral and written statements of any kind whatsoever made by the parties and their representatives regarding the subject matter of these Terms and Conditions. All terms and conditions contained in the purchase order submitted by Company or elsewhere which are different from, in addition to, in conflict with, or vary the terms hereof are hereby objected to and shall not be binding on Ashley and shall be automatically amended, without notice, and without further action by the parties to this Agreement, to be identical to these Terms and Conditions

3. **Acceptance.** Acceptance by Ashley of all purchase orders is required and any such purchase order that has been properly received by Ashley shall not give rise to any obligation unless and until Company has properly received in return an Acceptance Document from Ashley

4. **Prices.** The prices and specifications set forth in Ashley's price lists are subject to change without notice, unless otherwise expressly indicated therein, and prices contained in the purchase order are not binding on Ashley until Company has properly received in return an Acceptance Document from Ashley

5. **Taxes.** Any applicable federal, state local or other government tax or charge on the sale or shipment of the goods covered by this Agreement shall be added to the price and paid by the Company Company agrees to pay promptly and hold harmless Ashley from all such taxes, including interest and penalties thereon, and any costs and expenses including reasonable attorneys' fees in connection therewith

6. **Shipment, Freight, and Delivery** Except as otherwise provided on Ashley price lists all prices are F O B Ashley's warehouse, Arcadia, Wisconsin

7. **Terms.** Except as otherwise provided, the terms of all sales by Ashley to Company are net thirty (30) days from date of Ashley's invoice   A late payment charge of 1 5% per month (but not in excess of the legal maximum) will be added to all past due balances   Company shall not have right of set off

8. **Financial Responsibility** Shipment and delivery hereunder shall at all times be subject to approval of Ashley's Credit Department, and Ashley at any time may require payment in advance or satisfactory security or guarantee that all payments will be promptly paid when due Until credit approval has been obtained, orders will be shipped only on the basis of payment in advance If Company fails to comply with any terms of payment of this or any other contract with Ashley, Ashley, in addition to its rights and remedies, but not in limitation thereof, reserves the right to withhold deliveries or terminate this or any other contract with Company, and any unpaid amounts thereupon shall become immediately due and payable

9. **Notice of Accident or Malfunction.** Company shall notify Ashley promptly and in any event within thirty (30) days of any accident or malfunction involving goods manufactured or sold by Ashley which results in personal injury or damage to property and shall cooperate fully with Ashley in investigating and determining the cause of such accident or malfunction   In the event that Company fails to give such notice to Ashley and to so cooperate, Company agrees to protect, defend, and save Ashley harmless against all suits at law or in equity and from all costs of suit, legal fees and expenses, damages, claims and demands arising out of or awarded in connection with Ashley's sale or supplying of goods to Company

10. **Warranty and Limitation of Remedy** Subject to the provisions contained herein Ashley warrants to Company that for a period of one (1) year from the date of shipment to Company or until the goods are sold to the end-use consumer by Company, which ever is earlier, that the goods supplied by it to Company are free of substantial manufacturing defects   A reasonable amount of touch-up, deluxing, and installation of repair parts is the responsibility of Company

THE FOREGOING WARRANTY IS EXCLUSIVE   ALL EXPRESS WARRANTIES NOT STATED IN THESE TERMS AND CONDITIONS AND ALL IMPLIED WARRANTIES (WHETHER WRITTEN OR ORAL), INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE SPECIFICALLY DISCLAIMED

ASHLEY MAKES NO WARRANTY, EXPRESS OR IMPLIED (WHETHER WRITTEN OR ORAL) WITH RESPECT TO MATERIALS, GOODS, OR ITEMS NOT MANUFACTURED BY ASHLEY, AND ALL WARRANTIES WITH RESPECT TO SUCH MATERIALS, GOODS, OR ITEMS, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES (WHETHER WRITTEN OR ORAL) OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE SPECIFICALLY DISCLAIMED

Under this warranty, the sole liability of Ashley is limited to at Ashley's sole option, repair, replacement or credit for goods sold, supplied or furnished to Company by Ashley which contain substantial manufacturing defects if Ashley actually receives notice from Company of the alleged defect within one (1) year from the date of shipment to Company or until the goods are sold to the end use consumer by Company which ever is earlier

