## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

CASE NO. 18-cv-61185-Ungaro/Hunt

OJ COMMERCE, LLC

    Plaintiff,

vs.

ASHLEY FURNITURE INDUSTRIES, INC.,

    Defendant.

_____/

## **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

    Defendant, Ashley Furniture Industries, Inc. ("Ashley") by and through undersigned counsel and pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), hereby moves to dismiss the Amended Complaint filed by Plaintiff, OJ Commerce, LLC ("OJ").

## **PRELIMINARY STATEMENT**

    OJ's Amended Complaint is just as legally flawed as its initial Complaint.

    OJ is an "ecommerce retailer" that did business with Ashley by selling Ashley's products to consumers on-line, and then submitting these customer orders electronically to Ashley, who would then fulfill the customer orders. The five count Amended Complaint is premised on exceedingly vague allegations that Ashley *orally* promised "to continue its business relationship with OJC through the end of the 2018 calendar year" and to "provide sufficiently greater access" and "support" to OJ such that "in 2018, OJC would earn back all the money it invested [in doing business with Ashley] and profit." Yet, as set forth in detail below, the clear and unequivocal terms of the parties' *written* agreement provide, *inter alia,* (1) that the agreement is terminable

simply upon either party giving written notice; (2) that Ashley is under no obligation whatsoever to continue to do business with OJ in connection with any transaction or purchase order not expressly accepted by Ashley; and (3) that the agreement may not be modified or altered except by written instrument duly executed by both parties. The plain language of the parties' written agreement should control and dictates that each of OJ's claims be dismissed.

In addition, even putting aside the parties' written agreement, the statute of frauds clearly bars the purported oral agreement(s)[1] alleged in the Amended Complaint, as well as OJ's additional claims for intentional and negligent misrepresentation and promissory estoppel all based on the same alleged facts. As OJ's own allegations make clear, the alleged oral agreement(s)-- beginning in January, 2017 and alleged to be in effect "through the end of the 2018 calendar year"-- by definition could not be performed within the space of a year.

Finally, even putting aside both of these dispositive issues, each of the claims included in OJ's Amended Complaint suffers from fundamental pleading deficiencies that independently require the dismissal of each claim. Suffice it to say that for the host of reasons discussed below OJ's claims fall woefully short of pleading the elements of each claim, let alone meeting the plausibility requirements of *Iqbal*[2] and *Twombly*[3] and the specificity requirements of Rule 9(b).

**FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT**

OJ "is an ecommerce retailer that sells various products to consumers through online marketplaces." (D.E. 11 at ¶1). According to OJ's Amended Complaint, "in mid-2013, OJC and Ashley commenced a relationship whereby OJC would sell Ashley's products directly to

---

[1] OJ's allegations are so vague it is unclear from the Amended Complaint whether OJ is claiming a series of oral agreements or one overarching oral agreement.

[2] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[3] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

consumers. OJC would receive orders from its customers, submit the orders to Ashley, and Ashley would ship OJC's customers (sic) orders directly to OJC's customers. OJC would then pay Ashley for these products."  (*Id.* at ¶ 7). OJ now admits "that the parties entered into an Electronic Commerce Agreement [the "Agreement"] that established a process by which OJC could submit electronic orders to Ashley for fulfilment." (*Id.* at ¶8).  And, OJ now admits that the parties' written Agreement is the agreement previously filed with the Court by Ashley in connection with Ashley's motion to dismiss the original Complaint. (*Id.* at ¶8, citing D.E. 7-1).

After noting the 2013 start of the parties' relationship, the Amended Complaint jumps to 2017 and references a series of so-called "meetings"--mostly phone conversations--alleged to have taken place between OJ and Ashley.  *Id.* at ¶¶ 10-23.  According to OJ, during a phone call on January 19, 2017, Ashley "asked OJC to invest in their relationship by improving its Ashley catalogue through adding images, content, and making other marketing investments." *Id.* at ¶ 11. In return, Ashley purportedly promised that it "would commit merchandise, support, and personnel to OJC to ensure a successful long-term relationship." *Id.*  Eight individuals identified as "Ashley employees" are alleged to have attended the call, although no particular individual is alleged to have made this purported promise.  *Id.* at ¶ 10. No particular individual from OJ is identified as having attended the so-called January Meeting.

On July 31, 2017, OJ alleges it met with Ashley at a Las Vegas marketing meeting (this meeting is defined as the "July Meeting.").  At the July Meeting, Ashley purportedly requested that OJ enter into an "LTL [less than load] shipping relationship" with a company that is not a party to this litigation (Watkins Shepard). *Id.* at ¶12.  In exchange for beginning this "shipping relationship", Ashley allegedly promised it "would provide OJC with sufficient merchandise, discounts, incentives, and support that, in 2018, OJC would earn back the money invested and

more." *Id.* at ¶14.  Four individuals identified as "Ashley employees" are alleged to have "arranged and conducted" the July Meeting, although no particular individual is alleged to have made this purported promise. *Id.* at ¶12. No particular individual from OJ is identified as having attended the July Meeting.

