## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

OJ COMMERCE, LLC,                           Case No.: 18-cv-61185-UU
               Plaintiff,

-vs-

ASHLEY FURNITURE INDUSTRIES, INC.
              Defendant.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ......................................................................................................................... 2

   I.   **The written Electronic Commerce Agreement doesn't bar OJC's oral agreement claims** ..................................................................................................................... 2

      A.   *The parties' oral agreements don't contradict or modify the written Electronic Commerce Agreement* ................................................................................ 2

   II.   **The Electronic Commerce Agreement is illusory and therefore cannot stand as a bar to any of OJC's claims** ...................................................................................... 5

   III.   **The statute of frauds does not bar OJC's claims** ........................................................ 7

   IV.   **OJC's complaint sufficiently alleged mutual assent and essential terms to establish the existence of an enforceable oral contract** ............................................ 10

      A.   *The complaint alleges mutual assent* ........................................................... 12

      B.   *The complaint alleges certain and definite essential terms through reference to an objective measurement* ...................................................................... 13

      C.   *The complaint alleges certain and definite essential terms by reference to the parties' course of dealing and conduct* ................................................................. 14

      D.   *OJC's complaint alleges an enforceable contract implied in fact* ................. 15

   V.   **OJC has adequately alleged fraudulent and negligent misrepresentation** ................. 16

      A.   *The fraud claims are properly based on a promise of future action with a present intention not to perform.* ................................................................. 16

      B.   *OJC pleads with sufficient particularity to meet 9(b)* .................................. 17

   VI.   **OJC has adequately pled its promissory estoppel claim** ........................................ 18

   VII.   **OJC properly pled unjust enrichment and Ashley's inequitable receipt of an ongoing benefit** ................................................................................................... 20

CONCLUSION ..................................................................................................................... 20

Plaintiff ("OJC") files this opposition to Defendant's ("Ashley") motion to dismiss OJC's amended complaint ("AC"), and in support says:

**PRELIMINARY STATEMENT**

Ashley used the trust and confidence built through a long and successful business relationship with OJC to induce OJC into spending hundreds of thousands of dollars based on Ashley's word alone. In the world of business outside lawyers' offices, that's sometimes how things get done. But what isn't done is for a business to blatantly break its word and take outright advantage of its longtime partner.

After recognizing that OJC's promotional efforts were extremely effective, Ashley asked OJC to spend hundreds of thousands of dollars of its own money to promote Ashley's products. Ashley unequivocally promised OJC it would earn that investment back in 2018 because Ashley would provide OJC with sufficient products and discounts to do so. OJC acted on that promise. But shortly after OJC completed the investment and spent the money promoting Ashley's products, and Ashley had gained the benefit of one of its best advertisers and promoters, Ashley terminated the relationship and left OJC out to dry. Ashley admits OJC did nothing wrong to deserve this. Clearly, Ashley knew this huge pivot in distribution strategy was coming, but wanted the benefit of OJC's promotional skills one last time.

Ashley's express promise and OJC's performance created a contract. But if such a contract fails for formal legal technicalities, the law protects OJC from this blatant injustice through promissory estoppel, fraudulent misrepresentation, and unjust enrichment. Ashley's motion to dismiss must be denied.

1

## BACKGROUND

In 2013 the parties entered into a written Electronic Commerce Agreement that established a process by which OJC could submit electronic orders to Ashley for fulfillment. AC ¶¶ 7-8.

In 2017 the parties reached a series of subsequent oral agreements whereby OJC invested heavily in promoting Ashley products in exchange for Ashley's agreement to (i) maintain its business relationship with OJC through 2018, and (ii) to provide OJC with sufficient merchandise and discounts that, in 2018, OJC's investment would turn a profit. AC ¶ 14.

OJC made the required investments, but Ashley breached the oral agreement and terminated the parties' relationship in February 2018. OJC sued. AC ¶ 31. Ashley now moves to dismiss OJC's lawsuit claiming, *inter alia*, that the oral agreements contradict the express terms of the written ECA, don't properly modify it, and are therefore invalid.

## ARGUMENT

I. **The written Electronic Commerce Agreement doesn't bar OJC's oral agreement claims**

   A. *The parties' oral agreements doesn't contradict or modify the written Electronic Commerce Agreement*

The written Electronic Commerce Agreement governs the mechanics of purchase and sale transactions between OJC and Ashley.[1]

**It provides that Ashley is not obligated to fulfill any *specific* purchase order until Ashley formally accepts it**.[2] In the context of automatic electronic order submissions, this requirement makes sense as a matter of good business practice; Ashley wouldn't want to be

---

[1] "These Standard Terms . . .  shall govern and control all Transactions between [OJC] and Ashley." Br. Ex. 1, pg. 8 ¶ 2. Notably, "Transactions" are defined as "purchase and sale transactions." *Id.*, pg. 2, third WHERAS.

