**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

CASE NO. 18-cv-61185-Ungaro/Hunt

OJ COMMERCE, LLC

      Plaintiff,

vs.

ASHLEY FURNITURE INDUSTRIES, INC.,

      Defendant.

_____/

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT

Defendant, Ashley Furniture Industries, Inc. ("Ashley") hereby replies to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Response") [D.E. 18] and in further support of its Motion to Dismiss the Amended Complaint ("Motion") [D.E. 13].

## PRELIMINARY STATEMENT

Rather than establish why the Amended Complaint should not be dismissed, OJ's Response highlights why each of the claims asserted by OJ fails as a matter of law. OJ's five count Amended Complaint is premised entirely on alleged *oral* promises[1] by Ashley to continue its "business relationship with OJC through the end of the 2018 calendar year" such that "OJC would earn back all the money it invested and profit." But the terms of the parties' *written* agreement and the statute of frauds both independently bar OJ's claims as is clear from OJ's own discussion of the parties' written agreement and from the face of OJ's own Amended Complaint. And even putting aside these dispositive issues, each of the claims included in OJ's Amended

---

[1] In its Motion, Ashley noted that the Amended Complaint is so vague that it is unclear whether OJ is claiming a series of oral agreements based on these purported promises or one overarching oral agreement. OJ's Response does nothing to clear up the mystery, fluctuating between referring to the alleged oral agreement (in the singular) and arguing about a series of purported oral agreements.

Complaint suffers from fundamental pleading deficiencies (which in many cases OJ admits it cannot remedy) that also require the dismissal of each claim.

## I.   OJ'S OWN ARGUMENTS UNDERSCORE THAT OJ'S CLAIMS ARE BARRED BY THE PARTIES' WRITTEN AGREEMENT

### A.   OJ Admits the Applicability of the Parties' Written Agreement and that the Parties Did not Modify their Written Agreement

OJ does not dispute that it executed the Electronic Commerce Agreement ("Agreement"), that the copy of the Agreement attached to the Motion is a true and correct copy of the Agreement, and that the Court may consider the Agreement in ruling on the Motion.  Rather, OJ argues that the alleged oral agreement that is the subject of its Amended Complaint purportedly requiring Ashley to continue to do business with OJ through the end of the 2018 calendar year and guaranteeing OJ a profit does not contradict or modify the parties' written Agreement. (Response, pp. 2-5).  The arguments that follow, however, establish exactly the opposite.

To remind the Court, the written Agreement defines "Transactions" to mean "purchase and sale transactions[2]" and its Terms and Conditions "govern and control all Transactions between [OJ] and Ashley.[3]"  Pursuant to the Agreement, "[a]cceptance by Ashley of all Purchase Orders is required and any . . .Purchase Order  . ... shall not give rise to any obligation unless and until [OJ] has properly received in return an Acceptance Document from Ashley.[4]"  Further, the termination provision of the Agreement provides that the Agreement is terminable upon notice by either party.[5] Ashley could not possibly have made clearer that it was not agreeing to continue to do business with OJ for any particular period of time or agreeing to accept any particular number of Purchase Orders.

OJ attempts to dance on the head of a pin to argue that the alleged oral agreement does not contradict these provisions of the Agreement. According to OJ, notwithstanding the oral agreement, the Agreement can still be terminated (in fact it has been), but upon termination Ashley is bound by the oral agreement to accept paper purchase orders. (Response, p. 4).  Not only would this be an extremely odd agreement for OJ (a self-described "ecommerce retailer") to

---

[2] D.E. 13-1, at third whereas clause.
[3] D.E. 13-1, Exhibit A, Standard Terms and Conditions of Sale, at ¶2.
[4] D.E. 13-1, at  ¶ 7 C and Exhibit A, Standard Terms and Conditions of Sale, at ¶3.
[5] D.E. 13-1, at  ¶ 4.

make, but OJ itself admits that the Agreement applies to all "purchase and sales transactions" between OJ and Ashley.  (Response, p. 2, n.1.).

