**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:18-cv-61185-UU

OJ COMMERCE, LLC,

      Plaintiff,

v.

ASHLEY FURNITURE INDUSTRIES, INC.,

      Defendant.

                                           /

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint (the "Motion"). D.E. 13. The Court has reviewed the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. For the following reasons the motion is GRANTED.

### I.    Factual Background

Unless otherwise indicated, the following facts are taken from the well-pleaded allegations in Plaintiff's amended complaint. D.E. 11.

#### A.  The Parties

Plaintiff is a Delaware corporation with its principal place of business in Broward County, Florida, whose primary business is e-commerce retail, selling products to consumers through online marketplaces. D.E. 11 ¶ 1. Defendant is a Wisconsin corporation, with its principal place of business in Wisconsin that manufactures furniture to be sold to retailers like Plaintiff. *Id.* ¶ 2.

#### B.  The Early Relationship

In mid-2013, Plaintiff and Defendant commenced a business relationship wherein Plaintiff would sell Defendant's products directly to consumers. *Id.* ¶ 7. Specifically, Plaintiff would receive orders from its customers, submit the orders to Defendant, Defendant would ship the

orders directly to Plaintiff's customers, and Plaintiff would pay Defendant for these products. *Id.*

To memorialize this agreement, the parties entered into an Electronic Commerce Agreement that

established a process by which Plaintiff could submit electronic orders to Ashley for fulfillment.

*Id.* ¶ 8; D.E. 7-1.

        C.  The Investments

    On January 19, 2017, Defendant called Plaintiff to discuss Plaintiff's marketing of

Defendant's products. D.E. 11 ¶ 10. At this meeting, Defendant allegedly asked Plaintiff to

invest in their relationship by augmenting Plaintiff's catalogue of Defendant's goods by adding

images, content and other marketing investments. *Id.* ¶ 11. Defendant allegedly assured Plaintiff

that if it undertook these investments, Defendant would commit more merchandise, support, and

personnel to Plaintiff to ensure a successful long-term relationship. *Id.*

    On July 31, 2017, Defendant allegedly requested that Plaintiff enter into a shipping

relationship with a third party shipping company,[1] which Defendant allegedly knew would

require Plaintiff to "invest in expensive custom information technology development." D.E. 11 at

3. To induce Plaintiff to enter into this agreement, Defendant allegedly asserted that it would

grant Plaintiff access to more of its product line through the end of 2018 and that Defendant

would provide Plaintiff with sufficient merchandise, discounts and incentives such that the

investment would pay for itself. *Id.* ¶ 14. On September 28, 2017, Defendant contacted Plaintiff

to follow up on the expansion of Plaintiff's shipping capabilities and also asked Plaintiff to run

various marketing promotions for the 2018 calendar year. D.E. 11 ¶¶ 15-16. Defendant reiterated

that if Plaintiff ran these marketing promotions, Plaintiff would have the opportunity to sell

---

[1] Plaintiff states that "At the July Meeting, Ashley requested OJC to enter into [a] . . . shipping relationship with Watkins Shepherd." D.E. 11 at 3. Plaintiff does not explain who "Watkins Shepherd" is, but the Court assumes for the purposes of this order that Watkins Shepherd is a shipping company. Presumably this alleged request was to facilitate the shipment of a larger number of Defendant's goods.

Defendant's products throughout the entirety of 2018 and would earn back all of the money invested through discounts and incentives offered by Defendant.

In mid-November 2017, Defendant asked Plaintiff to integrate its inventory system with Defendant, which Defendant allegedly knew would require Plaintiff to invest in expensive custom technology. D.E. 11 ¶ 17. Defendant asserted that after making this investment, Plaintiff would have "live" access to Defendant's inventory throughout 2018 and be able to list Defendant's products immediately. *Id.* ¶ 18. Plaintiff also requested that Defendant update its product catalogue with Defendants new 2018 products, which Defendant allegedly knew would involve great cost. *Id.* ¶ 19. Defendant also reiterated that Plaintiff would earn back all of the money invested through discounts and incentives offered by Defendant. *Id.*

Finally on December 7, 2017, Defendant re-asserted all of the promotions and investments Defendant wanted Plaintiff to invest in and run until the end of 2018. D.E. 11 ¶ 20. Defendant allegedly promised Plaintiff that in return for its efforts, Defendant would:

> (i) support OJC through 2018 with personnel and promotions sufficient to regain its investments and profit; (ii) work together to ensure OJC could replicate the success of the 2017 holiday season throughout the entire 2018 calendar year; and (iii) promised that the year of 2018 would be the best year of its business relationship with OJC
> D.E. 11 ¶ 23.

