**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

OJ COMMERCE, LLC,                                  Case No.: 18-cv-61185-UU

         *Plaintiff,*

Vs.

ASHLEY FURNITURE INDUSTRIES, INC.,

         *Defendant.*

_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OR TO ALTER, AMEND, OR FOR RELIEF FROM, JUDGMENT SO AS TO AMEND ITS COMPLAINT**

OJ COMMERCE, LLC ("Plaintiff") files this motion for reconsideration, and to alter, amend, or for relief from judgment so as to amend the complaint pursuant to Fed. R. Civ. P. 59(e) and 60(b)(1), and in support thereof states:

**BACKGROUND**

On May 25, 2018, Defendant removed the instant action to this Court. D.E. 1. On June 1, 2018, Defendant moved to dismiss. D.E. 7. On June 18, 2018, Plaintiff, without seeking leave, exercised its right to amend as a matter of course. D.E. 11. Plaintiff's amended complaint ("AC") alleged five counts: (i) breach of an oral contract, (ii) promissory estoppel, (iii) fraudulent misrepresentation, (iv) negligent misrepresentation, and (v) unjust enrichment. *Id*. On July 2, 2018, Defendant re-filed a motion to dismiss. D.E. 13. On September 18, 2018, this Court dismissed Plaintiff's claims with prejudice, finding that the statute of frauds barred Plaintiff's first four counts, and that Plaintiff failed to state a claim on its final count. D.E. 27. Plaintiff timely filed this motion for reconsideration, or to alter, amend, or for relief from judgment so as to amend its complaint.

## LEGAL ARGUMENTS

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact." Marrero v. Benitez, 2017 WL 6601468, at *1 (Ungaro, J.). They are also "appropriate where the Court has patently misunderstood a party . . . or has made an error not of reasoning, but of apprehension." Sanzone v. Hartford Life & Acc. Ins. Co., 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007), on reconsideration (Oct. 16, 2007). "[T]here must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. "It is an extraordinary remedy to be employed sparingly." Jacobs v. Bank of Am. Corp., No. 1:15-CV-24585-UU, 2017 WL 2361944, at *2 (S.D. Fla. Apr. 27, 2017) (Ungaro J.,).

"A district court's discretion to dismiss a complaint without leave to amend is 'severely restricted' by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." Higdon v. Fulton Cty., Georgia, No. 17-11154, 2018 WL 3860472, at *4 (11th Cir. Aug. 14, 2018) quoting Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988). "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Id. "The **same standard** applies when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e)." Id. (emphasis added) quoting Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 n1 (5th Cir. 1981).[1]

---

[1] It appears a Plaintiff should get at least one chance to amend its complaint if it makes this request to the district court before appeal. In 1991, the Eleventh Circuit held that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991). In 1999, the Eleventh held that an amendment made "as a matter of course" did not satisfy the one chance requirement. Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2001). In 2002, the Eleventh expressly overruled and replaced the Bank rule with a new one,

For the reasons below, Plaintiff respectfully requests this Court reconsider its order of dismissal with prejudice as Plaintiff believes the order made four manifest errors of law and misapprehended Plaintiff's allegations twice. Consequently, Plaintiff's unjust enrichment claim and breach of contract claims premised on the July, September, November, and end-of-2017 agreements, should proceed.[2]

Finally, at a minimum, and given the Court's "severely restricted" discretion to deny Plaintiff's request to amend its complaint, Plaintiff requests the Court vacate its order of dismissal with prejudice and allow Plaintiff to amend its complaint. To that end, Plaintiff has attached a draft amended complaint to this motion. Exhibit 1.

**A. The Court made a manifest error of law when it failed to follow clear precedent that dictates full performance by *Plaintiff* takes the agreement out of the statute of frauds.**

In opposition to Defendant's motion to dismiss, Plaintiff raised two separate and distinct reasons why the statute of frauds did not bar its claims. **First**, because "some of the agreements could have been performed within 1-year." D.E. 18, at 9. **Second**, because *Plaintiff* "completed performance." Id.