Ashley shall not be liable for any labor or other expenses incurred by Company in the removal, repair, or replacement of the goods or any component part claimed to be defective nor shall Ashley be liable for any expenses incurred by the Company in order to remedy any defect in its goods

ASHLEY SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, OR CONTINGENT DAMAGES OR LOST PROFITS OR EXPENSES ARISING DIRECTLY OR INDIRECTLY FROM ANY DEFECT IN GOODS SOLD, SUPPLIED OR FURNISHED BY ASHLEY TO COMPANY, FROM THE USE THEREOF, OR FROM COMPANY'S INABILITY TO MAKE USE THEREOF   THE DISCHARGE OF ASHLEY'S WARRANTY OBLIGATION HEREUNDER SHALL CONSTITUTE FULFILLMENT OF ALL LIABILITIES OF ASHLEY TO COMPANY, WHETHER BASED ON

8

CONTRACT NEGLIGENCE OR OTHERWISE WITH RESPECT TO GOODS SOLD OR PROVIDED TO COMPANY

THE REMEDIES SET FORTH HEREIN SHALL BE THE EXCLUSIVE REMEDIES AVAILABLE TO THE COMPANY AND IN LIEU OF ALL OTHER REMEDIES, AND THE LIABILITY OF ASHLEY, WHETHER IN CONTRACT, IN TORT, UNDER ANY WARRANTY, OR OTHERWISE, SHALL NOT EXCEED THE PRICE OF THE GOODS SOLD, SUPPLIED, OR FURNISHED BY ASHLEY TO COMPANY HEREUNDER ON WHICH LIABILITY IS BASED ASHLEY NEITHER ASSUMES OR AUTHORIZES ANY REPRESENTATIVE OR OTHER PERSON TO ASSUME FOR IT ANY OBLIGATION OR LIABILITY OTHER THAN IS EXPRESSLY SET FORTH HEREIN

The sole purpose of the stipulated exclusive remedy shall be to provide Company with a credit or replacement for or the repair of defective parts in the manner provided herein This exclusive remedy shall not be deemed to have failed of its essential purposes so long as Ashley is willing to credit Company's account, or repair or replace the defective part(s) in the manner proscribed herein

11   Shortage/Risk of Loss. Any claims for shortage must be made within ten (10) days of receipt of shipment by Company Any claim not made within said periods shall conclusively be deemed waived by Company

Company shall bear and pay all expenses, losses and damages that may arise from the transportation of the goods after they are delivered by Ashley to any carrier except Ashley Distribution Services LTD

12   Defaults and Delays. Ashley shall not be liable for any default or delay in the production or delivery of all or any goods resulting either directly or indirectly from (a) accidents to, or breakdown or mechanical failure of Ashley's plant machinery or equipment, strikes or other labor troubles, labor shortages, fire, flood, wars, acts of the public enemy; acts of God, delays of suppliers, delays in transportation or lack of transportation facilities embargoes shortages of, or reductions in, energy sources, priorities, allocations, limitations, restrictions, or other acts required or requested by Federal state, or local governments or any subdivision bureau, or agency thereof, or (b) any cause beyond the control of Ashley In no event shall Ashley be liable for any consequential, special, or contingent damages arising out of Ashley's default or delay in filling or shipping any order of Company

13   Governing Law   The parties mutually acknowledge and agree that the Electronic Commerce Agreement, all Transactions, and these Terms and Conditions shall be governed by, and construed in accordance with the internal laws of the State of Wisconsin   The Company consents to the jurisdiction of any local or state court located within the State of Wisconsin and waives any objection which it may have based on improper venue or forum inconvenience to the conduct of any proceeding in any such court.

14   Waiver   The waiver or failure of Ashley to exercise in any respect any right provided for herein shall not be deemed a waiver of any further right hereunder

15   Binding Effect. The provisions of these Terms and Conditions shall bind and inure to the benefit of Ashley and Company and their respective successors and assigns However the Terms and Conditions, or any part thereof or right or obligation thereunder and the Transactions governed thereby, shall not be assigned without the prior written consent of Ashley

9