On September 28, 2017, another phone call purportedly occurred between Ashley and OJ, in which Ashley purportedly followed up regarding progress on the LTL shipping relationship and to discuss marketing for 2018.  *Id.* at ¶15.  During this phone call (defined as the "September Meeting"), Ashley purportedly requested that OJ "run various marketing promotions for the coming 2018 calendar year." *Id.* at ¶16.  In exchange, Ashley allegedly promised that "OJC would be able to sell Ashley products throughout the entire 2018 calendar year and thereby earn back these investments," *Id.*  Three individuals identified as "Ashley employees" are alleged to have attended the call for Ashley, although no particular individual is alleged to have made this purported promise.  *Id.* at *¶15.* No particular individual from OJ is identified as having attended the September Meeting.

Sometime in mid-November, 2017, Ashley supposedly "induced OJC to integrate with its inventory system in order to improve inventory communications between the parties." *Id.* at *¶* 17.  The Amended Complaint does not allege whether this purported "inducement" took place during a phone call or in person or otherwise.  Ashley purportedly "induced" OJC by promising that "OJC would have, throughout 2018, 'live' access to Ashley's inventory system and therefore would be able to list products as soon as Ashley received them" and by further promising "that this great access, and increased merchandise, discounts, incentives, and support throughout the 2018 calendar year, OJC would earn back, in 2018, all the money it invested and more." *Id.* at *¶* 18.  Three individuals identified as "Ashley employees" allegedly "spoke on behalf of Ashley" at

some point during this mid-November, 2017 timeframe, although no particular individual is alleged to have made the purported promises. *Id.* at ¶ 17. No particular individual from OJ is identified as having been the recipient of these purported promises.

Sometime "towards the end of 2017," Ashley also purportedly requested that "OJC update its catalogue of Ashley products" and "*reiterated* its promise that if OJC undertook this investment it would provide OJC with greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested, and more." *Id* at 19. The Amended Complaint does not allege whether this purported request and corresponding promise occurred during a phone call or in person otherwise. No particular individual from Ashley is alleged to have made the purported request or corresponding promise. No particular individual from OJ is identified as having been the recipient of the purported request and corresponding promise.

The very last meeting which forms the basis of OJ's claims is alleged to have occurred on December 7, 2017 (defined as the "December Meeting"), during which two individuals identified as "Ashley employees" purportedly visited OJ's facilities and *re-asserted* "all the promotions, investments, and marketing Ashley wanted OJC to invest in and run *through the end of 2018."* *Id.* at 20. At the December Meeting, Ashley purportedly "promised that their relationship would continue for the full 2018 calendar year." *Id.* at 22. In its closing recap of the December Meeting, OJ alleges that by the end of that meeting Ashley had promised that it would "(i) support OJC through 2018 with personnel and promotions sufficient to regain its investment and profit; (ii) work together to ensure OJC could replicate the success of the 2017 holiday season throughout the *entire* 2018 calendar year; and (iii) promised that the year of 2018 would be the

best year of its business relationship with OJC." *Id.* at 23.  No particular individual from OJ is identified as having been the recipient of these purported promises.

Finally, OJ alleges that on February 13, 2018, Ashley "terminated its business relationship with" OJ and that OJ suffered damages as a result of this termination. *Id.* at ¶¶31, 33. Based on these same factual allegations, OJ's Complaint attempts to assert claims for: (1) Breach of (oral) Contract; (2) Promissory Estoppel; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; and (5) Unjust Enrichment.  As set forth in detail below, all of these claims fail as a matter of law.

### I.      OJ's Claims are Barred by the Provisions of the Parties' Written Agreement

#### A.   The Terms of the Parties' Written Agreement

While OJ inexplicably failed to attach or reference the parties' *written* Agreement in its original Complaint, OJ's Amended Complaint now references the Agreement. (D.E. 11 at ¶ 8, citing DE 7-1).  Accordingly, this Court may consider the Agreement (which is attached hereto as Exhibit A) in ruling on this motion to dismiss.[4] The Agreement explains, in pertinent part, that the parties "desire for the mutual benefit of the parties to facilitate purchase and sale transactions (hereinafter 'Transactions') by electronically transmitting and receiving data in agreed formats in substitution for conventional paper-based documents and to ensure that such Transactions are legally valid and enforceable." *See* Exhibit A at third whereas clause.  The Agreement provides for the placement of customer orders by OJ with Ashley through the electronic transmissions addressed in the Agreement.  *See* Exhibit A generally.  Again, OJ is simply "an ecommerce retailer," so that all of its Transactions are electronic. *See.* D.E. 11 at ¶ 1. Although OJ appears

---

[4] *See, e.g. Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1344, n. 2 (11th Cir. 2005); *See generally Leader Global Solutions, LLC v. Tradeco Infraestructura, S.A.,* 2016 WL 9526696, * 3 (S.D. Fla. 2016)(Ungaro, J.) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec. LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)).

to suggest that the Agreement merely established "the process" by which OJC submits orders to Ashley for fulfilment (D.E. 11 at ¶8), as discussed below, the Agreement by its express terms substantively covers the terms of all Transactions between the parties.