[2] "Acceptance by Ashley of all Purchase Orders is required and any such Purchase Order that has been properly received by Ashley shall not give rise to any obligation unless and until [OJC] has properly received in return an Acceptance Document. . . from Ashley" *Id.*, pg. 4 ¶ 7C, pg. 8 ¶ 2.

automatically obligated to fulfill every purchase order it receives.

The Electronic Commerce Agreement also states quite clearly that "no obligation to enter into any [purchase and sale transaction] is to be implied from the execution or delivery *of this Agreement*." Br. Ex. 1, 8 ¶ 2 (emphasis added). This means the parties' execution of *the Electronic Commerce Agreement* did not obligate Ashley to enter into any purchase and sale transactions. **It did not, however, forbid Ashley from *ever* accepting such an obligation in the future.**

The Electronic Commerce Agreement also forbids oral modifications and states that either party can terminate "*This* Agreement" (emphasis added).[3] This allows Ashley to terminate its agreement to accept electronic orders; by its terms, the right is limited to terminating "This Agreement," i.e., the ECA, and no other. *Id.* **Thus, the ECA's termination clause does not provide Ashley with a unilateral right to terminate any subsequent contract it enters into**.

After four years of transacting business, selling almost $13 million in Ashley products, and developing their relationship, the parties began the discussions described in OJC's amended complaint. AC ¶¶7-10. During those discussions, Ashley asked OJC to invest significant resources in promoting and advertising Ashley's products.

In return, Ashley, *for the first time*, orally undertook an obligation to maintain its business relationship with OJC, in good faith, through the calendar year of 2018 and with sufficient incentives that OJC would recover its principal from the investment. This new obligation Ashley assumed does not contradict or modify any obligation in the Electronic Commerce Agreement:

---

[3] "This Agreement shall remain in effect until terminated by either party giving [written notice] . . . No oral modification . . . . of the provisions of the Agreement shall be binding on either party and this Agreement may not be modified or altered except by written instrument duly executed by both parties . . ." Br. Ex. 1, pg. 2 ¶ 4

3

- **Ashley still has the right to terminate the Electronic Commerce Agreement.**

  o If Ashley terminated, the parties would no longer submit electronic orders. But to avoid breaching the *oral agreement*, Ashley would have to accept paper orders from OJC in good faith (as OJC does with other manufacturers);

- **The Electronic Commerce Agreement *itself* still imposes no obligation to do business with OJC.**

  o *But the oral agreement does*. Importantly, the Electronic Commerce Agreement *never* forbade Ashley from ever accepting such an obligation.

- **Ashley's receipt of a purchase order still doesn't obligate it to fulfill that specific purchase order until Ashley formally accepts it.**

  o But under the oral agreement, Ashley is under an obligation to accept a sufficient number of purchase orders that will result in OJC earning back its investment in 2018. This means Ashley is still free not to accept any *specific* OJC purchase order. Ashley breaches the oral agreement, however, if it terminates the entire relationship and tells OJC it will *never* accept another purchase order from it.

This oral agreement entered into between the parties, is valid and enforceable, separate and distinct from the written agreement, and is neither a modification of the written agreement, nor barred by the written agreement. It's simply an additional obligation Ashley undertook.

While this is clear from the language of the contracts, courts in this District have dealt with similar situations to find two distinct and separate agreements. *See, e.g.*, *Rosen v. Price*, No. 08-61761-CIV, 2009 WL 10667458 (S.D. Fla. Aug. 21, 2009).

In *Rosen*, the parties entered into a written agreement to build a Yacht. *Id.* at 1. The parties "then entered into a separate and distinct oral agreement to provide for a method of providing payment" for the Yacht. *Id* (agreeing to accept and sell stocks). Defendant breached the oral payment agreement and plaintiff sued. The written agreement had an arbitration clause that defendant tried to invoke against plaintiff. But the court held the oral "contract [was] separate from the [written] Construction Agreement . . . As [p]laintiffs point out, they are not suing [defendant] for a breach of the Construction Agreement, but rather his breach of the separate [oral] agreement . . . " *Id*.

4

Other courts are in accord. In *Hess v. Dumouchel Paper Co.*, 225 A.2d 797 (1966), the parties entered into a written lease agreement that required a three year notice for termination. *Id.* at 799. Subsequently, the parties entered into oral lease agreements for additional space. *Id.* When the tenant vacated the entire space without notice, plaintiff sued for breach. The trial court held plaintiff could only recover for the space covered by the written agreement. *Id.* at 810. On review, the Massachusetts Supreme Court found that the "trial court was justified, under the evidence presented, in concluding that the subsequent oral contracts were distinct and separate transactions which did not affect the earlier written agreement." *Hess*, 154 Conn. at 800; see *Cetrone v. Paul Livoli, Inc.*, 337 Mass. 607, 610 (1958).