OJ also argues that although "under the oral agreement Ashley is under an obligation to accept *a sufficient number* of purchaser orders that will result in OJC earning back its investment in 2018,"  the oral agreement does not contradict the Agreement because Ashley is not obligated "to fulfill [any] *specific* purchase order until Ashley formally accepts it." (Response, p. 4) (emphasis added).  This is really just the same thing as saying Ashley is required to accept at least some Purchase Orders, which, as noted above, is directly contrary to multiple provisions of the Agreement.

And, OJ points out that while the Agreement admittedly imposes no obligation on Ashley to continue to do business with OJ, the Agreement does not prohibit Ashley from ever accepting an obligation to do so. (Response, p. 4).  Exactly.  The Agreement specifically provides the parties with the mechanism for changing their Agreement: a "written instrument duly executed by both parties[6]."

OJ does not even suggest, however, that its Amended Complaint sufficiently alleges the requirements for modification of the Agreement (to the contrary, OJ argues that there has been no modification).  This Court should thus reject OJ's strained attempts to circumvent the Agreement. The plain language of the parties' written Agreement should control and dictates that all of OJ's claims be dismissed.

### B. The Written Agreement is *Not* Illusory and the Amended Complaint Does not Allege any Theory Based on the Purported Illusory Nature of the Agreement

Although the Amended Complaint mentions nothing about the purportedly illusory nature of the Agreement, OJ next argues that Ashley's Motion should be denied "even if this Court construes the oral agreement to be in direct conflict with the written [Agreement]" because the Agreement is purportedly "illusory." (Response, pp. 5-7).  According to OJ, the Agreement is "illusory" because it imposes no obligations on Ashley.  This is demonstrably false.  Pursuant to the Agreement, Ashley must, *inter alia,* fulfill each Purchase Order it accepts,[7] and it must

---

[6] D.E. 13-1, at  ¶ 15A. The Agreement also contains an anti-waiver provision with respect to Ashley's rights under the Agreement.  *Id.* at ¶ 15 D.

[7] D.E. 13-1, at  ¶ 7 C and  Exhibit A , Standard Terms and Conditions of Sale, at ¶ 3

comply with specified warranties of its products.[8]  And, while the Agreement limits the remedies allowed for breach ("consequential, special or contingent damages or lost profits" are disallowed), certainly not all remedies are disallowed under the Agreement.[9]  That OJ apparently does not like these contract terms does not render the Agreement illusory.[10]

In short, the written Agreement is applicable, it has not been modified (as OJ itself admits), and it is not illusory.  Thus, again, the plain language of the Agreement controls and dictates that each of OJ's claims be dismissed.

## II.    OJ'S ARGUMENTS THAT THE STATUTE OF FRAUDS DOES NOT BAR ITS CLAIMS CONTRADICT THE ALLEGATIONS OF THE AMENDED COMPLAINT

In order to try to avoid the bar of the Statute of Frauds,[11] OJ argues that "(i) some of the agreements could have been performed within 1-year and (ii) OJC completed performance." (Response, p. 7).  These arguments literally make no sense and are squarely foreclosed by the allegations of OJ's Amended Complaint.

Specifically, OJ first focuses on the July 31, 2017 meeting alleged in its Amended Complaint which purportedly involved a request by Ashley for OJ to set up a shipping relationship with an LTL shipping company. (DE 11 at ¶¶ 12-14).  According to OJ's allegations,

---

[8] D.E. 13-1, Exhibit A, Standard Terms and Conditions of Sale, at ¶ 10

[9] *Id.* Ironically, OJ bemoans the fact that while "direct" damages are not disallowed by the Agreement, OJ has no direct damages.

[10] This is true under both Florida and Wisconsin law (the law applicable to the Agreement).  *See, e.g. Zucker for BankUnited Financial Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (S.D. Fla. 2017)(Ungaro, J.)(rejecting argument that insurance policy was illusory; "after the fact wishes are not enough to change before the fact choices."); *Carroll v. Stryker Corp.,* 658 F.3d 675, 682 (7th Cir. 2011)(applying Wisconsin law and explaining that a contract is only illusory "where one party 'assumes no detriment or obligation' and therefore has given no consideration.").