In reliance on these promises, Plaintiff spent significant resources preparing its 2018 offering of Defendant's products, including hiring data analysts, graphic designers, and expanding its shipping and programming systems. *Id.* ¶¶ 25-30.

### D.  Termination of Relationship

On February 13, 2018, Defendant terminated its relationship with Plaintiff. D.E. 11 ¶ 31. Defendant's stated rationale for the termination was that Defendant was changing its distribution strategy; the decision to terminate the relationship was not a result of any acts or omissions on

the part of Plaintiff. *Id.* ¶ 32. Plaintiff alleges that as a result of its reasonable reliance on Defendant's representations and abrupt termination of its business, it has suffered damages. *Id.* ¶ 33.

### E. Written Agreement

While not attached by Plaintiff, Defendant's motion to dismiss attaches the parties' written E-Commerce Agreement, entered into on May 14, 2013. (the "Agreement").[2] D.E. 13-1. The Agreement sets out the framework in which the parties are to share information, advertising materials and order information to facilitate purchase and sale transactions. The Agreement is governed by Wisconsin law. D.E. 13-1 ¶ 9.

## II.     Procedural Background

On May 25, 2018, Defendant removed the instant action to this Court. D.E. 1. On June 1, 2018, Defendant filed a motion to dismiss, D.E. 7, which was subsequently mooted by Plaintiff's amended complaint. D.E. 11. Plaintiff's amended complaint contains five counts under Florida law: breach of the oral contract, or in the alternative, promissory estoppel; fraudulent misrepresentation; negligent misrepresentation; and unjust enrichment. *Id.* Defendant then re-filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 2, 2018. The Motion is fully briefed and ripe for disposition.

## III.     Legal Standard

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this

---

[2] In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010). The Agreement is plainly central to Plaintiff's claim and Plaintiff's response does not challenge its authenticity. Therefore the Court will consider the Agreement attached to Defendant's motion to dismiss. D.E. 7.

stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.

## IV.   Analysis

As discussed *supra,* Plaintiff's amended complaint contains one count for breach of contract and four counts of alternative equitable remedies. D.E. 11. Defendant argues that Plaintiff's claims must be dismissed with prejudice because: (1) Plaintiff's claims are barred by the terms of the Agreement and Plaintiff should not be allowed to circumvent the terms of the Agreement; (2) Plaintiff's claims are barred by the Statute of Frauds; and (3) Plaintiff's complaint contains fatal pleading deficiencies. D.E. 13. The Court will address each contention in turn.

A.  <u>Are Plaintiff's Claims Barred by the Agreement?</u>

Although not entirely clear, Defendant's argument appears to be that the Agreement controls the parties' relationship and the terms of the Agreement bar Plaintiff's claims based on the alleged oral contract. In support, Defendant argues that the Agreement states that "All Transactions contemplated by this Agreement <u>subsequent to the execution of this Agreement</u> shall be controlled and governed by Ashley's Standard Terms and Conditions of Sale . . . ." D.E. 13-1 at 4 ¶ 8C (emphasis added). "Transactions" are defined as "purchase and sale transactions." D.E. 13-1 at 2. Defendant also points to the Standard Terms and Conditions of Sale, which further state that "[t]hese Standard Terms and Conditions of Sale . . . shall govern and control all Transactions between [Plaintiff] and [Defendant]." *Id.* at 8 ¶ 2. Defendant notes that pursuant to the Agreement and the Standard terms and Conditions of Sale, it has no obligation with respect to any purchase order unless Defendant has accepted and sent Plaintiff an "Acceptance Document:"

> **Acceptance:** Acceptance by [Defendant] of all Purchase Orders is required and any such Purchase Order that has been properly received by Ashley shall not give rise to any obligation until [Defendant] has properly received in return an Acceptance Document (as specified in the Appendix) from [Defendant].
> D.E. 13-1 at 4 ¶ C (emphasis in original).