This Court found Plaintiff's second argument "unavailing as each agreement contemplates that *Defendant* perform throughout 2018. D.E. 27, at 14 (emphasis in original).

But as stated in Plaintiff's brief, Florida law is clear that "full performance by **one** party to the contract works to remove an oral agreement from the purview of the statute of frauds." Terzis

---

that a "district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, **never filed a motion to amend nor requested leave to amend before the district court**." Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (emphasis added). Thus, it seems Wagner only relieved district courts from the requirement to provide one chance to amend *sua sponte*, but did not relieve them from the requirement to provide that one chance if Plaintiff makes the request before appeal.

[2] Plaintiff does not seek reconsideration of the Court's dismissal of its breach of contract claims premised on the January 2017 or December 2017 agreements.

v. Pompano Paint & Body Repair, Inc., 127 So. 3d 592, 595 (Fla. 4th DCA 2012) (emphasis added); Maderas Del Siglo XXI-Madesi S.R.L. v. Medley Hardwood, Inc., 13-20508-CIV, 2014 WL 12605558, at *2 (S.D. Fla. Jan. 6, 2014) ("even if [the agreement was not to be performed within one year, Defendant's] claim fails because Plaintiff fully performed under the agreement by shipping the lumber, and the Statute of Frauds may not be employed as a defense where the oral contract has been fully performed by the other party."); Burke v. Napieracz, 674 So. 2d 756, 758 (Fla. 1st DCA 1996) ("the court failed to apply the longstanding exception to the statute of frauds, to wit: when a party to an oral contract has fully performed his or her obligations under the contract, the statute of frauds may not be employed as a defense.").[3]

Contrary to this authority, the Court disregarded Plaintiff's allegations of its full performance because "each agreement contemplates that *Defendant* perform throughout 2018." D.E. 27, 13-14 (emphasis in original). Respectfully, Defendant's performance is irrelevant because "full performance by **one** party to the contract" removes the agreement from the statute of frauds. *Terzis*, 127 So. 3d at 595. Thus, dismissal because of issues with *Defendant's* performance when *Plaintiff* fully performed, was a manifest error of law that should be corrected on reconsideration.

---

[3] Florida courts have repeatedly held true to the premise that plaintiff's full performance bars defendant from raising the statute of frauds as a defense. See e.g. Venditti-Siravo, Inc. v. City of Hollywood, Fla., 418 So. 2d 1251, 1253 (Fla. 4th DCA 1982) (Rejecting claims that agreement is barred by statute of frauds because it "may not be employed as a defense where the oral contract has been fully performed by the other party."); W. B. D., Inc. v. Howard Johnson Co., 382 So. 2d 1323, 1327 (Fla. 1st DCA 1980) rev. denied, 388 So. 2d 1114 (1980) ("the statute of frauds applies only to contracts that are not to be performed on either side within the period of a year and that such provision has no application to contracts which were fully performed within the year on the part of either side"); Yates v. Ball, 181 So. 341, 345 (Fla. 1937) ("The rule is generally approved in this country that the statute of frauds applies only to contracts not to be performed on either side within the year, and has no application to contracts which by intent were fully performed within the year on one side"); McDonough v. Greer, CV 14-61526-CIV, 2015 WL 12532634, at *4 (S.D. Fla. Sept. 18, 2015) ("Courts have held that when an oral agreement has been fully performed, the party who received the benefit of that full performance cannot avoid its obligation under the contract by invoking the statute of frauds.").

4

In support of dismissal, this Court cited Brodie v. All Corp. of USA, 876 So. 2d 577, 578 (Fla. 4th DCA 2004). But *Brodie* supports Plaintiff's motion for reconsideration as it's a case where Plaintiff fully performed (secured the mortgage), Defendant didn't (stopped making payments), but the agreement was nonetheless held to be outside the statute of frauds. *Id*. at 579-78.

As an initial matter, Plaintiff generally and sufficiently alleges full performance of its obligations under the first four agreements[4] by stating that "[Plaintiff] has . . . performed its obligations to [Defendant]." D.E. 11 at ¶ 36.