The Agreement clearly specifies that Ashley's Standard Terms and Conditions, attached to the Agreement as Exhibit A, are incorporated into the parties' Agreement and control "all Transactions contemplated by the Agreement subsequent to the execution of the Agreement." *Id.* at ¶ ¶ 8 C and 15F. These Terms and Conditions, in turn, provide: "These Standard Terms and Conditions of Sale . . . shall govern and control **all Transactions between [OJ] and Ashley.**" *Id.* at Exhibit A, Standard Terms and Conditions of Sale, at ¶ 2. (emphasis added). In addition to specifying pricing and other terms, as well as disclaiming certain warranties and consequential, special, or contingent damages or lost profits, the Terms and Conditions state that "[a]cceptance by Ashley of all purchase orders is required and any such purchase order that has been properly received by Ashley **shall not give rise to any obligation unless and until [OJ] has properly received in return an Acceptance Document from Ashley**." *Id.* at Exhibit A, Standard Terms and Conditions of Sale, at ¶ 3. (emphasis added).

Similarly, in paragraph 7C, the Agreement makes clear that an express acceptance by Ashley of each individual purchase order is required in order to give rise to any obligation on the part of Ashley:

> **Acceptance:** Acceptance by Ashley of all Purchase Orders is required and any such Purchase Order that has been properly received by Ashley **shall not give rise to any obligation until [OJ] has properly received in return an Acceptance Document (as specified in the Appendix) from Ashley**.

*Id.* at ¶ 7 C (emphasis added).

And, in paragraphs 6, the parties make clear that "**each party shall be responsible**" for the costs of any third-party provider of services with which they contract (*id.* at 6 (B)(ii) and

6(c)(ii)), and that each party "**at its own expense** shall provide and maintain the equipment, software services, and testing necessary to effectively and reliably transmit and receive data, information, and Documents using Electronic Commerce." *Id.* at 6(D).

Further, in paragraph 15 A, the Agreement also unequivocally prohibits any oral modifications to the parties' Agreement, and again makes clear that Ashley is not under any obligation to enter into any particular Transaction by virtue of the Agreement:

> **Complete Agreement, Modifications.** Each party acknowledges that it has read this Agreement in its entirety (including the Appendix and the Exhibit A Standard Terms and Conditions), understands it, and agrees to be bound by its terms. This Agreement constitutes the complete agreement of the parties relating to the mattes specified in this Agreement and supersedes and merges all prior proposals, understandings, representations and agreements, whether oral or written, with respect to such matters. **No oral modification or waiver of any of the provisions of the Agreement shall be binding on either party and this Agreement may not be modified or altered except by written instrument duly executed by both parties. No obligation to enter into any Transaction is to be implied from the execution or delivery of this Agreement.**

*Id.* at ¶ 15 A (emphasis added). The Agreement also contains an anti-waiver provision with respect to Ashley's rights under the Agreement. *Id.* at ¶ 15 D.

Most notably, in paragraph 4 titled "Term and Termination," the Agreement provides:

> This Agreement shall remain in effect until terminated **by either party giving a written notice of termination to the other party** . . . The termination of this Agreement shall not affect any Transaction entered into prior to the effective date of termination nor any of the respective duties and obligations of the parties under the Agreement prior to the effective date of termination.

*Id.* at ¶ 4 (emphasis added).

In short, the terms of the parties' Agreement could not be more clear (1) that the Agreement is terminable simply upon either party giving written notice; (2) that Ashley is under no obligation whatsoever to continue to do business with OJ in connection with any Transaction or Purchase Order not expressly accepted by Ashley; and (3) that the Agreement may not be

modified or altered except by written instrument duly executed by both parties.  These provisions are fatal to each of OJ's claims, all premised on the notion that Ashley orally agreed to continue the parties' business relationship through the end of the 2018 calendar year.

### B. OJ Should not be Allowed to Circumvent the Terms of the Parties' Written Agreement

OJ's claim for breach of (oral) contract (Count I) alleges that Ashley "promise[d] to (i) continue its business relationship with OJC through the end of the 2018 calendar year and (ii) provide sufficiently greater access, increased merchandize, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested, and profit." *See* D.E. 11 at ¶35.  These allegations are exactly counter to the terms of the written Agreement discussed above which provide, *inter alia,* that the Agreement can be terminated at any time simply by giving written notice and that Ashley is not required to fulfill any customer order whatsoever unless the Transaction or Purchase Order is expressly accepted by Ashley. Yet, OJ *does not even attempt to allege* an oral modification to the Agreement, let alone does OJ allege sufficient facts to make such an oral modification claim "plausible" as required by Supreme Court precedent. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 644.  Under Wisconsin law,[5] to the extent a party wishes to try to establish a subsequent oral modification to a written agreement, this is "a matter which must be pleaded by the party who claims it [the modification] was made." *Goebel v. National Exchangors, Inc.*, 88 Wis.2d 596, 614 (Wis. 1979). The party proceeding on an oral modification theory under Wisconsin law must plead and prove both (1) that "the parties agreed to waive the no oral modifications clause in the contract;" and (2) that "the parties reached an agreement to modify the underlying contract." *See, e.g. Borrow Palumbo Sales, Inc. v. Broan -Nutone, LLC,* 549 F. Supp.2d 249, 265 (E.D. N. Y.