As can be seen from the above, the fact that two parties have a written agreement about a business venture does not prevent them from entering into a subsequent and distinct oral agreement about that same venture. That's what happened here.

Thus, the written agreement is not "fatal to each of OJ's claims" that are premised on breach of the oral agreement; OJC is not "circumventing" the written agreement, nor modifying it. Br. at 8-9. OJC's claims for breach of the oral agreement should not be dismissed.

## II. The Electronic Commerce Agreement is illusory and therefore cannot stand as a bar to any of OJC's claims

Plaintiff's case should not be dismissed even if this Court construes the oral agreement to be in direct conflict with the written ECA. As discussed below, the ECA imposes no obligation on Ashley, and provides no remedy to OJC on Ashley's breach. The ECA is therefore illusory and unenforceable; it cannot act as a bar to Plaintiff's claims.

When a contract imposes no obligation on one party, that contract is illusory and unenforceable. *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). For example, when a seller is not actually required to sell anything under the terms of a contract, the contract is

illusory and unenforceable. *Morris Hatchery, Inc. v. Interlink Group Corp. USA, Inc.*, 2012 WL 13059867, at *3 (S.D. Fla. May 14, 2012) ("The contract . . . render[s defendant]'s promised performance . . . illusory, because [defendant] need not perform"); *Rosenberg v. Lawrence*, 541 So. 2d 1204, 1207 (Fla. 3d DCA 1988) (contract conditioned payment upon future consent, "represented no more than an illusion which did not obligate either party to act."). Typically, courts refer to this type of unenforceable arrangement as an agreement where one party's performance is conditioned on "I will if I want to." *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010).

Furthermore, "[u]nder Florida law, a contract that provides no method through which to enforce a remedy is illusory and invalid." *Great Am. Ins. Co. v. Sch. Bd. of Broward County, Fla.*, 2010 WL 4366865, at *14 (S.D. Fla. July 30, 2010); *Pier 1 Cruise Experts v. Revelex Corp.*, 2017 WL 5713931, at *3 (S.D. Fla. July 18, 2017) (contract illusory because it removed all liability "for any direct, special, indirect, incidental, consequential, punitive, exemplary or any other damages").

The ECA is illusory, "Ashley is under no obligation whatsoever to continue to do business with OJ in connection with any Transaction or Purchase Order not expressly accepted by Ashley." Br. at 8. Said differently, Ashley has absolutely no obligation to sell anything to OJC under the ECA, unless Ashley arbitrarily determines it wants to -- in which case Ashley will provide an Acceptance Document to OJC. This is a black letter case of "I will if I want to." *Princeton*, 612 F.3d at 1331.[4]

The written ECA agreement is also illusory because it provides OJC with absolutely no

---

[4] Although the contract contains some incidental obligations, such as product warranty, and exchange of electronic documents, these clauses do not obligate Ashley until *after* is has unilaterally *decided* to accept an order and as Ashely's said quite clearly, it's under no obligation to accept any such order under the ECA.

remedy upon a breach. *Pier 1 Cruise Experts*, 2017 WL 5713931, at *3; *Great Am.*, 2010 WL 4366865, at *14. Pursuant to paragraph 11, Ashley provides that there shall be no liability for any kind of damage whatsoever. D.E. 13-1, ¶ 11. While the clause doesn't expressly exculpate "direct" damages, it provides that there can be no damages for "lost profits," i.e., the only type of "direct" damages OJC could suffer under the agreement.

As the written agreement is illusory, Ashley cannot use it to bar OJC's claims for breach of the oral agreement.

### III.   The statute of frauds does not bar OJC's claims

The statute of frauds is an affirmative defense that the defendant has the burden to prove and therefore "cannot be raised in a motion to dismiss unless the complaint affirmatively shows the conclusive applicability of such defense to bar the action." *Conner, I, Inc. v. Walt Disney Co.*, 827 So. 2d 318, 319 (Fla. 5th DCA 2002); *see Al-Babtain v. Banoub*, No. 8:06-CV-1973, 2009 WL 10670840, at *2 (M.D. Fla. June 26, 2009).

Ashley argues that the oral agreement should be barred by the statute of frauds, because full performance could not be completed within a year. The statute of frauds does not apply, however, given (i) some of the agreements could have been performed within 1-year and (ii) OJC completed performance.

Florida law is clear that a contract is not barred by the statute of frauds if "*there is a possibility* . . . that full performance . . . may be completed before the expiration of a year." *Browning v. Poirier*, 165 So. 3d 663, 665 (Fla. 2015) (emphasis added). In fact, a contract is only barred if it "could not possibly be performed within one year . . ." *Banoub*, 2009 WL 10670840, at *2; *Schenkel v. Atl. Nat. Bank of Jacksonville*, 141 So. 2d 327, 330 (Fla. 1st DCA 1962) (personal service contract for life not barred by statute of frauds because the possibility of death within 1 year removes agreement from statute of frauds).