[11] Fla. Stat. § 725.01 provides in pertinent part:

> No action shall be brought . . . upon <u>any agreement that is not to be performed within the space of 1 year</u> from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof <u>shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized</u>.

Fla. Stat. § 725.01 (hereafter the "Statute of Frauds") (emphasis added).

at this meeting "Ashley induced OJC into making this substantial investment by promising OJC that if it undertook this investment, Ashley would grant OJC access to its very large product line of LTL items through the end of 2018." *Id.* at 14. Thus, even if this is considered a separate alleged oral agreement, the face of OJ's own Amended Complaint establishes the "agreement" was to have lasted 17 months (from July 31, 2017 through the end of 2018) and by definition could not have been performed within one year.

The same is true with respect to each subsequently discussed meeting. Even assuming each so-called meeting (most are alleged to be phone calls) gave rise to separate oral agreements, each oral agreement (of varying lengths in excess of 12 months) by definition could not have been performed within one year. *See* D.E. 11 at ¶¶ 15-16 (alleging that at the September, 2017 meeting "Ashley promised OJC that if it undertook these expenses, OJC would be able to sell Ashley products throughout the entire 2018 calendar year"); at ¶¶ 17-18 (alleging that at the mid-November, 2017 meeting "Ashley induced OJC into making this substantial investment by promising OJC that if it undertook this investment, OJC would have throughout 2018 'live' access to Ashley's inventory . .[and] increased merchandise, discounts, incentives and support throughout the 2018 calendar year); ¶19 (alleging that at the next meeting which purportedly occurred "towards the end of 2017" but before the December 7, 2017 meeting that "Ashley reiterated its promise that if OJC undertook this investment it would provide OJC with greater access, increased merchandise, discounts, incentives and support through the 2018 calendar year."); and ¶¶ 20-23 (alleging that at the December 7, 2017 meeting Ashley promised "OJC that in return for these investments, their relationship would continue for the full 2018 calendar year," italicizing the purported agreement to work together "throughout the *entire* 2018 calendar year").

OJ's argument that it has fully performed each of the purported oral agreements is also directly counter to its own allegations. Florida law is absolutely clear that "the doctrine of partial performance does not remove the bar of the statute of frauds for actions seeking damages based on an oral contract." *LaRue v. Kalex Construction and Development, Inc.*, 97 So.3d 251, 253 (Fla. 3d DCA 2012) (emphasis added)(citing string cite). *See also*; *MY P.I.I., LLC v. Tognum America, Inc.*, 2016 WL 7626201, *7 (S.D. Fla. 2016)("the doctrine of part performance to excuse a failure to comply with the Statute of Frauds is not available in Florida to actions solely for money damages.")(citing string cite); *Dwight v. Tobin*, 947 F.2d 455 (11th Cir. 1991)(applying Florida law, and holding that part performance exception is not available to

remove contract from operation of the statute of frauds in an action for damages);. *Lynkus Communications, Inc. v. WebMD Corporation*, 965 So.2d 1161, 1166 (Fla. 2d DCA 2007) ("the doctrine of part performance does not apply to actions 'for the recovery of damages for alleged breach of an oral contract.'"). Thus, in order to even try to argue[12] that its claims are not barred the Statute of Frauds, OJ must have <u>fully</u> performed the alleged oral agreement(s). But based on the allegations of the Amended Complaint, it is clear that OJ has <u>not</u> fully performed.

Specifically, although OJ points to allegations in its Amended Complaint that in reliance on Ashley's purported promises OJ made "significant" investments (D.E. 11 at ¶¶25-30), it nowhere alleges that it fully completed integration with the LTL shipper and Ashley's ATP System or that it fully completed all of the marketing of Ashley's products that the parties purportedly agreed to for the entire 2018 calendar year. More importantly, the purported oral agreement(s) alleged in the Amended Complaint supposedly contemplated OJ continuing to sell Ashley's products for the entire 2018 calendar year (D.E. 11 at ¶¶ 14,16,18,19,21, 22, 23), something that obviously was not fully performed.