Defendant also points to the anti-waiver and merger clause in the Agreement which states:

> **Complete Agreement, Modifications.** Each party acknowledges that it has read this Agreement in its entirety (including the Appendix and the Exhibit A Standard Terms and Conditions), understands it, and agrees to be bound by its terms. This Agreement constitutes the complete agreement of the parties relating to the matters specified in this Agreement and supersedes and merges all prior proposals, understandings, representations and agreements, whether oral or written, with respect to such matters. No oral modification or waiver of any of the provisions of the Agreement shall be binding on either party and this Agreement may not be modified or altered except by written instrument duly executed by both parties. No obligation to enter into any Transaction is to be implied from the execution or delivery of this Agreement.
> *Id*. at 5 ¶ 15 A (emphasis in original).

Defendant concludes that:

> the terms of the parties' Agreement could not be more clear (1) that the Agreement is terminable simply upon either party giving written notice; (2) that Ashley is under no obligation whatsoever to continue to do business with OJ in connection with any Transaction or Purchase Order not expressly accepted by Ashley; and (3) that the Agreement may not be modified or altered except by written instrument duly executed by both parties. These provisions are fatal to each of OJ's claims, all premised on the notion that Ashley orally agreed to continue the parties' business relationship through the end of the 2018 calendar year.
> D.E. 13 at 8-9.

Plaintiff responds that the Agreement is illusory because it only obligates Defendant to perform when Defendant unilaterally decides to perform and provides no remedies for breach. D.E. 18 at 5-7.[3] Although Plaintiff cites to Florida law to argue that the Agreement is illusory, the Agreement is governed by Wisconsin law. D.E. 13-1 at 4 ¶ 9. However, Wisconsin law and Florida law are essentially the same on the subject of illusory contracts. *Compare Metro. Ventures, LLC v. GEA Assocs.,* 2006 WI 71, ¶ 33, 291 Wis. 2d 393, 413, 717 N.W.2d 58, 68, opinion clarified on denial of reconsideration, 2007 WI 23, ¶ 33, 299 Wis. 2d 174, 727 N.W.2d 502 (Explaining that under Wisconsin law an agreement is illusory "when the contract is conditional on some fact or event that is wholly under the promisor's control and his [or her] bringing it about is left wholly to his [or her] own will and discretion....") (quotation omitted), *with Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. Dist. Ct. App. 1988) (A contract is illusory "[w]here one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, [and] there is no valid contract and neither side may be bound.").

As described by Plaintiff, the Agreement's main object is to facilitate purchase and sale transactions between Plaintiff and Defendant. D.E. 18 at 8. However, Plaintiff argues, the

---

[3] Plaintiff also argues that the terms of the Agreement itself do not bar its claims, but as the Agreement is illusory, the Court does not address this contention.

Agreement is illusory because the contract permits Defendant to fulfill these obligations at its

sole option:

> **Acceptance:** Acceptance by Ashley of all Purchase Orders is required and any such Purchase Order that has been properly received by <u>Ashley shall not give rise to any obligation until [Defendant] has properly received in return an Acceptance Document (as specified in the Appendix) from [Defendant]</u>.
> D.E. 13-1 at 4 ¶ C (emphasis added).

> No obligation to enter into any Transaction is to be implied from the execution or delivery of this Agreement.
> *Id.* at ¶ 15 A.

Indeed, Defendant itself in its motion to dismiss states that it "is under no obligation

whatsoever to continue to do business with OJ in connection with any Transaction or Purchase

Order not expressly accepted by [Defendant]." D.E. 13 at 8. Plaintiff further notes that while

there are incidental obligations, such as product warranty, "these clauses do not obligate

Defendant until after it has unilaterally decided to accept an order." D.E. 18 at 6 n.4. Defendant

responds that the Agreement is not illusory because Defendant must fulfill each purchase order it

accepts and comply with specified warranties of products. D.E. 19 at 3.

The Court agrees with Plaintiff and finds that the Agreement is illusory. It is of no moment

that Defendant must perform *when it chooses* to perform; under the terms of the Agreement,

Defendant's performance is conditional upon the sending of acceptance letter, the sending of

which is "wholly under the promisor's control and his bringing it about is left wholly to his own

will and discretion." *Metro. Ventures, LLC,,* 2006 WI 71, ¶ 33, 291 Wis. 2d 393, 413, 717

N.W.2d 58, 68; *see also, Stinger Industries, LLC v. Hill-Rom Co., Inc.,* 23 Fed. Appx. 472 (6th

Cir. 2001). The Agreement's obligations on Defendant can be more succinctly summarized as "I

will if I want to." *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010); *See*

*also Rosenberg*, 541 So. 2d at 1207 (finding contract and created no real obligation and was

therefore illusory where payment obligation was contingent upon each parties' consent).[4] As the

Agreement is illusory, it is unenforceable and Plaintiff's claims are therefore not barred by the

Agreement.