But for the Court's convenience, Plaintiff has included additional specific allegations of Plaintiff's full performance below.[5]

1. **July Agreement** (D.E. 11 at ¶ 12-14)
    a.  *Plaintiff's obligations were to:*
        i.   Undertake an "expensive custom information technology development" for LTL shipping integration. Id. at ¶ 36.
    b.  *Plaintiff alleged it completed this required performance by stating:*
        i.   "In reliance on Ashley's promises and representations, OJC invested in programming and development to integrate with Watkins Shepard's LTL shipping system." Id. at ¶ 29.
        ii.  "OJC . . . invested significant amounts of resources to (a) set up Watkins Shepard's LTL shipping service . . ." Id. at ¶ 43.

---

[4] Plaintiff's amended complaint alleged five agreements, and included corresponding allegations that demonstrate Plaintiff fully performed under the first four agreements (July, September, November, and end-of-2017). On this motion for reconsideration, Plaintiff does not seek reconsideration of its argument that it fully performed the December agreement.

[5] To the extent the Court does not believe that these allegations, together with the requirement that all inferences be drawn in Plaintiff's favor, suffice to constitute allegations of full performance, it should now grant Plaintiff leave to amend its complaint and thereby make these allegations clear. See, supra n1 and corresponding text.

  iii. "Ashley made this false representation with the intention of . . . causing OJC to (a) set up Watkins Shepard's LTL shipping service . . . OJC justifiably relied on Ashley's false statements, undertook the investments enumerated above, and was therefore damaged as a result. OJC would not have entered into these investments, but for the false statements made by the Ashley representatives enumerated above." Id. at ¶¶ 51-52, 58-59.

2. **September Agreement** (Id. at ¶ 15-16)

 a. *Plaintiff's obligations were to:*

  i. "[R]un, at great cost, various marketing promotions for the coming 2018 calendar year." Id. at ¶ 16.

 b. *Plaintiff alleged it completed this required performance by stating:*

  i. "In reliance on all of Ashley's promises and representations, OJC spent significant resources preparing its 2018 offerings of Ashley products." Id. at ¶ 25.

  ii. "OJC dedicated a team of data analysts to review sales history, consumer patterns, and market conditions to generate market data on the best ways to promote and sell Ashley's products." Id. at ¶ 26.

  iii. "OJC did, in fact, reasonably rely on Ashley's promises, and in reliance thereon, invested significant amounts of resources to . . . market and promote them." Id. at ¶ 43.

  iv. "Ashley made this false representation with the intention of . . . causing OJC to . . . (d) market and promote them . . . OJC justifiably relied on Ashley's false statements, undertook the investments enumerated above, and was therefore damaged as a result. OJC would not have entered into these investments, but for the false statements made by the Ashley representatives enumerated above. Id. at ¶¶ 51-52, 58-59.

  v. As a consequence of its fraud, Ashley obtained the benefit of OJC's marketing and promoting of its products. Id. at ¶¶ 53, 60.

  vi. "OJC's marketing, advertising, and promoting of Ashley's products have conferred a benefit on Ashley." Id. at ¶ 62.

3. **Mid-November Agreement** (Id. at ¶ 17-18)

 a. *Plaintiff's obligations were to*:

  i. Make a substantial investment "in expensive custom information technology development" for an ATP system. Id. at ¶¶ 13, 17.

 b. *Plaintiff alleged it completed this required performance by stating:*

  i. "In reliance on Ashley's promises and representations, OJC invested in programming and development to integrate with Ashley's ATP System." Id. at ¶ 30.

  ii. "OJC did, in fact, reasonably rely on Ashley's promises, and in reliance thereon, invested significant amounts of resources to . . . integrate with Ashley's ATP System."

6

      Id. at ¶ 43

   iii. "Ashley made this false representation with the intention of . . . causing OJC to . . . (b) integrate with Ashley's ATP System . . . OJC justifiably relied on Ashley's false statements, undertook the investments enumerated above, and was therefore damaged as a result. OJC would not have entered into these investments, but for the false statements made by the Ashley representatives enumerated above." Id. ¶¶ 51-52, 58-59.