---

[5] The Agreement's choice of law provision calls for application of Wisconsin law.  *See* Ex. A at ¶ 9.

2008)(applying Wisconsin law); *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.,* 898 F.2d 512, 518 (7th Cir. 1990)(applying Wisconsin law and describing two part inquiry applicable under Wisconsin law to proceed on oral modification theory).

Here, of course, OJ has not alleged, and cannot allege, either requirement under Wisconsin law.  Thus, the terms of the parties' written Agreement bar OJ's claim for breach of contract (Count I).  And, while OJ contends that its remaining counts are pled "in the event this Court finds no contract exists," this statement cannot save its remaining claim in a case such as this one where both parties acknowledge the existence of the written Agreement.[6]  Accordingly, as the above discussion should make clear, the unequivocal terms of the parties' Agreement bar each of OJ's claims.

**II.     Even Putting Aside the Parties' Written Agreement, OJ's Claims are Barred by the Statute of Frauds as the Alleged Oral Agreements By Their Terms Cannot be Performed within a Year**

Count I (breach of contract) appears to combine all of the purported oral "promises" by Ashley into one count, but then states rather confusingly "OJC and Ashley entered into a valid contract through the oral agreements described above."  D.E. 11 at ¶ 34 (emphasis added).  Thus, is unclear to Ashley whether OJ is proceeding on a theory that each of the phone conversations

---

[6] *See, e.g. Harley Marine Services, Inc. v. Manitowoc Marine Group, LLC,* 759 F. Supp.2d 1059, 1061 (E.D Wis. 2010)(dismissing claims for promissory estoppel and unjust enrichment because of the existence of an express contract between the parties even though these claims were purportedly pled "in the alternative" to claim for breach of contract; explaining "the existence of the contract is no secret.  It thus matters little whether Plaintiffs also acknowledge the contracts existence *within* the other claims or not--the contract is still there regardless.").*Beer Capitol Distributing, Inc. v. Guinness Bass Import Co.* , 290 F.3d 877, 881 (7th Cir. 2002)("unjust enrichment is an obligation enforced in the absence of an agreement.")(applying Wisconsin law); *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)(existence of parties' written distributorship agreement barred claim for promissory estoppel; explaining "[p]romissory estoppel is not a doctrine designed to give a party . . . as second bite at the apple in the event it fails to prove a breach of contract."); *Stadler v. John Hancock Life Ins. Co.,* 2013 WL 5798555, * 7 (E.D. Wis. 2013)("it is only in the absence of a governing contract that the plaintiff may recover under theory of unjust enrichment;" dismissing fraud claims as well based on express contract because reliance would be unreasonable as a matter of law).

or in person meetings referenced in its Amended Complaint starting in January of 2017 gave rise to separate oral agreements or whether OJ is alleging one overarching oral agreement. Per the allegations of OJ's Amended Complaint it appears that:

(1) the alleged oral agreement involving the setup of LTL shipping services was allegedly entered into **at the July Meeting** (ie., on July 31, 2017)(*see* D.E. 11 at ¶ 13);

(2) the alleged oral agreement involving marketing and promotions for the 2018 calendar year was alleged entered into **at the September Meeting** (i.e, on September 28, 2017) (*id.* at ¶ 16); and

(3) the alleged agreement involving integration with Ashley's inventory system was entered into "**in mid-November 2017**." (*Id.* at ¶ 17).

At the very last meeting alleged between the parties--the December 7, 2017 meeting--Ashley is merely alleged to have "*re-asserted* all the promotions, investments, and marketing Ashley wanted OJC to invest in and run *through the end of 2018."* (*Id.* at ¶ 20).  Regardless, however, of which theory OJ is pursing (one oral agreement or multiple), OJ's claims are barred by the statute of frauds even putting aside the parties' written Agreement.