Similarly, when a party to an oral contract has fully performed its obligations under the contract, the statute of frauds may not be used as a defense. *Maderas Del Siglo XXI-Madesi S.R.L. v. Medley Hardwood, Inc.*, No. 13-20508-CIV, 2014 WL 12605558, at *2 (S.D. Fla. Jan. 6, 2014) ("the Statute of Frauds may not be employed as a defense where the oral contract has been fully performed by the other party."); *Brodie v. All Corp. of USA*, 876 So. 2d 577, 579 (Fla. 4th DCA 2004) ("Full performance of an agreement takes the agreement outside the Statute of Frauds"). OJC and Ashley came to numerous agreements; each supplementing the next. But each enforceable and completely separate.

In the July Meeting, OJC agreed to undertake the implementation of an LTL shipping system ("LTL Investment") in return for (i) Ashley providing access to its LTL products throughout 2018 and (ii) Ashley providing OJC with sufficient products and discounts in 2018 to earn back its LTL Investment and profit. AC 11, ¶14. The statute of frauds can't bar either of Ashley's promises as OJC fully performed by integrating with Ashley's LTL shipping system. AC at ¶29; *Maderas*, 2014 WL 12605558, at *2. Additionally, the statute cannot bar the second agreement to provide sufficient merchandise to turn a profit as that could've possibly been performed within a year, if e.g., Ashley provided aggressive discounts. *Browning*, 165 So. 3d at 665.

In the September Meeting, OJC agreed to undertake certain marketing promotions ("Marketing Investment") in return for (i) Ashley allowing OJC to sell all of Ashley's products throughout the entire 2018 calendar year and (ii) Ashley's promise that it would provide sufficient additional merchandise and discounts to ensure that, in 2018, OJC would earn back this Marketing Investment, in addition to the LTL investment, and a profit. The statute of frauds cannot bar either of Ashley's promises as OJC fully performed by running the requested promotions. AC ¶¶ 25-7;

8

*Maderas*, 2014 WL 12605558, at *2. Additionally, the statute cannot bar the second agreement to provide sufficient merchandise to turn a profit as that could've possibly been performed within a year. *Browning*, 165 So. 3d at 665.

In the mid-November 2017 meeting, OJC agreed to integrate with Ashley's ATP system ("ATP Investment") in return for Ashley's promise that (i) OJC would have live access to Ashley's database through 2018, and that (ii) Ashley would now provide sufficient merchandise and discounts to ensure that, in 2018, OJC would earn back this ATP Investment, in addition to the Marketing Investment, the LTL investment, and a profit. The statute of frauds cannot bar either of Ashley's promises as OJC fully performed by integrating with Ashley's ATP system. AC ¶ 30; *Maderas*, 2014 WL 12605558, at *2. Additionally, the statute cannot bar the second agreement to provide sufficient merchandise to turn a profit as that could've possibly been performed within a year. *Browning*, 165 So. 3d at 665.

In the next meeting, OJC agreed to update its catalogue of Ashley products ("Catalogue Investment") in return for Ashley's promise that it would now provide sufficient merchandise and discounts to ensure that, in 2018, OJC would earn back this Catalogue Investment, in addition to the ATP Investment, Marketing Investment, the LTL investment, and a profit. The statute of frauds cannot bar Ashley's promise as OJC fully performed by updating its catalogue. AC ¶ 28; *Maderas*, 2014 WL 12605558, at *2. Additionally, the statute cannot bar this agreement as it could have possibly been performed within a year. *Browning*, 165 So. 3d at 665.

In the December Meeting, OJC agreed to make various promotional and marketing investments ("Promotion Investment") in return for Ashley's promise that it would (i) allow OJC to sell its products throughout the entire 2018 calendar year, and (ii) Ashley would now provide sufficient merchandise and discounts to ensure that, in 2018, OJC would earn back this Promotion

Investment, in addition to the Catalogue Investment, ATP Investment, Marketing Investment, LTL investment, and a profit. The statute of frauds cannot bar Ashley's promise as OJC fully performed by conducting these promotions and additional marketing investments. AC, ¶¶ 25-27; *Maderas*, 2014 WL 12605558, at *2. Additionally, the statute cannot bar the second agreement to provide sufficient merchandise to turn a profit as that could have possibly been performed within a year. *Browning*, 165 So. 3d at 665.

Accordingly, the statute of frauds does not bar Plaintiff's claims.[5]

### IV.   OJC's complaint sufficiently alleged mutual assent and essential terms to establish the existence of an enforceable oral contract

Ashley claims OJC's breach of oral agreement count is deficient because it fails to allege essential terms. Under Florida law "[a]n oral contract . . . is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *Yormak v. Yormak*, 2:14-CV-33-FTM-29CM, 2014 WL 3611236, at *2 (M.D. Fla. July 22, 2014).