Thus, with the sole exception of OJ's unjust enrichment claim, each of OJ's claims is barred, as a matter of law, by the Statute of Frauds even putting aside the parties' written Agreement.[13]

---

[12] Many courts applying Florida law hold that even <u>full</u> performance is insufficient to remove a contract from the statute of frauds in a case seeking money damages. *See, e.g. Topp, Inc. v. Uniden America Corp.,* 483 F. Supp.2d 1187, 1194-1195(S.D. Fla. 2007) (rejecting argument that full performance exception applied to claims for money damages and stating: "Florida courts have uniformly held that the 'performance exception' to the Statute of Frauds, which arose in land sale cases, applies only when a plaintiff seeks purely equitable relief."); *Locke v. Wells Fargo Home Mortgage,* 2010 WL 4941456, *4 (S.D. Fla. 2010)(dismissing complaint because full performance exception applies only to claims seeking equitable relief); *Roberts v. Stutman*, 2011 WL 13225074, *5 (S.D. Fla. 2011)(full performance exception did not apply to action for damages). Even if this Court does not follow these cases, as discussed above, OJ's Amended Complaint establishes that OJ has <u>not</u> fully performed.

[13] *See, e.g. Riley v. Home Retention Services, Inc.*, 2014 WL 11906642, *4 (S.D. Fla. 2014)(Ungaro, J.)(dismissing with prejudice claims asserted in the complaint alleging oral lending agreement because claims were barred by the banking statute of frauds; explaining "dismissal for failure to state a claim is warranted where, as here, the [statute of frauds] defense is apparent on the face of the complaint."); *DeMarco v. T.D Bank, N.A.,* 2013 WL 12094325, * 3 (S.D. Fla. 2013)(dismissing complaint with prejudice because allegations of complaint revealed an oral agreement barred by both the banking statute of frauds and statute of frauds governing purported oral contracts not to be performed within a year); *In re Stilley v. Stilley*, 2015 WL 8781270, * 6 (Bankr. S.D. Fla. 2015) (granting a motion to dismiss where the allegations of the

### III.   FUNDAMENTAL PLEADING DEFICIENCIES ALSO REQUIRE THE DISMISSAL OF EACH OF OJ'S CLAIMS

#### A.   The Essential Terms of the Alleged Oral Agreement are not Alleged and Cannot be Implied by Unalleged "Course of Conduct"

In its Motion, Ashley pointed out that OJ's claim for breach of (oral) contract (Count I) also failed to sufficiently allege the essential terms of the purported oral contract(s). OJ's breach of contract claim alleges "the definite terms of Ashley's promises include its promise to continue its business relationship with OJC through the end of the 2018 calendar year, and to provide sufficiently greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested and profits." *See* D.E. 11 at ¶ 41.   But the Amended Complaint does <u>not</u> allege what "continue its business relationship with OJC through the end of the 2018 calendar year" means.   For example, was Ashley required to fulfill any customer order sent by OJ no matter what the price, credit issues, or other terms? And, how could Ashley possibly know what it would take for OJ to earn profits in 2018, let alone what "sufficiently greater access" and "support" it would take for OJ to do so?

In response, OJ makes a lengthy argument that these essential terms should be implied into the purported oral contract based on the parties' "course of conduct."   Ashley has no idea what "course of conduct" OJ is referring to.   The only thing alleged in the Amended Complaint is