        B.  Statute of Frauds

           i.  Choice of Law

Defendant next argues that the claims are barred by the statute of frauds. In order to

determine if Plaintiff's claims are barred by the statute of frauds, the Court must first determine

which state's statute of frauds applies. As this action is before the court upon diversity

jurisdiction, the Court applies the substantive law of the forum state, including its choice of law

rules, which in this case is Florida. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The Eleventh

Circuit Court of Appeals has enumerated the following "three-step" test for choice of law issues:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state of [Florida] applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.
> *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1540 (11th Cir.1983).

The validity of the oral agreement and whether Plaintiff's breach of contract claim is barred

by the statute of frauds plainly sound in contract.[5] "[F]or purposes of determining whether a

---

[4] Defendant also argues that the Agreement is illusory because it provides no remedy for breach. D.E. 18 at 8. Specifically, Plaintiff argues that the only potential damages it could suffer are "lost profits" and because the Agreement prohibits Plaintiff from recovering "lost profits," it provides no remedy for breach. The Court is unpersuaded; the Agreement provides that Plaintiff is entitled to creditor or replacement for defective parts, and the Agreement only limits damages for claims arising out of defects or inability to make use of Defendant's goods. D.E. 13-1 at 8 ¶ 10; *cf. Pier 1 Cruise Experts v. Revelex Corp*., No. 9:16-CV-80567, 2017 WL 5713931, at *2 (S.D. Fla. July 18, 2017) (finding contract illusory where contract prohibited liability for damages of any type arising from any conduct related to the contract).

[5] "[C]ourts are to undertake a separate choice-of-law analysis for each claim." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 875 n. 11 (11th Cir. 2018). Plaintiff's claims for fraudulent and negligent misrepresentation sound in tort. Under Florida law, the Court must apply the "significant relationships test" as set forth in the Restatement (Second) of Conflicts of Laws §§ 145-148 (1971) to determine which state's substantive law will apply to tort claims. *Bishop v. Florida Specialty Paint Co*., 389 So.2d 999 (Fla.1980). Under this test the Court must determine which State has the most significant relationship to the occurrence and the parties by

valid contract was formed, Florida adheres to the *lex loci contractus* doctrine." *Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1226 (M.D. Fla. 2007) (emphasis added) (quotation omitted). Under that doctrine, "the law applied to questions regarding validity and substantive obligations of a contract is the law of the state in which the contract is made." *Id.* (quotations omitted). "A contract is made where the last act necessary to complete the contract is performed." *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996). "As specifically related to oral contracts, they are considered "made" in the state in which the oral agreement was reached." *Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-CV-270-J-99HTS, 2005 WL 1027261, at *3 (M.D. Fla. Mar. 30, 2005) (citation omitted). "Matters regarding performance of a contract, however, are governed by the law of the place where the contract is to be performed." *Id.*

Applying these principles here, the dispute in this case concerns issues of validity of the oral agreement; which sounds in contract. The last meeting alleged to have occurred as part of the oral contract occurred on December 7, 2017 at Plaintiff's "facilities." D.E. 11 at 5. Plaintiff does not explain where its "facilities" are located, but it does assert that it is a Delaware corporation with its principal place of business in Broward County, Florida. D.E. 11 ¶ 1. Defendant also asserts that Plaintiff's facilities are in Broward, County Florida. D.E. 13 at 11 n.7. Moreover, in Defendant's motion to dismiss and in Plaintiff's response, the Parties argue that Florida's statute

---

considering six distinct factors. Restatement (Second) of Conflict of Laws § 148 (1971). These factors also lead the Court to conclude that Florida law applies: Plaintiff acted on reliance on Defendant's representations in Florida, Plaintiff received the representations in Florida via telephone and via meetings at its facilities with Defendant's representatives; Defendant made some of the representations in Wisconsin, but also physically visited Plaintiff in Florida multiple times, Plaintiff has its headquarters in Florida and Defendant has its headquarters in Wisconsin, the oral contract and the place of performance were centered around the state of Florida as that is where Plaintiff's headquarters is and presumably where it invested in the infrastructure Defendant allegedly requested. Accordingly, the Court finds that Florida's statute of frauds also applies to Plaintiff's tort claims. Moreover, as with Plaintiff's contract claims, the parties apply Florida's statute of frauds in dispute.

of frauds applies to Plaintiff's claims. *See* D.E. 13; D.E. 18. Accordingly, the Court will apply

Florida's statute of frauds in determining whether Plaintiff's claims are barred.