4. **End of 2017 Agreement** (Id. at ¶ 19)

  a. *Plaintiff's obligations were to:*

    i. "Update its catalogue of Ashley products with the thousands of new and updated items Ashley had rolled out for 2018." Id. at ¶ 19.

  b. *Plaintiff alleged it completed this required performance by stating:*

    i. "In reliance on Ashley's promises and representations, OJC employed a team of graphic designers, product specialists, data entry personnel, and program developers to update its catalogues and webpages." Id. at ¶ 28.

    ii. "In reliance on all of Ashley's promises and representations, OJC spent significant resources preparing its 2018 offerings of Ashley products." Id. at ¶ 25.

    iii. "OJC did, in fact, reasonably rely on Ashley's promises, and in reliance thereon, invested significant amounts of resources to . . . (c) update all of Ashley's product listings . . ." Id. at ¶ 43.

    iv. "Ashley made this false representation with the intention of . . . causing OJC to . . . update all of Ashley's product listings . . . OJC justifiably relied on Ashley's false statements, undertook the investments enumerated above, and was therefore damaged as a result. OJC would not have entered into these investments, but for the false statements made by the Ashley representatives enumerated above." Id. at ¶¶ 51-52, 58-59.

In light of these allegations, the Court's dismissal of Plaintiff's breach of contract claim premised on the first four oral agreements was a manifest error of law because Plaintiff's allegations of full performance removed these agreements from the statute of frauds. The fact that *Defendant's* performance would take more than a year was irrelevant, and the Court's dismissal based on that factor was a manifest error of law that should be corrected on reconsideration.

Consequently, the Court should vacate its dismissal of Plaintiff's breach of contract claim vis-à-vis the first four oral agreements and allow the claims to move forward.[6]

**B. The Court made a clear error of fact or misapprehended Plaintiff's allegations when it held that "each supposed agreement also contains terms contemplating performance by Defendant through the end of 2018."**

Plaintiff alleged Defendant entered into, and breached, *five*[7] separate oral agreements with Plaintiffs; one in July, September, November, December, and one "towards the end of 2017." D.E. 11, at ¶ 19; D.E.18, at 8-9.[8]

The Court misunderstood Plaintiff's allegations, as the Court mistakenly stated that "plaintiff responds that there was not one oral contract, but *four* separate contracts formed in July, September, November, and December, 2017. . ." D.E. 27, at 12 (emphasis added). The Court missed one of the oral agreements; the one reached at the end-of-2017. It appears the Court mistakenly merged the November 2017 agreement (D.E. 11 ¶18) with the agreement that took

---

[6] At a minimum, the Court should vacate its dismissal with prejudice and provide Plaintiff with leave to amend. See supra, n1 and corresponding text.

[7] The Court acknowledged that while Plaintiff's AC contained some words that created ambiguity on the issue of whether the AC alleged one or five contracts, the Court had to "draw all reasonable inferences in Plaintiff's favor when ruling on a motion to dismiss." D.E. 27, at 12. To that point, when drafting the AC in the context of a "breach of contract" count, Plaintiff used the singular "contract" to match the title of the count. Plaintiff acknowledges this was not the best way to draft the AC. That said, it's important to note that the AC also uses the plural form when, *e.g.*, stating "[i]n reliance on all of Ashley's promises and representations*"* and that "OJC and Ashley entered into a valid contract through the oral agreements described above. D.E. 11, at ¶¶ 25, 34. All considered, and with all inferences in Plaintiff's favor, the AC describes a series of five separate agreements. Furthermore, to the extent this Court believes the AC doesn't adequately allege a series of separate agreements, it should allow Plaintiff leave to amend to clarify the exact nature of the agreements. See, supra n1 and corresponding text.