Fla. Stat. § 725.01[7] provides in pertinent part:

> No action shall be brought . . . upon <u>any agreement that is not to be performed within the space of 1 year</u> from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum

---

[7] For purposes of the arguments raised in this Section II and Section III herein, Ashley applies Florida law because it assumes *arguendo,* as OJ suggests, that the written Agreement (and thus its choice of law provision) does not apply. In any event, a separate choice of law analysis, the most significant relationship test, is applicable to any claim not based on the written Agreement. *See, e.g. Viridis Corp. v. TCA Global Credit Master Fund, L.P.*, 721 Fed. Appx. 865, n, 11 (11th Cir. 2018)(explaining that a separate choice-of-law analysis applies for each claim and that the law specified in a contractual choice of law provision may not apply to non-contract claims based on the required separate choice of law analysis).  Here, OJ J alleges in its Amended Complaint that Ashley committed "tortious acts within this state" and that "a substantial part of the events or omissions giving rise to the claim occurred in [Florida]." D.E. 11 at ¶¶ 4,5. Moreover, one of only two in-person meetings alleged in the Amended Complaint is alleged to have occurred at OJ's facilities, which are in Broward County, Florida (the other alleged in-person meeting is alleged to have occurred in Las Vegas, a forum which does not appear to have any other relationship to the alleged claims). *Id.* at ¶¶1, 20. The remaining "meetings" consist of phone calls which OJ presumably took from its place of business in Florida.  Thus, under the most significant relationship test, Florida has the most significant relationship to the claims alleged in the Amended Complaint as OJ itself acknowledges.

thereof <u>shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized</u>.

Fla. Stat. § 725.01 (hereafter the "Statute of Frauds") (emphasis added).

As explained repeatedly by the Florida Supreme Court, the Statute of Frauds is intended to prevent fraud and must be strictly enforced:

> The purpose of Florida's Statute of Frauds is to "<u>intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos</u>."
> . . .
> In Florida, it has long been recognized that the Statute of Frauds is a legislative prerogative, grounded in a policy judgment that certain contracts should not be enforced unless supported by written evidence. . . . Thus, we held in *Yates* that "[t]he statute <u>should be strictly construed to prevent the fraud it was designed to correct</u>, and so long as it can be made to effectuate this purpose, <u>courts should be reluctant to take cases from its protection</u>."

*DK Arena, Inc. v. EB Acquisitions I, LLC,* 112 So.3d 85, 93 (Fla. 2013) (emphasis added).

The Supreme Court also has found expressly that the language of Fla. Stat. § 725.01 is "quite clear" in its requirement "that all actions based on agreements for longer than one year must depend on a written statement or memorandum, signed by the party to be charged." *Tanenbaum v. Biscayne Osteopathic* Hospital, 190 So.2d 777, 779 (Fla. 1966). Thus, parties should not be allowed to circumvent this requirement because "the parties 'had but to follow the provisions of the Statute of Frauds to secure [their] rights.'" *DK Arena.* 112 So.2d at 93.

It is equally clear that the Statute of Frauds may be raised as the basis of a motion to dismiss when the complaint affirmatively shows the applicability of the Statute of Frauds. Under these circumstances, *numerous* Florida courts have explained that dismissal is warranted and have emphasized the correctness of disposing of such claims at the motion to dismiss stage.[8]

---

[8] *See, e.g. Riley v. Home Retention Services, Inc.*, 2014 WL 11906642, *4 (S.D. Fla. 2014)(Ungaro, J.)(dismissing with prejudice claims asserted in the complaint alleging oral lending agreement because claims were barred by the banking statute of frauds; explaining "dismissal for failure to state a claim is warranted where, as here, the [statute of

Here, there is no question that the allegations of the Amended Complaint establish that the purported oral agreement(s) are barred by the Statute of Frauds.  Specifically, starting in January, 2017 and culminating on December 7, 2017, OJ alleges the parties entered into either a series of oral agreements or one over-arching agreement which were/was to continue "**for the full 2018 calendar year**."  *See, e.g.* D.E. 11 at ¶ 21, ¶41.   Thus, by definition, the oral agreement(s) alleged by OJ could not be performed "within the space of a year."