When a contract fails to specify an exact amount, but provides a method for determining that amount, the term is considered definite. *Bee Line Air Transp., Inc. v. Dodd*, 496 So. 2d 874, 875 (Fla. 3d DCA 1986) ("a contract with an open price term will not fail for indefiniteness if the parties provide an objective method of determining price"); *Blackhawk, Heating & Plumbing Co. v. Data Lease Fin. Corp.,* 302 So. 2d 404, 404 (Fla. 1974) (same).

Furthermore, "courts should be extremely hesitant in holding a contract void for

---

[5] Ashley cannot argue that the full performance exception does not apply, because its application is an issue of fact that cannot be determined on a motion to dismiss. See *Verhaegen v. Montigny*, 553 So. 2d 756, 758 (Fla. 2d DCA 1989) ("Additionally for the trier of fact under the particular evidence in this case was whether there was unrevoked performance . . . which took the contract out of the operation of the statute of frauds.'").

indefiniteness, **particularly where one party has performed under the contract** and allowed the other party to obtain the benefit of his performance." *Blackhawk,* 302 So. 2d 404, 408 (Fla. 1974) (emphasis added). To that end, a "contract should not be held void for uncertainty unless there is no other way out [and it has] reach[ed] the point where construction becomes futile." *Id*. at 409.

To avoid that result, "[t]he determination of whether there is a meeting of the minds as to essential elements of an ambiguous contract requires a consideration of all of the surrounding circumstances." *Barone v. Rogers*, 930 So. 2d 761, 764 (Fla. 4th DCA 2006). Thus, before a court declares a contract void for indefiniteness or "uncertainty [] it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties **if that can be ascertained**.' *Blackhawk,* 302 So. 2d at 407 (emphasis added).

The Restatement, and courts in Florida, ascertain that intent by reference to the parties' course of dealing or conduct:

> 'A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct . . . [A] course of dealing between parties gives meaning to or supplements . . . their agreement.'

*F.W.F., Inc. v. Detroit Diesel Corp.,* 494 F. Supp. 2d 1342, 1367 (S.D. Fla. 2007), aff'd, 308 F. App'x 389 (11th Cir. 2009) (citations omitted) *quoting Restatement (Second) of Contracts* § 223 (1981) (emphasis added). Thus, while Ashley argues essential terms are missing, "the [oral contract] between [plaintiff] and [defendant] must be analyzed in light of [their] customary course of dealing . . . The circumstances of [plaintiff's] relationship with [defendant] . . . supply the apparently absent essential terms.*" In re Annicott Excellence, LLC*, 259 B.R. 782, 791 (Bankr. M.D. Fla. 2001).

In addition to the parties' pre-contract course of dealing, their post-contract course of

conduct or performance is even more instructive at supplying any potential missing definiteness:

> Where the terms of a written agreement are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties . . . and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court.

Blackhawk, 302 So. 2d at 407; *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1252 (S.D. Fla. 2017) ("the practical interpretation of a contract by the parties . . . before it comes to be the subject of controversy is deemed of great, if not controlling, influence.")

The exact terms of an oral agreement, and whether there was agreement on those terms, constitutes a question of fact. *Anapolsky v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 12-21275-CIV, 2013 WL 11842018, at *4 (S.D. Fla. Aug. 21, 2013) ("a question of fact remains regarding whether Allied made mere promises without specifying essential terms sufficiently enough to create a contract . . . or whether the Plaintiffs came to a meeting of the minds with [Defendants] adequately to form individual oral contracts."). Similarly "whether a course of dealing exists between parties to a transaction is a question of fact." *Allapattah Services, Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1315 (S.D. Fla. 1999)[6]; *Barone*, 930 So.2d at 764.

A.   *The complaint alleges mutual assent*

Ashley claims the Parties' oral contract fails for lack of mutual assent because the contract fails to include "the specific people that negotiated the alleged oral agreement and when this agreement was entered into." Br. at 15. Ashley cites *PNCEF, LLC v. Highlander Enterprises, LLC*, No. 09-80974-CIV, 2010 WL 11504754 (S.D. Fla. Mar. 2, 2010) for support. But its reliance on PNCEF is misplaced. Unlike OJC, the counter-plaintiff in PNCEF did not mention the specific

---

[6] *Allpattah* discussed a contract governed by the UCC, but as explained above, course of dealing is not limited to UCC contracts. See *Barone*, 930 So. 2d at 764; *Blackhawk*, 302 So. 2d at 407; *F.W.F.*, 494 F. Supp. 2d at 1367; *Restatement (Second) of Contracts* § 223; *In re Annicott Excellence*, 259 B.R. at 791.

people that negotiated the oral agreement, did not mention whether the negotiations occurred on the phone or in person, and included no allegation as to the date the agreements were reached. *Id.* at *2-3. In contrast, OJC has alleged the exact dates of the meetings, whether they took place in person or by phone, and identifies a specific group of Ashley's agents in attendance at those calls and meeting. Many of these communications happened over the phone, and it would be unreasonable for OJC to guess at exactly which one of Ashley's agents made which promises. The fact remains that every participant was Ashley's agent. OJC alleged sufficient facts to put Ashley on clear notice of its claims; discovery will reveal which exact agent made which exact promise.