---

complaint revealed an alleged oral partnership was barred by the Statute of Frauds); *Jester v. Pawley*, -- So.3d-- (Fla. 3d DCA 2018)(affirming dismissal of fraud claims with prejudice based on the statute of frauds) *Conner, I, Inc. v. The Walt Disney Company*, 827 So.2d 318, 319 (Fla. 5th DCA 2002) (affirming trial court's order dismissing the complaint with prejudice where the allegations of the complaint revealed an alleged oral joint venture was barred by the Statute of Frauds); *Law Offices of Lynn W. Martin, P.A. v. Madson, III,* 144 So.3d 707, 708 (Fla. 1st DCA 2014)(affirming dismissal with prejudice of plaintiff's amended complaint based on the Statute of Frauds and explaining that attorney's fees would be awarded to appellee because "[t]he law applicable to the case is clear and well-settled such that the appellant should have known that the relief sought was not supported by an application of the law."); *Johnson v. Edwards*, 569 So.2d 928, 929 (Fla. 1st DCA 1990)(affirming dismissal of second amended complaint with prejudice based on the Statute of Frauds); *De Vaux v. Westwood Baptist Church,* 953 So.2d 677, 680 (Fla. 1st DCA 2007)(affirming trial court's dismissal with prejudice of plaintiff's complaint based on the Statute of Frauds and granting an award of attorney's fees pursuant to Fla. Stat. 57.105 for filing a frivolous appeal given the obvious applicability of the Statute of Frauds).

that the parties' business relationship began in "mid-2013" when the parties entered into their written Agreement, that the parties worked together successfully for four years, and that in 2017 Ashley allegedly made the purported vague promises which allegedly resulted in the oral agreement(s) (D.E. 18, ¶¶ 7-33). The Amended Complaint does not include a single allegation about the customer orders Ashley would be required to fulfill through the end of 2018 under the alleged oral agreement(s) based on the parties' "course of conduct," much less the applicable price, credit issues, or other terms.  Nor are there any allegations regarding how the parties' course of conduct could possibly inform the issue of what it would take for OJ to earn profits in 2018.  To the contrary, according to the Amended Complaint, the purported oral contract(s) were reached starting in July of 2017 and there are no allegations whatsoever as to the parties' course of conduct (which in reality was simply consistent with the written Agreement) before Ashley terminated its written Agreement with OJ in February, 2018. Accordingly, Count I should also be dismissed because the essential terms of the purported oral agreement(s) are <u>not</u> alleged and there is nothing definite whatsoever about what has been alleged in the Amended Complaint.

### B.  There is no Count for Breach of "Contract Implied in Fact" Included in the Amended Complaint

OJ appears to argue that, if this Court finds it has not sufficiently alleged breach of an express oral agreement, this Court should nevertheless deny Ashley's motion to dismiss Count I of the Amended Complaint based on a "contract implied in fact" that should be "infer[red] in whole or in part from the parties' conduct."  (Response, p. 15).  Putting aside that, as noted above, OJ has not alleged anything about the parties' "course of conduct," OJ has also not included a count for breach of  a "contract implied in fact" in the Amended Complaint and thus Ashly will not waste the Court's time discussing the failings of such a claim.

### C.  Counts III and IV should also be Dismissed Because OJ has Failed to Sufficiently Allege the Elements of Either Fraudulent or Negligent Misrepresentation

In its Motion, Ashley pointed out, *inter alia,* that OJ's misrepresentation claims fail to comply with the requirements of Rule 9(b).  In its Response, OJ states "[m]any of these communications happened over the phone, and it would be unreasonable for OJC to guess exactly which one of Ashley's agents made which promises." (Response, p. 13).  Ashley agrees wholeheartedly that in pleading a misrepresentation claim in good faith OJ should not "guess."

But nevertheless OJ is obligated under Rule 9(b) to allege, *inter alia*, "precisely what statements were made in . . . oral representations . . . and the person responsible for making . . . same." *See, e.g. In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1356 (S.D. Fla. 2005)(quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). That OJ admits it cannot comply with these requirements simply underscores that this is not a valid fraud case.

Putting aside OJ's inability to identify who made what promise, as already discussed at length above, OJ has also not alleged the required specificity in terms of the purported promises underlying its misrepresentation claims. According to OJ, the specificity required by Rule 9(b) as to the purported substance of the "misrepresentations" should be inferred from "the backdrop of a four-year relationship which informed the parties' statements." (Response, p. 18). This appears to be a fraud by "course of conduct" argument. As discussed, however, there is no "course of conduct" alleged in the Amended Complaint. And, OJ cites no case which suggests that the requirements of Rule 9(b) can be met by inference through course of conduct.