> ii.   Are Plaintiff's Claims Barred by Florida's Statute of Frauds?

> 1.   Breach of Contract

Defendant argues that Plaintiff's breach of contract claim is barred by Florida's statute of

frauds.[6] Florida's statute of frauds states, in relevant part:

> No action shall be brought . . . upon any agreement that is not to be performed within the
> space of 1 year from the making thereof . . . unless the agreement or promise upon which
> such action shall be brought, or some note or memorandum thereof shall be in writing and
> signed by the party to be charged therewith or by some other person by her or him thereunto
> lawfully authorized.
> Fla. Stat. § 725.01

The Supreme Court of Florida further clarified:

> [A]ll actions based on agreements for longer than one year must depend on a written
> statement or memorandum, signed by the party to be charged. The statute should be strictly
> construed to prevent the fraud it was designed to correct, and so long as it can be made to
> effectuate this purpose, Courts should be reluctant to take cases from its protection.
> *Tanenbaum v. Biscayne Osteopathic Hosp., Inc*., 190 So. 2d 777, 779 (Fla. 1966).

The Supreme Court of Florida has further held that the statute of frauds only applies if full

performance is impossible within a year. In other words, the statute of frauds does not apply if

there is a possibility "in law and in fact that full performance such as the parties intended may be

completed before the expiration of a year." *Browning v. Poirier*, 165 So. 3d 663, 665–66 (Fla.

2015).

Defendant argues that since the alleged oral contract was made on December 7, 2017 with

the time for performance specified as "the full 2018 calendar year," D.E. 11 ¶ 21, the oral

---

[6] "Generally, the statute of frauds is an affirmative defense that cannot be raised in a motion to dismiss unless the
complaint affirmatively shows the conclusive applicability of such defense to bar the action." *Conner, I, Inc. v. Walt
Disney Co*., 827 So. 2d 318 (Fla. Dist. Ct. App. 2002). As discussed *infra*, the allegations in the complaint plainly
show the applicability of the statute of frauds to bar the action and thus the Court finds that Defendant properly
raised the statute of frauds in its motion to dismiss.

agreement contemplates performance beyond the one year and the statute of frauds therefore requires such a contract to be in writing. Plaintiff responds that there was not one oral contract, but four separate contracts formed in July[7], September, November, and December, 2017 requesting that Plaintiff undertake certain investments, in exchange Defendant offered to provide Plaintiff with sufficient discounts and incentives, such that Plaintiff would fully recoup the relevant investment. D.E. 18 at 7-10. Plaintiff concludes that as Defendant could have offered massive discounts and free merchandise, it was at least theoretically possible that these contracts could be fully performed, i.e. that Plaintiff could fully recoup its investment, within one year of entering into the relevant contract, thereby taking the claims out of the statute of frauds.

This argument is unavailing. As Defendant rightly points out, even if Plaintiff's complaint could be read to allege multiple oral agreements[8], and even if Defendant could have performed

---

[7] Plaintiff alleges that this agreement was formed in Las Vegas, Nevada. D.E. 11 ¶ 12. According to Florida's choice of law rules, Nevada law and thus Nevada's statute of frauds would apply to any breach of contract claim relating to this agreement. However, Nevada's statute of frauds is significantly similar to Florida's statute of frauds. *Stanley v. A. Levy & J. Zentner Co.*, 60 Nev. 432, 112 P.2d 1047, 1052 (1941) ("[A]n oral contract which is capable of being fully performed within a year from its execution, is not within the statute of frauds. If, from the terms used, however, the agreement is not to be performed within a year, the statute renders the contract void."). Thus, the Court frames its analysis in terms of whether the alleged oral agreements could be performed within one year, in-line with both Florida and Nevada's statutes of frauds.