[8] Plaintiff's AC also alleged a January 2017 meeting, but Plaintiff has not alleged a breach of contract claim premised on that exchange. D.E. 11, at ¶¶ 10-11; D.E. 15, at 8-9 (discussing only July, September, November, end-of-2017, and December agreements).

place "towards the end of 2017" (*id*. at ¶19). See D.E. 27, at 3 (recounting factual allegations and skipping the end-of-2017 agreement).

This mistaken combination was an error of apprehension which caused the Court to incorrectly conclude that "each supposed agreement also contains terms contemplating performance by Defendant through the **end** of 2018." D.E. 27, at 13 (emphasis added). The November 2017 agreement had such a clause, but the end-of-2017 agreement didn't:

> Towards the end of 2017, Ashley requested OJC update its catalogue of Ashley products with the thousands of new and updated items Ashley had rolled out for 2018. Ashley reiterated its promise that if OJC undertook this investment, **it would provide OJC with greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested, and more**. D.E. 11, at ¶19 (emphasis added).

By its clear terms, this promise does not **require** Defendant to perform "through the **end** of 2018." It only obligates Defendant to provide sufficient discounts so that Plaintiff's investment is recouped **in** 2018. The actual amount of time for performance depends entirely on how aggressively Defendant discounted its merchandise. Clearly, if Plaintiff had recouped its investment in, e.g., June 2018, Defendant could cease providing Plaintiff with the greater access, merchandise, and discounts without breaching the agreement.

Furthermore, even if the Court is inclined to read the "through the 2018 calendar year" language in a way that contemplates or requires performance through the **end** of 2018, that is not the only reasonable reading. Instead, at the motion to dismiss stage, all reasonable inferences must be drawn in Plaintiff's favor. Given the language pegging Defendant's performance to recouping Plaintiff's investment, and the oral nature of the agreement, there is, at a minimum, ambiguity on the exact import of the clause and the parties' intent when agreeing to it – thus raising a factual issue that cannot be resolved on a motion to dismiss. Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) ("Contract interpretation is generally a question of law . . .

9

Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent, such as precontract negotiations, to interpret the disputed term.") (internal quotations and citation omitted). The parties' intended meaning of that clause should be allowed to be developed in the discovery process.

This is *especially* true here, because, as the Court acknowledged, "the statute of frauds is an affirmative defense that cannot be raised in a motion to dismiss unless the complaint affirmatively shows the **conclusive** applicability of such defense to bar the action." D.E. 27, at 11 n6 (emphasis added). As demonstrated above, Plaintiff's breach of contract claim premised on the end-of-2017 agreement simply isn't susceptible to an attack at this stage that the statute of frauds **conclusively** applies to bar the action because another plausible reading of that agreement is Defendant was required to perform into 2018, but only for as much of that year was necessary for Plaintiff to recoup its investment. This ambiguity cannot be resolved without discovery. Accordingly, dismissal of the complaint was, at a minimum, premature.

In sum, Plaintiff submits that the Court mistakenly concluded that "each supposed agreement also contains terms contemplating performance by Defendant through the end of 2018," because the Court mistakenly combined the end-of-2017 agreement with the separate and distinct November 2017 agreement.[9] D.E. 27, at 3. Once this misapprehension is cured, however, the one separate agreement the Court missed was an agreement that did not **require** "performance through the **end** of 2018." *Id*. at 13 (emphasis added).

For this reason, Plaintiff respectfully requests the Court reconsider its dismissal of prejudice of Plaintiff's breach of contract claim as it relates to the "end-of-2017" agreement and either deny

---

[9] The November 2017 agreement's provision that contemplated performance through the end of 2018 was Defendant "promising OJC that if it undertook this investment, OJC would have, throughout 2018, "live" access to Ashley's inventory." D.E. 11, at ¶18.

the motion to dismiss as to that claim, or provide Plaintiff with leave to amend and clarify the scope of each separate agreements to make this clear.