---

frauds] defense is apparent on the face of the complaint."); *Professional Vending Services, Inc. v. Firestone Financial Cop.,* 2016 WL 9411707, *2 (S.D. Fla. 2016)(dismissing complaint with prejudice where the allegations of the complaint revealed an oral lending agreement in violation of the banking statute of frauds); *DeMarco v. T.D Bank, N.A.,* 2013 WL 12094325, * 3 (S.D. Fla. 2013)(dismissing complaint with prejudice because allegations of complaint revealed an oral agreement barred by both the banking statute of frauds and statute of frauds governing purported oral contracts not to be performed within a year); *In re Stilley v. Stilley*, 2015 WL 8781270, * 6 (Bankr. S.D. Fla. 2015) (granting a motion to dismiss where the allegations of the complaint revealed an alleged oral partnership was barred by the Statute of Frauds); *Jester v.* Pawley, -- So.3d-- (Fla. 3d DCA 2018)(affirming dismissal of fraud claims with prejudice based on the statute of frauds) *Conner, I, Inc. v. The Walt Disney Company*, 827 So.2d 318, 319 (Fla. 5th DCA 2002) (affirming trial court's order dismissing the complaint with prejudice where the allegations of the complaint revealed an alleged oral joint venture was barred by the Statute of Frauds); *Law Offices of Lynn W. Martin, P.A. v. Madson, III,*  144 So.3d 707, 708 (Fla. 1st DCA 2014)(affirming dismissal with prejudice of plaintiff's amended complaint based on the Statute of Frauds and explaining that attorney's fees would be awarded to appellee because "[t]he law applicable to the case is clear and well-settled such that the appellant should have known that the relief sought was not supported by an application of the law."); *Johnson v. Edwards*, 569 So.2d 928, 929 (Fla. 1st DCA 1990)(affirming dismissal of second amended complaint with prejudice based on the Statute of Frauds); *De Vaux v. Westwood Baptist Church,* 953 So.2d 677, 680 (Fla. 1st DCA 2007)(affirming trial court's dismissal with prejudice of plaintiff's complaint based on the Statute of Frauds and granting an award of attorney's fees pursuant to Fla. Stat. 57.105 for filing a frivolous appeal given the obvious applicability of the Statute of Frauds); *Sherwood Development Corp. v. Florida Crown Utility Services*,  264 So.2d 119, 119-120 (Fla.1[st] DCA 1972)(affirming dismissal with prejudice of plaintiff's second amended complaint where the allegations of the operative complaint alleged a purported oral agreement not to be performed within a year); *Martin v. Highway Equipment Supply Company*, 172 So.2d 246, 247-248 (Fla. 2d DCA 1965)(affirming trial court's dismissal of complaint with prejudice based on the Statute of Frauds where allegations of complaint alleged a purported oral contract not to be performed within one year.); *Goldstein v. ABCO Construction Co.,*334 So.2d 281, 282 (Fla. 3d DCA 1976)(affirming dismissal with prejudice of plaintiff's amended complaint where complaint was based on alleged oral agreement not to be performed within a year); *Lohbauer v. North Lauderdale Development Corp.,* 305 So.2d 793 (Fla. 4th DCA 1975)(affirming per curiam trial court's dismissal of complaint based on alleged oral agreement); *Delta Air Lines, Inc. v. Wilson*, 210 So.2d 761, 762 (Fla. 3d DCA 1968)(affirming dismissal with prejudice of plaintiff's second amended complaint based on Statute of Frauds);  *Rattan and Bamboo Shop v. Rutter*, 147 So.2d 11, 11 (Fla. 3d DCA 1962)(affirming dismissal of complaint with prejudice where the allegations of the complaint alleged a purported oral agreement to split profits from a business not to be performed within a year).

Under these circumstances, Florida law is clear that the bar of the Statute of Frauds applies not only to OJ's claim for breach of contract, but also its claims for promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation, which are all based on the same factual allegations as the claim for breach of contract.[9]

Thus, with the sole exception of OJ's unjust enrichment claim, each of OJ's claims is barred by the Statute of Frauds as a matter of law even putting aside the parties' Agreement.

### III. Even Putting Aside the Dispositive Issues of the parties' written Agreement and the Statute of Frauds, Fundamental Pleading Deficiencies Require the Dismissal of Each of OJ's Claims

Even putting aside the parties' Agreement and the Statute of Frauds, OJ's claims are plagued with pleading insufficiencies which require the dismissal of each of OJ's claims.

#### A. Count I Should also be Dismissed Because OJ has Failed to Sufficiently Allege the "Essential Terms" of the Parties' Purported Oral Agreement(s)

Although OJ has slightly augmented its factual allegations relating to its alleged oral agreement(s), the allegations are still remarkably vague and conclusory and fail to meet the pleading requirements of *Twombly* and *Iqbal*. For example, as the Court in *PNCEF, LLC v.*

---

[9] *See, e.g. DK Arena, Inc. v. EB Acquisitions I, LLC,* 112 So.3d 85, 93 (Fla. 2013)(rejecting argument that claim for "promissory estoppel" is an exception to the statute of frauds and explaining, "the doctrine of promissory estoppel cannot be used to circumvent the statute of frauds."); *Riley* 2014 WL 11906642 at * 4 ( dismissing claim and explaining "doctrine of promissory estoppel may not be used to circumvent the Statute of Frauds'); *Lynkus,* 965 So.2d at 1167 ("under the statute of frauds, 'an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.'") (citing string of cases); *Conner, I, Inc.,* 827 So.2d at 319 (fraud and other tort claims were also dismissed as barred by the Statute of Frauds where they were derivative of the unenforceable oral joint venture agreement); *Khawly v. Reboul*, 488 So.2d 856, 859, n. 1 (Fla. 3d DCA 1986) ("Because we conclude that the breach of contract action is barred by the statute of frauds, the action for fraud is barred as well. . . . [A] breach of contract action barred by statute of frauds cannot be brought indirectly as a fraud action. . . . [T]he Florida rule is that the statute of frauds may not be avoided by a suit for fraud based on oral representations.") (citations omitted); *Wharfside*, 741 So.2d at 545 (Statute of Frauds barred both claim for breach of contract and claim for fraud based on same purported oral agreement); *Guest v. Claycomb*, 932 So.2d 567, 571 n. 1 (Fla. 5th DCA 2006) (Statute of Frauds barred claim for breach of contract and claim for fraud based on same purported oral agreement); *Topp,* 483 F. Supp.2d at 1197 (both breach of contract and fraud claims were similarly barred by Statute of Frauds; "Under Florida law, the Statute of Frauds 'may not be avoided by a suit for fraud based on oral representations'").