B.    *The complaint alleges certain and definite essential terms through reference to an objective measurement*

Ashley's argument that the agreement is not definite because it didn't know how much greater access, support, and discounts it would need to provide to OJC is also without merit because the express terms of the agreement provide for it by reference to objective measurement. *Dodd*, 496 So. 2d at 875 ("a contract with an open price term will not fail for indefiniteness if the parties provide an objective method of determining price"); *Blackhawk*, 302 So. 2d at 404 (Fla. 1974) (same).

Ashley is a sophisticated party that deals with thousands of vendors and meticulously tracks return on investment. AC ¶24. It knew how much OJC's investment would cost and OJC was capable of confirming that investment total. In addition, Ashley knew the profit margins and quantities of the items OJC sold, could therefore calculate the amount OJC had earned, and then easily adjust those discounts, support, and merchandise to ensure OJC fully recovered its investment in 2018. Thus, price and quantity were not missing as they could both be calculated using an objective method and simple arithmetic. *Bee Line,* 496 So. 2d at 875. Said differently, the fact that Ashley assured OJC a return on its investments provides the required specificity because

it established OJC's investment amounts as the metric by which Ashley's reciprocal performance would be based. Ashley's motion to dismiss for lack of definiteness must be denied.

C.   *The complaint alleges certain and definite essential terms by reference to the parties' course of dealing and conduct*

Ashley claims that the agreement lacks "certain and definite agreement on all essential terms" because it does not know what:

> ["]continue its business relationship with OJC through the end of the 2018 calendar year["] even means--was Ashley required to fulfill any customer order sent by OJ no matter what the price, credit issues, or other terms? And, how could Ashley ever possibly know what it would take for OJ to earn profits in 2018, let alone what "sufficiently greater access" and "support" it would take for OJ to do so.

Br. 15-16. Putting aside the agreement's reference to an objective measurement, Ashley's contention ignores the parties' four year course of dealing and working history before reaching the oral agreements. AC ¶¶7-9. When making the promises described in the complaint, the parties were well aware of their prior course of dealing and relied on those long-standing terms and habits to give "meaning to or supplement[] . . . their agreement." *F.W.F.,* 494 F. Supp. 2d at 1367 *quoting Restatement* § 223. Ashley's argument *also* ignores the parties' over seven-month long course of conduct and performance that occurred *after* reaching the first oral agreement. AC ¶ 12, 31. Consequently, for those seven months, "the parties . . . have, by their own conduct, placed a construction upon [the oral contract] which is reasonable," and "such construction will be adopted by the court." *Blackhawk*, 302 So. 2d at 407.

The exact terms and history of the parties' course of dealing and conduct is a question of fact not appropriately decided on a motion to dismiss. *Anapolsky*, 2013 WL 11842018 at *4. Nevertheless, it's quite easy to see how the "circumstances of [plaintiff's] relationship with [defendant would] . . . supply the apparently absent essential terms.*" In re Annicott Excellence,*

14

*LLC*, 259 B.R. at 791. For example, for the four years prior to making the oral agreement, and for the many months after the oral agreement was made, Ashley extended credit terms of net thirty to OJC. AC¶ 7-9;[7] D.E. 7-1, pg. 8, ¶7. The parties contemplated these same credit terms when entering into the oral agreement. Similarly, in terms of pricing, Ashley has a standard price list it uses for all its vendors. AC¶ 7-9; D.E. 7-1, pg.8, ¶4. The parties relied on this price list for four years prior, and seven months after, the oral agreements. *Id*. 7-9, 12, 31.

Consequently, even if this Court finds that the expressly alleged terms of the oral agreement lack sufficient definiteness to form a contract, whether the parties course of dealings and conduct will supply the deficient terms is a question of fact that cannot be decided on a motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citing *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993) ("A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

D.    *OJC's complaint alleges an enforceable contract implied in fact*

Alternatively, if this court finds that an express contract cannot be formed by the parties' words alone, or their words supplemented by the context of those words (*see supra* section IV, B-C), Plaintiff still states a cause of action for breach of a contract implied in fact.