Moreover, as noted in the Motion, OJ has not alleged any purported misrepresentation of material *fact*. Again, the purported "misrepresentations" all involve alleged promises as to the future-- that Ashley would continue to do business with OJ through the end of 2018 such that OJ would not only recoup its alleged investments, but earn additional profits by the end of 2018. OJ points to no allegations in its Amended Complaint establishing how Ashley could possibly know, let alone have superior knowledge of,[14] the level of business that OJ would generate from customers in 2018 and whether this business would be sufficient for OJ to be profitable.

Nor has OJ identified any factual allegations that would make plausible its conclusory allegation that Ashley knew its purported representations were false "as Ashley did not intend to maintain its business relationship throughout the 2018 calendar year.[15]" OJ merely points to the "abrupt" termination by Ashley even though OJ had purportedly given Ashley "the most return

---

[14] As explained in the Motion, the exception to the rule against predicating a fraud claim on future promises requires that the plaintiff plausibly allege that "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false." *Felicia*, 2018 WL 2183885 at *6.

[15] *See, e.g. Adler v. Westjet Airlines, Ltd.*, 31 F. Supp.3d 1381, 1386 (S.D. Fla. 2014) ("Given the absence of other supporting facts, the [plaintiffs'] assertion that '[defendant] knew or should have known that its representation . . . was false' is too conclusory to supply the necessary allegations of intent.")

on investment of any other vendor" (which, if true, would seem to weigh against any incentive by Ashley to defraud OJ by terminating the relationship).

In short, the Response only emphasizes that OJ's misrepresentations claims fall woefully short of what is required under Rule 9(b) and applicable law, and that these fundamental shortcomings cannot be remedied by OJ.

### D. OJ's Claims for Promissory Estoppel (Count II) and Unjust Enrichment (Count V) Should also Be Dismissed for Pleading Deficiencies

OJ admits that "[c]laims for promissory estoppel must be definite as to terms and time." (Response, 18).  Moreover, "ordinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." *W.R. Grace & Co. v. Geodata Services, Inc.,* 547 So.2d 919, 924 (Fla. 1989)(also explaining "mere expectations based upon oral representations regarding future rights" normally insufficient).  At best, "mere expectations" about the future is all that OJ has alleged in this case. As already discussed above, there is nothing "definite" as to the terms of what was allegedly orally promised to OJ during the purported phone calls/meetings scanning from January, 2017 through December 7, 2017.  Nor does OJ allege any facts sufficient to plausibly allege that Ashley knew at the time of its alleged promises that it did not intend to keep them.

OJ's claim for unjust enrichment is equally flawed.  In its Motion, in addition to pointing out that the claim failed due the existence of the parties' express written Agreement, Ashley pointed out that there were no factual allegations as to what benefits Ashley "unjustly" accepted and retained as there is no allegation or explanation of any on-going benefits to Ashley after termination of the relationship.  In response, OJ merely points to its allegation that it marketed and promoted Ashley during their business relationship and that "historically, OJC had given them [Ashley] the most return on its investment of any other vendor." (D.E. ¶ 24).  Accepting this allegation as true as required on a motion to dismiss, again, this does not suggest that OJ did not receive the financial benefit of this marketing during the time of its business relationship with Ashley based on the sales it generated, or explain any on-going benefits to Ashley after termination (for instance, OJ does <u>not</u> allege it continues to market Ashley products or, even if it did, why this would be beneficial to Ashley since OJ is no longer authorized to sell its products). Again, OJ's mere conclusory recitation of the elements of an unjust enrichment claim is exactly what the Supreme Court has found insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE**
**& AXELROD LLP**
*Attorneys for Defendant Ashley Furniture*
*Industries, Inc.*
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

BY:      */s/ Raquel M. Fernandez*
**MITCHELL E. WIDOM**
Florida Bar No. 473911
mwidom@bilzin.com
**RAQUEL M. FERNANDEZ**
Florida Bar No. 55069
rfernandez@bilzin.com
eservice@bilzin.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2018, I caused the foregoing documents to be served on all counsel of record via CM/ECF system.

By:  */s/ Raquel M. Fernandez*
        Raquel M. Fernandez, Esq.