[8] The Court must draw all reasonable inferences in Plaintiff's favor when ruling on a motion to dismiss, but Plaintiff's complaint appears to allege that there was only one contract. *See Wilson v. Strong*, 156 F.3d 1131, 1133 (11th Cir.1998). The complaint plainly and repeatedly states that there is one contract whose terms include all of the discussions from January to December 2017:

> The allegations above demonstrate that the <u>parties mutually assented to a certain and definite proposition</u> that left no essential terms open. Specifically, the essential terms were that OJC promised to (a) setup Watkins Shepard's LTL shipping service, (b) integrate with Ashley's ATP System, (c) update all of Ashley's product listings, and (d) market and promote them, in exchange for Ashley's promise to (i) continue its business relationship with OJC through <u>the end of the 2018 calendar year</u>, and (ii) provide sufficiently greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested, and profit . . .

> [Plaintiff] has satisfied <u>all conditions precedent</u> to the contract . . .

> [Defendant] materially breached <u>the contract</u> when it completely ceased its business relationship with OJC . . .

the term requiring it to give sufficient discounts to recoup Plaintiff's investment, each supposed agreement also contains terms contemplating performance by Defendant through the end of 2018. *See* D.E. 11 ¶¶ 12-14 (alleging that at the July 31, 2017 meeting, Defendant requested that Plaintiff enter into a large volume shipment relationship with a third party, in exchange Defendant "would grant [Plaintiff] access to its very large product line of [large volume shipping] items through the end of 2018.") (emphasis added); *id.* at ¶¶ 15-16 (alleging that at the September 28, 2017 meeting, Defendant requested Plaintiff run marketing promotions for the 2018 calendar year, in exchange, Plaintiff "would be able to sell [Defendant's] products throughout the entire 2018 calendar year and thereby earn back these investments.") (emphasis added); *id.* at ¶¶ 17-18 (alleging that in November 2017, Defendant requested Plaintiff integrate its inventory system with Defendant, in exchange, Plaintiff "would have, throughout 2018, "live" access to [Defendant's] inventory . . . .") (emphasis added); *id.* at ¶¶ 20-21 (alleging that at the December 7, 2017 meeting, Defendant re-asserted that it wanted Plaintiff to invest in and run promotions, investments and marketing "*through the end of 2018*" and that Defendant promised Plaintiff that "in return for these investments their relationship would continue for the full 2018 calendar year.") D.E. 11 ¶ 21. (emphasis in original).

---

In the event this Court finds no contract exists, Plaintiff pleads in the alternative for promissory estoppel . . . .
D.E. 11 ¶¶ 35-37, 39 (emphasis added).

This is also reflected in Plaintiff's response to Defendant's motion to dismiss, which (with the exception of the statute of frauds discussion) references a singular oral contract:

> **IV. OJC's complaint sufficiently alleged mutual assent and essential terms to establish the existence of an enforceable oral contract . . . .**
> D.E. 18 at 12 (emphasis in original).

As discussed *supra,* ultimately whether Plaintiff alleged that there was only one oral contract or multiple oral contracts is of no moment as each contract contemplates performance beyond the one year statute of limitations. *See, e.g.,* D.E. 11 ¶ 35 (explaining that Defendant promised to "continue its business relationship with [Plaintiff] through the end of the 2018 calendar year" (emphasis in original).

Accordingly, as each oral agreement was allegedly entered into in 2017, and contemplated performance through the end of 2018, it was not possible that each contract could be fully performed within one year; the statute of frauds therefore bars Plaintiff's claim for breach of contract(s). For this same reason, Plaintiff's argument that it fully performed the agreement is unavailing as each agreement contemplates that *Defendant* perform throughout 2018. *See Brodie v. All Corp. of USA*, 876 So. 2d 577, 578 (Fla. 4th DCA 2004) ("Full performance of an agreement takes the agreement outside the Statute of Frauds") (citation omitted). Having determined that Plaintiff's claim for breach of contract(s) is barred by the statute of frauds, the Court must now determine if Plaintiff's alternative claims are also barred by the statute of frauds.