**C. It was manifest legal error to dismiss Plaintiff's entire breach of contract complaint on the premise that some clauses of the five agreements violate the statute of frauds.**

The Court dismissed Plaintiff's entire breach of contract complaint because "each supposed agreement also contains terms contemplating performance by Defendant through the end of 2018." D.E. 27, at 13. But as argued by Plaintiff in its opposition to Defendant's motion to dismiss, each oral contract contained two sub-agreements, one that did and the other that didn't. D.E. 18, at 10-12. Thus, the Court's decision to strike down each oral contract, *in its entirety*, because *one* of the sub-promises violated the statute of frauds, while the other constituted a valid enforceable promise not so barred, was manifest legal error.

This is because "[u]nder Florida law, an unenforceable portion of a contract can be severed, or eliminated . . ." Smith v. Physicians United Plan, Inc., 14-60534-CIV, 2014 WL 12797219, at *2 (S.D. Fla. Dec. 19, 2014). "[T]he governing rule is that a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." Frankenmuth Mut. Ins. Co. v. Escambia Cty., Fla., 289 F.3d 723, 728 (11th Cir. 2002). Ultimately, "[w]hether a contract is . . . divisible depends upon the intention of the parties." Id. at 728. Courts look to see if "[t]he primary promises between the parties remain unchanged in the absence of [the invalid] clause," upholding the balance of the contract when they do. See Id. at 729.[10] See Vineberg v. Brunswick Corp., 391 F.2d 184, 186 (5th

---

[10] To be sure, "[T]he absence of a severability clause is not dispositive on the issue of severability." Distribuidora de Vehiculos S.A. v. John Deere Constr. & Forestry Co., 12-20983-CV, 2012 WL 13014702, at *6 (S.D. Fla. June 13, 2012) (Ungaro, J).

11

Cir.1968) ("[a]n illegal contract provision . . . will be severed from the remainder of the contract if it is possible to do so without leaving the remainder of the contract meaningless.").[11]

Specific to the case at bar, courts across the nation have found that when an agreement has terms that violate the statute of frauds, those term can be severed, and the remainder of the contract enforced. See. e.g. Quinn v. Beverages of W. Virginia, Inc., 159 W. Va. 571, 580 (1976) ("we are of the opinion that [the clause violating the statute of frauds] is severable."); Helena Chem. Co. v. Huggins, No. CIV.A. 4:06CV2583RBH, 2008 WL 4908463, at *8 (D.S.C. Nov. 13, 2008) ("when an agreement is divisible, if some portions are not covered by the statute of frauds, those portions are enforceable") (citing 73 Am.Jur.2d Statute of Frauds § 435); Pierce v. Wittenmyer, No. 06-12626, 2007 WL 1455900, at *2 (E.D. Mich. May 16, 2007) ("where a portion of a contract within the statute of frauds is severable from a part of the contract outside the statute, the severable portion alone will be rendered unenforceable"); Viper Telecom, LLC v. Lockheed Martin Corp., No. SA-10-CV-375-XR, 2010 WL 3056664, at *3 (W.D. Tex. July 30, 2010) ("if the terms of the contract lying outside the statute of frauds are severable and independent from the terms within the statute of frauds, then those terms do not need to be embodied in writing and can be proved by the existence of an oral agreement").

Here, the July, September, and November agreements[12] all allege two distinct promises from Defendant. One that would necessitate performance through the end of 2018 (red), the other that wouldn't (green). Specifically:

---

[11] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[12] As argued above, the end-of-2017 agreement did not contain any clause that required performance through 2018. Supra, at Section B.

(1) **July**: (1) that "Ashley would grant OJC access to its very large product line of LTL only items through the end of 2018," and that (2) "Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that, in 2018, OJC would earn back all the money it invested, and more." D.E. 11, at ¶ 14.

(2) **September**: (1) that "OJC would be able to sell Ashley products throughout the entire 2018 calendar year and thereby earn back these investments," and that (2) "Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that, in 2018, OJC would earn back all the money it invested in these marketing promotions, in addition to the LTL investment. Id. at ¶ 16

(3) **November**: (1) promising OJC that . . . OJC would have, throughout 2018, "live" access to Ashley's inventory . . ." and that (2) "Ashley further promised that with this greater access, and increased merchandise, discounts, incentives, and support throughout the 2018 calendar year, OJC would earn back, in 2018, all the money it invested, and more. Id. at ¶ 18.