*Highlander Enterprises, LLC,* 2010 WL 11504754, *3 (S. D. Fla. 2010) made clear: "to state a cause of action for breach of an oral contract, a party must allege that the 'parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Id.* (citing string cite of cases).  In *PNCEF,* the Court found the claim for breach of oral agreement was insufficient because, *inter alia,* "[counter-plaintiffs] do not state any underlying facts showing mutual assent ***such as the specific people that negotiated the alleged oral agreement and when this agreement was entered into."*** *Id.* at *3 (emphasis added).  The same is true here.  Again, in this case it is not even clear whether one oral agreement is at issue or multiple oral agreements are at issue, let alone is there any suggestion at all as to who might have been negotiating the alleged oral agreement(s) on behalf of OJ, or which of the various "Ashley employees" identified negotiated each particular purported promise.

Moreover, the Court in *PNCEF* also found the claim for breach of oral agreement was insufficient because the counter-plaintiff "failed to allege the essential terms of the contract."  Again, the same is true here.  OJ's breach of contract claim alleges "the definite terms of Ashley's promises include its promise to continue its business relationship with OJC through the end of the 2018 calendar year, and to provide sufficiently greater access, increased merchandize, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested and profits."  *See* D.E. 11 at ¶ 41.  Ashley is at a loss as to what "continue its business relationship with OJC through the end of the 2018 calendar year" even means--was Ashley required to fulfill any customer order sent by OJ no matter what the price, credit issues, or other terms?

And, how could Ashley ever possibly know what it would take for OJ to earn profits in 2018, let alone what "sufficiently greater access" and "support" it would take for OJ to do so.

Rather than the required "certain and definite proposition" and agreement "on all essential terms," there is nothing definite whatsoever alleged about the purported terms of the alleged oral agreement. Thus, as in *PNCEF,* OJ's claim for breach of oral contract (Count I) also should be dismissed for this reason alone.

### B. Counts III and IV should also be Dismissed Because OJ has Failed to Sufficiently Allege the Elements of Either Fraudulent or Negligent Misrepresentation

Under Florida law, the elements of a claim for both fraudulent misrepresentation (Count III) and negligent misrepresentation (Count IV) require the misrepresentation of a material "fact." Both claims, however, fail to allege any misrepresentation of material "fact." Specifically, "[a]n action for fraud generally may not be predicated on statements of opinion...but rather ***must be based on a statement concerning a past or existing fact.***" *Felcia Davis v. Boston Scientific Corp.*, 2018 WL 2183885, * 6 (M.D. Fla. May 11, 2018) (citing *Mejia v. Jurich*, 781 So.2d 1175, 1177-78 (Fla. 3d DCA 2001))(emphasis); *see also Silver v. Countrywide Home Loans, Inc.,* 760 F.Supp.2d 1330, 1343 (S.D. Fla. 2011)(dismissing misrepresentation claims because, *inter alia,* representation that the value of plaintiff's home would continue to rise and she would not have a problem refinancing were not statements of material fact); *Kearney v. Travelers Casualty and Surety Co. of America*, 2010 WL 745619, * 3 (M.D. Fla. 2010)(dismissing misrepresentation claim based on allegation that defendant "would continue to do business with Plaintiffs in the future" because "these misrepresentation are nothing more than promises to perform in the future and are not actionable."). Here obviously the purported "misrepresentations" all center-around alleged promises by Ashley to continue to do business with OJ through the end of 2018 such that OJ not only would recoup its alleged investments, but earn additional profits by the end of 2018. But how could Ashley possibly

know the level of business that OJ would generate from customers in the future and whether this business would be sufficient for OJ to be profitable?

And while an exception exists to the rule against predicating a fraud claim on future promises, this exception applies only where "the person expressing the opinion is one having superior knowledge of the subject of the statement and ***the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false***." *Felicia,* 2018 WL 2183885 at *6.  But OJ certainly has not plausibly alleged, as required, some factual basis for its conclusory allegation that "Ashley knew this representation to be false as Ashley did not intend to maintain its business relationship throughout the 2018 calendar year." *See, e.g. Adler v. Westjet Airlines, Ltd.*, 31 F. sup.3d 1381, 1386 (S.D. Fla. 2014) ("Given the absence of other supporting facts, the [plaintiffs'] assertion that '[defendant] knew or should have known that its representation . . . was false' is too conclusory to supply the necessary allegations of intent.")(citing *Twombly).*

 The description of the purported future promises that are the basis of OJ's misrepresentation claims also fail to comply with Rule 9(b).[10] In order to meet the requirements of Rule 9(b), OJ must specify:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

---

[10] *See e.g. Johnson v. Amerus Life Ins. Co.*, 2006 WL 386774, at *4 (S.D. Fla. 2006) (explaining that "in Florida, an 'action for negligent misrepresentation sounds in fraud rather than in negligence.'. . . Hence, Rule 9(b)'s pleading requirements apply to actions involving claims for negligent misrepresentations.") (citing *Souran v. Travelers Ins. Co,* 982 F.2d 1497, 1511 (11th Cir. 1993) and other omitted citations).