"A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, *not solely from their words*." *Smith v. Casey*, No. 1:12-CV-23795-UU, 2014 WL 11878422, at *4 (S.D. Fla. Oct. 29, 2014) (Ungaro, J.) (emphasis added). "A contract implied in fact is not put into promissory words *with sufficient clarity*, so a fact finder must examine and interpret the parties' conduct to give

---

[7] The AC incorporates D.E. 7-1 by reference. AC¶ 8

definition to their unspoken agreement." *Id.* (emphasis added). Whether a "course of conduct is insufficient to constitute an implied in fact contract . . . attacks the merits of Plaintiff's claim, and . . . is inappropriate at the motion to dismiss stage." *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, No. 07–80091 CIV, 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007).

OJC alleged that in July 2017 Ashley asked OJC to undertake certain investments, promising in return, to maintain their business relationship with discounts such that OJC would recover its investment in 2018. AC ¶ 14. That OJC completed these investments. AC ¶ 25-30. That the OJC/Ashley relationship continued for seven months thereafter on agreed terms, price, credit, and quantity, until February 2018. AC ¶ 31. That during that time Ashley kept asking for additional investments making additional promises. AC ¶¶ 11-23.

The allegations that Ashley continued doing business with OJC and continued asking for additional investments "support a plausible inference that [Ashley] also consented to an implied agreement." *Casey*, 2014 WL 11878422, at *4. Any contention from Ashley that this is not what the relationship *means*, or that the contract *still lacks* sufficient definiteness must fail because it requires examining the parties' conduct, and "analysis of the parties' conduct and its meaning is inappropriate" at this stage. *Id.* at *3-4 (equating standard for 12(c) and 12(b)). At bottom, whether the conduct OJC has alleged is sufficient involves an "examination of the parties conduct [and] is a fact-based inquiry, something that cannot be resolved in a motion to dismiss." *United Healthcare Ins. Co.*, 2007 WL 1099124 at *2. OJC has made a claim for breach of oral contract and Ashley's motion must be denied.

**V.   OJC has adequately alleged fraudulent and negligent misrepresentation**

   *A.    The fraud claims are properly based on a promise of future action with a present intention not to perform.*

   In the AC, OJC clearly alleges that Ashley promised to do business with OJC through 2018,

but knew this representation to be false, as "Ashley did not intend to maintain its business relationship with Plaintiff throughout the 2018 calendar year . . ." AC ¶ 49.

Ashley recognizes the well-established exception that a fraud claim can be based on future promises, (Br. at 17), but claims OJC has not "plausibly alleged, as required, some factual basis for its conclusory allegation. . ." *Id.*

As an initial matter, Fed. R. Civ. P. 9(b) specifically provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. That aside, Plaintiff *did* provide additional factual bases for its contention. Specifically, that Ashley told OJC it had given Ashley "the most return on investment of any other vendor" (AC ¶24), admitted OJC did not do anything wrong (*id.* ¶32), that Ashley claimed OJC's termination was due to a "change in distribution strategy" (*id.*), and that it happened so quickly after OJC had completed its heavy investment in marketing Ashley's products that it was impossible Ashley did not know they were going to be making such a massive pivot and was therefore specifically calculated to deceive OJC. *Id.* ¶ 50.

This is far different than the plaintiffs who simply alleged, without any support whatsoever, that a random Westjet employee "knew or should have known that its representation that [plaintiff] could travel with the dog was false." *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014). Ashley's comparison to *Kearney v. Travelers Cas. & Sur. Co. of Am.*, 2010 WL 745619, at * 3 (M.D. Fla. Feb. 26, 2010) is similarly flawed. The representation there (i) contradicted express contract terms, and (ii) the allegation that defendant knew the representation was false required the "novel argument" that the defendant knew *the economy would crash*. *Id*. OJC's allegation of purposeful deception is not contrary to any written agreement and is not dependent on Ashley's ability to see the future.

B.     *OJC pleads with sufficient particularity to meet 9(b)*

Ashley contends OJC's misrepresentation allegations lack the requisite specificity to

satisfy 9(b)'s pleading requirements. Ashley asserts that OJC's allegations are not particular enough in terms of the specific amount of transactions Ashley would accept, under what terms Ashley would accept them, or what Ashley would do in terms of sufficiently greater access and support. Br. at 18.  But this reformulation of Ashley's lack-of-definite-terms argument should fail for the reasons outlined in Section IV above. Ashley attempts to place the 2017 meetings in a vacuum and wholly ignore the fact that they took place against the backdrop of a four-year relationship which informed the parties' statements and expectations. As described above, the amount, price, terms, and greater access are all easily identified when referencing the parties' historic business relationship or objective measurement.

Plaintiff has adequately plead fraudulent misrepresentation with particularity, by alleging the exact time, place, and persons involved in the fraud. Ashley's motion should be denied.