## 2.   Promissory Estoppel

Count Two of Plaintiff's complaint asserts that "if the Court finds no contract exists, Plaintiff pleads in the alternative for promissory estoppel . . . ." D.E. 11 ¶¶ 39-45. As Defendant rightly notes, Florida law is clear that promissory estoppel is not an exception to the statute of frauds. D.E. 13 at 14 n.9; *See Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 173 So. 2d 492, 495 (Fla. Dist. Ct. App. 1965), certified question answered, 190 So. 2d 777 (Fla. 1966) (finding promissory estoppel was not an exception to statute of frauds); *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013) ("As we explained in *Tanenbaum*, application of the Statute of Frauds is a matter of legislative prerogative; the judicial doctrine of promissory estoppel may not be used to circumvent its requirements.") (citing *Tanenbaum,* 173 So. 2d 492, 495). Thus the Court finds that Plaintiff's claim for promissory estoppel is similarly barred by the statute of frauds.

3.   <u>Fraudulent and Negligent Misrepresentation</u>

Count Three of Plaintiff's complaint alleges fraudulent misrepresentation. D.E. 11 ¶¶ 46-53.

Count Four of Plaintiff's complaint alleges negligent misrepresentation. D.E. 11 ¶¶ 54-60.

Although the elements of fraudulent and negligent misrepresentation are not exactly the same,

the Court considers them together because, as Defendant points out, D.E. 13 at 14 n.9, Florida

law holds that an action for fraudulent or negligent misrepresentation is barred by the statute of

frauds if it is actually an attempt to indirectly recover damages for breach of an oral agreement:

> While it is contended by plaintiffs that they are suing for damages for fraud and deceit, such an action under the circumstances of this case is simply an attempt in an indirect manner to obtain damages for breach of the contract. Since the provision in the statute prohibiting any action to be brought on an oral contract within the statute <u>includes actions based indirectly on the contract, an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract</u>, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.
> *Canell v. Arcola Hous.* Corp., 65 So. 2d 849, 851 (Fla. 1953) (quotation omitted) (emphasis added).

> [Plaintff] contends that he is suing to recover damages for negligent misrepresentation, but in reality he is seeking indirectly to recover damages predicated upon the breach of an oral [contract] for a period in excess of one year. This he may not do.
> *Broward Nat. Bank of Fort Lauderdale v. Bethel*, 341 So. 2d 1012, 1013 (Fla. Dist. Ct. App. 1977) (citations omitted).

Here, Counts Three and Four of Plaintiff's complaint can only be characterized as an attempt

to indirectly obtain damages for breach of contract, and the Court thus holds they are barred by

the statute of frauds. Indeed, the very first lines of Counts Three and Four indicate that they are

merely an indirect breach of contract claim: "[i]n the event this Court finds no contract exists,

[Plaintiff] pleads in the alternative for fraudulent misrepresentation . . . ." D.E. 11 ¶ 46; D.E. 11 ¶

54 ("[i]n the event this Court finds no contract exists, [Plaintiff] pleads in the alternative for

negligent misrepresentation . . . ."). Counts Three and Four further allege that the Defendant

misrepresented that it would perform the contract: "[Defendant made intentional false statements

. . . that it would continue its business relationship with [Plaintiff] throughout the 2018 calendar year." D.E. 11 ¶ 47; D.E. 11 ¶ 55 ("[Defendant] made false statements of material fact to [Plaintifff] . . . that it would continue its business relationship with [Plainttiff] throughout the 2018 calendar year . . . ."). And that Defendant "knew this representation to be false, as [Defendant] did not intend to maintain its business relationship with Plaintiff throughout the 2018 calendar year. . . ." *id.* ¶ 49, and/or that Defendant's representatives "were negligent in making this statement . . . because they should have known that the statement was false and that [Defendant] did not intend to maintain its business relationship with Plaintiff throughout the 2018 calendar year. . . ." *id.* ¶ 57. Stated differently, Plaintiff's claim is that Defendant represented that it would perform the terms of the oral agreement(s), and knew these representations to be false or should have known they were false because Defendant did not intend to perform the agreement(s). Accordingly, the Court finds Counts Three and Four are merely indirect claims for breach of contract and are therefore barred by the statute of frauds. *See Conner, I, Inc. v. Walt Disney Co.*, 827 So.2d 318, 319 (Fla. 5th DCA 2002) ("To the extent that [Plaintiff] attempts to assert tort claims, they are likewise barred, as they flow from the alleged oral contract and are merely derivative.").