Thus, in the present case, dismissal with prejudice was manifest legal error, because the essence of the contracts were for Plaintiff to invest, and recoup the investment through increased sales and incentives from Defendant, i.e., the "green" promises. The "red" promises, that Defendant keep the relationship open for the entire 2018, was simply an added "bonus" and not the "primary promise" of the contracts.[13] Thus, the red promises should have been severed if found to violate the statute of frauds.

Consequently, Plaintiff requests the Court reconsider its prior order of dismissal with prejudice, and (to the extent it rejects Plaintiff's argument on full performance above) simply bar Plaintiff's ability to enforce the "red" promises, while leaving the "green" ones to proceed. At a minimum, the Court should allow Plaintiff to amend to clarify the distinct nature of these two promises.

---

[13] To the extent Defendant contests this, the Parties' intent is a question of fact that cannot be decided on a motion to dismiss. Disa v. Ashley Furniture Indus., Inc., 131 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) ("Where the terms of a contract are ambiguous, the actual intention of the parties-the governing principle of contract construction-becomes a question of fact").

**D. The Court's dismissal of Plaintiff's unjust enrichment claim with prejudice was due to a misapprehension and two manifest errors of law.**

This Court dismissed Plaintiff's unjust enrichment claim for three reasons. Specifically, it first held the complaint failed to plausibly allege that Defendant retained the benefit of Plaintiff's marketing because Plaintiff never alleged Defendant received increased sales from the marketing. D.E. 27 at 18. It then held that even if Plaintiff had plausibly alleged Defendant retained the benefit of its marketing, Plaintiff never alleged nonpayment. Id. Finally, the Court concluded that dismissal should be with prejudice because, as a matter of law, Plaintiff could not amend the unjust enrichment claim to allege any tangible benefits wrongfully retained by Defendant. Id.

Respectfully, Plaintiff believes the Court erred as a matter of law on the first and third, and misapprehended Plaintiff on the second.

First, Plaintiff clearly alleged its marketing, advertising, and promoting of Ashley's products conferred a benefit on Ashley. D.E. 11, at ¶ 61. Plaintiff's marketing efforts increased Defendant's brand recognition, which has value even if Plaintiff's specific advertisements didn't convert directly to sales. Plaintiff's contention that brand recognition and/or publicity is a true benefit conferred on Defendant is supported by multiple court holdings finding that a club's use of a model's image without payment established a claim of unjust enrichment. See, e.g., Krupa v. Platinum Plus, LLC, 8:16-CV-3189-T-33MAP, 2017 WL 1050222, at *2 (M.D. Fla. Mar. 20, 2017).

Furthermore, Plaintiff's advertising certainly *did* increase Ashley's sales. But as the Court dismissed the action with prejudice, Plaintiff is unable to amend the complaint to make this factual allegation. Justice requires Plaintiff be given leave to amend. See supra n1 and corresponding text.

Second, Plaintiff did allege nonpayment. Plaintiff clearly alleges that "[t]he circumstances are such that it would be inequitable for Ashley to retain the benefit of the marketing and promotion

of its products **without paying their fair value to OJC**." D.E. 11, at 64 (emphasis added). While this doesn't state "Defendant didn't pay Plaintiff," this allegation would be completely nonsensical if Defendant **had** paid Plaintiff. At the motion to dismiss stage, where all reasonable inferences must be drawn in Plaintiff's favor, Plaintiff respectfully suggests the Court misapprehended it by not reading this statement as an allegation that Defendant hadn't paid Plaintiff. At a minimum, Plaintiff should be entitled to amend to make this allegation clearly. See supra n1 and corresponding text.

Third, as demonstrated above, the Court's conclusion that Plaintiff cannot amend to allege any tangible benefits wrongfully retained by Defendant was a manifest error of law. Plaintiff *can* allege that its marketing directly increased Defendant's sales and will do so if permitted to amend.