*Leader II,* 2016 WL 9526696 at * 5.  *See also In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1356 (S.D. Fla. 2005)(quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

OJ's conclusory misrepresentation claims still fall short.  Again, while the alleged "misrepresentations" center around vague promises regarding continuing to do business with OJ in 2018, there is no particularity to these allegations in terms of what specific amount of transactions did Ashley purportedly represent it would accept from OJ in 2018 and under what terms, or what exactly Ashley allegedly represented it would do in 2018 in connection with providing "sufficiently greater" access and support.  Further, while, in connection with *some* of the purported "meetings," the Amended Complaint now lists individuals identified as Ashley employees, the Amended Complaint is never clear as to which of these individuals allegedly made which purported misrepresentation.  And, as to all of the alleged misrepresentations, there is no allegation as to the alleged recipient of the misrepresentation on behalf of OJ.  Accordingly, OJ's misrepresentation claims also should be dismissed for failing to meet the requirements of Rule 9(b).[11]

### C. OJ's "Equitable" Claims for Promissory Estoppel (Count II) and Unjust Enrichment (Count V) Should also Be Dismissed for Failing to Plausibly Allege the Requirements of each Claim

A claim for promissory estoppel must be "definite as to terms and time." *W.R. Grace & Co.,* 547 So.2d 919, 924 (Fla. 1989).  *See also Long v. Murray,* 2009 WL 4042961, *6 (M.D.

---

[11] *See, e.g. Leader II,* 2016 WL 9526696 at 5.  *See also Kaufman v. Wyeth Co.,* 2011 WL 10483568, * 2, *4-*5 (S.D. Fla. 2011) (dismissing negligent misrepresentation and intentional misrepresentation claims for failure to meet Rule 9 (b) heightened pleading standards) (Ungaro, J.); *Kaufman v. Pfeizer Pharmaceuticals, Inc.,* 2010 WL 9438673, * 5, *7 (S.D. Fla. 2010) (dismissing negligent misrepresentation and intentional misrepresentation claims for failure to meet Rule 9(b) heightened pleading standards) (Ungaro, J.); *Mitchell v. Edwards*, 2009 WL 10668161, *6-*7 (S.D. Fla. 2009) (dismissing misrepresentation claims for failure to meet Rule 9 (b) heightened pleading standards) (Ungaro, J.).

Fla. 2009) ("Relief under a theory of promissory estoppel is only available 'where the [alleged] promise is definite, of a substantial nature, and is established by clear and convincing evidence.'"). Moreover, "ordinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." *W.R. Grace & Co.,* 547 So.2d at 924. Here, as already discussed at length in connection with respect to each of OJ's claims, there is nothing "definite as to terms and time" as to what was allegedly orally promised to OJ in phone calls and "meetings" scanning from January, 2017 through December 7, 2017. Nor does OJ does allege any facts sufficient to meet the *Twombly* and *Iqbal* plausibility requirements as to its allegation that Ashley knew at the time of its alleged promises that it did not intend to keep them.

OJ's claim for unjust enrichment is equally flawed. "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Group, Inc.,* 680 F.3d 1329, 1337 (11th Cir. 2012). As already discussed above, OJ's claim for unjust enrichment fails as a matter of law because of the existence of the parties' express written Agreement. Putting aside the existence of the Agreement, however, it is unclear what benefits Ashley "unjustly" accepted and retained as there is no allegation that OJ was not paid during its business relationship with Ashley, or any explanation of any on-going benefits to Ashley after termination of the relationship. OJ's mere conclusory recitation of the elements of an unjust enrichment claim is exactly what the Supreme Court has found insufficient. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## CONCLUSION

About the only thing clear from the allegations of OJ's Amended Complaint is that each of the claims is barred by the terms of the Agreement and the Statute of Frauds. And even putting aside these dispositive issues, each of the claims included in OJ's Amended Complaint suffers from fundamental pleading deficiencies that independently require the dismissal of each claim. Thus, for the reasons set forth more specifically above, Ashley respectfully requests that this Court dismiss OJ's Amended Complaint in its entirety.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Defendant Ashley Furniture Industries, Inc.*
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

BY:  */s/ Raquel M. Fernandez*
**MITCHELL E. WIDOM**
Florida Bar No. 473911
mwidom@bilzin.com
**RAQUEL M. FERNANDEZ**
Florida Bar No. 55069
rfernandez@bilzin.com
eservice@bilzin.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2018, I caused the foregoing documents to be served on all counsel of record via CM/ECF system.

By: */s/ Raquel M. Fernandez*
Raquel M. Fernandez, Esq.