## VI.    OJC has adequately pled its promissory estoppel claim

"A promise which the promisor should reasonably expect to induce action . . . on the part of the promisee . . . and which does induce such action . . .  is binding if injustice can be avoided only by enforcement of the promise." *W.R. Grace & Co. v. Geodata Services, Inc.*, 547 So. 2d 919, 924 (Fla. 1989). Further, "[p]romissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the essence of promissory estoppel is detrimental reliance." *Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV, 2009 WL 5031345, at *4 (S.D. Fla. Dec. 15, 2009). "Significantly, the doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Id*. That said, "[c]laims for promissory estoppel must be definite as to terms and time." *Hopkins Pontiac GMC, Inc. v. Ally Fin. Inc.,* 60 F. Supp. 3d 1252, 1261 (N.D. Fla. 2014).

Because "the essence of promissory estoppel is detrimental reliance," and it specifically applies when "the requisites of contract are not met," courts in this District have found promissory

estoppel claims to lie where oral contract claims failed for indefiniteness. *Uphoff*, 2009 WL 5031345 at *4.

In *Uphoff*, defendant promised to provide a "meaningful retention bonus" to anyone who stayed with Wachovia after the sale to Wells Fargo. *Id*. at *1. Plaintiff stayed, wasn't paid a bonus, and sued for breach of contract and promissory estoppel. *Id*. at *2. The court held the complaint didn't allege a definite amount for the bonus and was therefore too indefinite for contract claim. *Id*. at *3. Nevertheless, the court held the allegations sufficient for promissory estoppel because it alleged *time* (bonus to be paid in January) and *term* (on condition plaintiff stayed with defendant until after the sale)). *Id*.

Like the promise in *Uphoff*, Ashley's promises are sufficiently definite to support a claim for promissory estoppel even if it there wasn't a sufficiently definite agreement on price (there was). Like *Uphoff*, Ashley's promise contains a *time* (relationship to last through 2018 or until OJC recovered its investment), and *term* (on condition OJC undertook the various investments described in the AC).

The question of whether OJC's "reliance was reasonable is a factual issue that cannot be resolved at the motion to dismiss stage." *Id*. at *5.

Ashley induced OJC's reliance with promises of future dealing and guaranteed recovery of its investment. After OJC relied on those promises, and Ashley received the benefit of OJC's substantial investment, Ashley pulled the plug leaving OJC out to dry for hundreds of thousands of dollars. OJC's investment is worthless to OJC now that Ashley has broken its promise; OJC has no ability to recover this investment unless Ashley is made to keep its word. Companies shouldn't be allowed to take advantage of trust and confidence built through a long business relationship to induce their partner's heavily reliance without insisting on a written contract, and then break their

word with reckless abandon and without consideration to the dire consequences of that breach –

simply because they decided to "change their strategy." See AC ¶32.[8] OJC has adequately alleged

injustice. Ashley's motion should be denied.

### VII.   OJC properly pled unjust enrichment and Ashley's inequitable receipt of an ongoing benefit

To state a claim for unjust enrichment, a plaintiff must (1) confer a benefit on the defendant,

that (2) the defendant voluntary accepts, and (3) inequity would occur if defendant retains the

benefit without payment. *Virgilio v. Ryland Group, Inc.* 680 F.3d 1329, 1337 (11th Cir. 2012).

OJC properly alleged all the elements. AC ¶¶ 62-65. OJC plead unjust enrichment by alleging

Ashley benefited from Ashley's marketing and promoting its products without payment.

Furthermore, Ashley's suggestion that it did not receive an ongoing benefit after it terminated its

relationship with OJC, is incorrect. OJC marketed and promoted Ashley's products to consumers

for the purpose of soliciting sales. Consumers didn't magically forget those marketing efforts when

Ashley terminated its relationship with OJC. Thus Ashley has received free marketing; marketing

it's already recognized were generally very successful. AC ¶24. Ashley's motion must be denied.

### CONCLUSION

Based on the foregoing, OJC respectfully requests Ashley's motion to dismiss be denied.

Dated July 20, 2018

---

[8] This is the most favorable way to view Ashley's actions. OJC, however, has alleged (sufficiently) that Ashley's actions were purposeful attempt to take advantage of OJC. *See supra* section V, A.

Respectfully submitted,

By:  s/ Velvel (Devin) Freedman
      Velvel (Devin) Freedman, Esq.
      Florida Bar No. 99762
      BOIES SCHILLER FLEXNER LLP
      100 S.E. 2nd Street, Suite 2800
      Miami, FL 33131
      Tel: 305-539-8400
      Fax: 305-539-1307
      E-Mail: vfreedman@bsfllp.com


      Shlomo Y. Hecht, Esq.
      SHLOMO Y. HECHT, P.A.
      11651 Interchange Cir. S.
      Miramar, FL 33025
      Tel: 954-861-0025
      Fax: 615-413-6404
      Email: Sam@hechtlawpa.com

      *Counsel for Plaintiff, OJ Commerce LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on July 20, 2018 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

      *s/ Velvel (Devin) Freedman*
      Velvel (Devin) Freedman