### 4.   Unjust Enrichment

Count Five of Plaintiff's complaint alleges unjust enrichment. D.E. 11 ¶¶ 61-65. Under Florida law a claim for unjust enrichment sounds in equity and is not subject to the statute of frauds. *See Kolski ex rel. Kolski v. Kolski*, 731 So.2d 169, 172 (Fla. 3d DCA 1999) (holding that "the statute of frauds is simply inapplicable to . . ." claims for "unjust enrichment/restitution and the imposition of a constructive trust.") (citations omitted); *Jester v. Pawley*, 245 So. 3d 859, 860

16

(Fla. Dist. Ct. App. 2018), reh'g denied (May 7, 2018) (reversing trial court's order dismissing

unjust enrichment claim as barred by statute of frauds) (citations omitted).

Defendant argues that Plaintiff's claim for unjust enrichment must be dismissed for failure to

state a claim.  Under Florida law, the elements of a claim for unjust enrichment are:

> (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepts and
> retains the benefit conferred; and (3) the circumstances are such that it would be inequitable
> for the defendant to retain the benefit without paying the value thereof to the plaintiff.
> *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1100 (Fla. Dist. Ct. App. 2014)

Defendant argues that the complaint does not specify what benefits Defendant unjustly accepted

or retained because there is no explanation of any on-going benefits to Defendant after

termination of the relationship. D.E. 13 at 19. In addition, Defendant argues that there is no

allegation that Plaintiff was not paid during its relationship with Defendant. Defendant thus

concludes that Plaintiff's allegations should be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(6). *Id.*

Plaintiff responds that it has adequately pled each element. D.E. 18 at 20. Plaintiff alleged

that it conferred benefits upon Defendant in the form of marketing, advertising and promoting of

Defendant's products. *Id.* Plaintiff alleged that Defendant accepted and retained the benefit of

this marketing, which Defendant allegedly stated was very successful. D.E. 18 at 20

("[Defendant] indicated it wanted to make this deal with [Plaintiff] because historically,

[Plaintiff] had given them the most return on investment of any other vendor) (citing D.E. 11 ¶

24). Further Plaintiff alleged that Defendant's clients "have not forgotten" the benefit of the

marketing. Lastly Plaintiff asserts that it alleged that the circumstances are such that it would

inequitable for Defendant to retain the benefit without paying the value because it alleged that

Defendant "benefited from [Plaintiff's] marketing and promoting its products without payment."

D.E. 18 at 22.

The Court agrees with Defendant that this claim must be dismissed for failure to plausibly

plead that "the circumstances are such that it would be inequitable for the defendant to retain the

benefit without paying the value thereof to the plaintiff." *Porsche Cars N. Am., Inc.,* 140 So. 3d

at 1100. As to retention of the benefit, Plaintiff asserted "Consumers didn't magically forget

those marketing efforts when [Defendant] terminated its relationship with [Plaintiff]." D.E. 18 at

22. This does not plausibly allege that Defendant retained the benefit of the alleged marketing.

As Defendant rightly notes, there is no allegation that Defendant is receiving increased sales

from the marketing, nor does Plaintiff allege that it "continues to market [Defendant's] products

or, even if it did, why this would be beneficial to [Defendant] since [Plaintiff] is no longer

authorized to sell its products." D.E. 19 at 10. Similarly, even if Plaintiff had plausibly alleged

that Defendant had retained the benefit of the marketing, Plaintiff has not alleged that Defendant

did so "without paying the value thereof to the plaintiff." *Porsche Cars N. Am., Inc.*, 140 So. 3d

at 1100. Despite Plaintiff's claims to the contrary, Plaintiff's complaint does not assert that

Defendant failed to pay Plaintiff or otherwise provide consideration for the marketing and

promotion. *See* D.E. 11. Accordingly, the Court finds that Plaintiff has failed to state a claim for

unjust enrichment. The Court further finds that Plaintiff cannot amend the unjust enrichment

claim because, as a matter of law, Plaintiff cannot allege any tangible benefits wrongfully

retained by Defendant.  If non-payment of accepted orders had occurred, Plaintiff could have,

and presumably would have made, that clear in its Amended Complaint.

**V.     Conclusion**

For the reasons set out above Defendant's Motion to Dismiss, D.E. 13, is GRANTED. As re-

pleading Plaintiff's claims would be futile, they are DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida, this _17th__ day of September,

2018.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc:  counsel of record via cm/ecf