But even if the Court disagrees that the amendments above would suffice to satisfy allegations sufficient to support a tangible benefit wrongly retained by Defendant, Plaintiff can amend to add greater detail that alleges the unjust enrichment claim in another way. For conceptual ease of explaining this alternate allegation, Plaintiff will use mathematically simple numbers and percentages below, but notes that they don't correlate to actual amounts at issue.

OJC spend $100 in promoting and marketing Ashley's products. Ashley saw an immediate 50% increase in sales for the next three months. Ashley began paying for this benefit through providing OJC with discounts, at $10 per month. Essentially, a 10 month payment plan.

At the end of the third month, Ashley decided it didn't want to continue paying OJC for the $100 expenditure made on Ashley's behalf; it therefore ended its relationship with OJC. But due to Ashley's rate of payment, at the time of termination, Ashley had only paid OJC back $30 of the $100 OJC laid out for Ashley.

Thus, it would be unjust to allow Ashley to keep the balance of OJC's $100 investment, i.e., $70 (not to mention the 50% increase in sales it obtained for the first three months at a 70% discount).

If permitted to amend, Plaintiff can more clearly allege that it invested significantly in marketing Ashley's products, that Ashley benefitted from the marketing in the form of brand recognition and increased sales, but that Ashley's early termination of OJC's vendor status has resulted in Ashley not paying OJC for the investment it undertook on Ashley's behalf. Consequently, Ashley has been unjustly enriched.

In sum, Plaintiff respectfully submits it was a manifest error of law to hold that Plaintiff's allegation of marketing and increased brand recognition was insufficient as a matter of law to constitute unjust enrichment. Further, the Court misapprehended Plaintiff when it held Plaintiff had not alleged nonpayment. Finally, it was manifest error of law to find, as a matter of law, that Plaintiff cannot amend to allege increased sales or further explain its unjust enrichment theory. Plaintiff's amendment will not be futile. Consequently, Plaintiff requests the Court reconsider its dismissal and either allow Plaintiff's unjust enrichment claim to proceed, or grant Plaintiff leave to amend.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully submits that the Court made four clear errors of law when it (i) misunderstood the legal effect of *Plaintiff's* full performance, (ii) failed to sever the invalid portions of the agreement, (iii) found Plaintiff hadn't alleged Defendant retained the benefit of Plaintiff's marketing, and (iv) held that as a matter of law that Plaintiff could not amend its unjust enrichment claim to state a claim. Plaintiff further submits that the Court made two clear errors of fact or misapprehended Plaintiff when it (i) merged the November agreement and end-of-2017 agreement, and (ii) found Plaintiff failed to allege it wasn't paid.

For these reasons, and given the district court's "severely restricted" discretion in denying a motion to amend (even after dismissal) when justice so requires, Plaintiff respectfully requests the Court reconsider its dismissal with prejudice and either allow Plaintiff's breach of contract and unjust enrichment counts to move forward, or grant Plaintiff leave to amend its complaint in the form attached hereto as Exhibit 1.

## S.D. FLA. L.R. 7.1 CERTIFICATION

Pursuant to S.D. Fla. L.R. 7.1(a)(3), counsel for Plaintiff conferred with counsel for Defendant and Defendant opposes the relief requested.

Dated October 16, 2018

Respectfully submitted,

By: _s/ Velvel (Devin) Freedman_
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
BOIES SCHILLER FLEXNER LLP
100 S.E. 2nd Street, Suite 2800
Miami, FL 33131
Tel: 305-539-8400
Fax: 305-539-1307
E-Mail: vfreedman@bsfllp.com

Shlomo Y. Hecht, Esq.
SHLOMO Y. HECHT, P.A.
11651 Interchange Cir. S.
Miramar, FL 33025
Tel: 954-861-0025
Fax: 615-413-6404
Email: Sam@hechtlawpa.com

*Counsel for Plaintiff, OJ Commerce LLC*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on October 16, 2018 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

                                              *s/ Velvel (Devin) Freedman*
                                              Velvel (Devin) Freedman