**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

CASE NO. 18-cv-61185-Ungaro/Hunt

OJ COMMERCE, LLC

    Plaintiff,

vs.

ASHLEY FURNITURE INDUSTRIES, INC.,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR RECONSIDERATION OR TO ALTER, AMEND, OR FOR RELIEF**
**FROM JUDGMENT SO AS TO AMEND ITS COMPLAINT**

Defendant, Ashley Furniture Industries, Inc. ("Ashley") hereby files this opposition in response to Plaintiff's Motion for Reconsideration or to Alter, Amend, or for Relief from Judgment so as to Amend its Complaint (D.E. 29)("Plaintiff's Motion") brought pursuant to Rule 59(e) and Rule 60(b)(1) in connection with this Court's Order on Motion to Dismiss (D.E. 27) ("Order").

**Preliminary Statement**

Reconsideration is an extraordinary remedy that should be employed only sparingly. Reconsideration certainly is not warranted in this case.

Aside from newly discovered evidence (not applicable here), the *only* grounds for a motion for reconsideration are an intervening change in controlling law or a manifest error of law or fact. *See, e.g. Young v. NCH Investments, LLC,* 2017 WL 7355131, * 1 (S.D. Fla. 2017)(Ungaro, J) (denying motion for reconsideration brought pursuant to Rule 59 (e)); *Benson v. QBE Ins. Corp.*, 2014 WL 12026080, * 1 (S.D. Fla. 2014)(Ungaro, J.)(denying motion for

reconsideration brought pursuant to Rule 59 (e)); *Rexam Airspray, Inc. v. Arminak*, 2007 WL 9701003, *3 (S.D. Fla. 2007)(Ungaro, J.) (denying motion for reconsideration brought pursuant to Rule 60(b)(1)).  Neither ground exists here.

The function of a motion for reconsideration "is <u>not</u> to serve as a vehicle to relitigate old matters or present the case under a new legal theory" or "to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Budget Truck Rental, LLC v. Dalpra*, 2016 WL 6496669, * 1 (S.D. Fla. 2016)(Ungaro, J.)(quoting *Mincey v. Head*, 206 F.3d 1106, 1137, n. 69 (11th Cir. 2000)). *See also Marrero v. Benitez*, 2017 WL 6601468, * 1 (S.D. Fla. 2017)(Ungaro, J.)("A motion for reconsideration should not be used as a vehicle to present authorities available at the time the first decision or to reiterate arguments previously made.")

Yet Plaintiff's Motion is both an attempt (1) to re-litigate arguments already correctly rejected by this Court and (2) to raise new (equally meritless) arguments which could have been raised prior to judgment, but were not.  And Plaintiff's proposed Second Amended Complaint -- which raises new "alternate facts" wholly contrary to the previously pled facts--serves only to emphasize the disingenuous nature of Plaintiff's claims and the futility of any further amendment.

Plaintiff's Motion should be denied in its entirety.  Far from constituting "manifest error," this Court's determination to dismiss with prejudice Plaintiff's Amended Complaint was eminently correct.

**I. THIS COURT PROPERLY DETERMINED THAT COUNTS I-IV OF THE AMENDED COMPLAINT ARE BARRED BY THE FLORIDA STATUTE OF FRAUDS**

**A. Plaintiff's "Full Performance" Argument Was Properly Rejected by this Court**

The first supposed "manifest legal error" which Plaintiff argues this Court committed was rejecting Plaintiff's argument that Plaintiff's supposed "full performance" removed the purported oral agreement(s) from the Statute of Frauds. (D.E. 29, pp. 3-8). This Court's rejection of this argument, however, is clearly correct.

As this Court explained, "Plaintiff's argument that it fully performed the agreement is unavailing as each agreement contemplates that *Defendant* perform throughout 2018." (D.E. 27 at 14). This conclusion is fully supported by the numerous cases which state that, outside of the context of a claim for specific performance, "full performance" by one of the parties to an alleged oral contract does not remove the contract from the Statute of Frauds. *See, e.g. Topp, Inc. v. Uniden America Corp.,* 483 F. Supp.2d 1187, 1194-1195 (S.D. Fla. 2007) (rejecting argument that full performance exception applied to claims for money damages and stating: "Florida courts have uniformly held that the 'performance exception' to the Statute of Frauds, which arose in land sale cases, applies only when a plaintiff seeks purely equitable relief."); *Locke v. Wells Fargo Home Mortgage,* 2010 WL 4941456, *4 (S.D. Fla. 2010)(dismissing complaint because full performance exception applies only to claims seeking specific performance); *Roberts v. Stutman*, 2011 WL 13225074, *5 (S.D. Fla. 2011)(full performance exception did not apply to action for damages); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F. Supp.2d 1334, 1346, and n. 6  (S.D. Fla. 1999)(explaining that "performance exception" to the Statue of Frauds when a party "has performed some or all of his duties under an oral contract" applies only to claims for specific performance or other purely equitable relief); *MY P.I.I., LLC*

3

*v. Tognum America, Inc.,* 2016 WL 7626201, * 7 (S. D. Fla. 2016)(rejecting Plaintiff's argument that because *Plaintiff* fully performed that equated to "full performance" of the alleged oral contract, and explaining that full performance by one party was not an exception to the Statute of Frauds in actions seeking solely money damages: "Plaintiff argues that its claim is not barred by the Statute of Frauds because *it* fully performed under the contract. Florida law recognizes the doctrine of *part* performance, whereby 'full performance by *one party* to the contract removes an oral agreement from the purview of the Statute of Frauds.' . . However, '[t]he doctrine of part performance to excuse a failure to comply with the Statute of Frauds is not available in Florida in actions solely for money damages.')(emphasis added)

Moreover, even putting aside this wealth of case law, there is also no question that Plaintiff's Amended Complaint **does not** allege that even **Plaintiff fully performed** the purported oral agreement(s). Although Plaintiff points to allegations in its Amended Complaint that in reliance on Ashley's purported promises Plaintiff made "significant" investments (D.E. 11 at ¶¶25-30), Plaintiff nowhere alleges that it fully completed integration with the LTL shipper or Ashley's ATP System or that it fully completed all of the marketing of Ashley's products that the parties purportedly agreed to for the entire 2018 calendar year (this would be absurd on its face). Even more importantly, the purported oral agreement(s) alleged in the Amended Complaint contemplated that Plaintiff would continue to sell Ashley's products for the entire 2018 calendar year (D.E. 11 at ¶¶ 14,16,18,19, 21, 22, 23), something that obviously Plaintiff did not fully perform.

Tacitly recognizing that it did not allege full performance of the purported oral agreement(s) in the Amended Complaint, Plaintiff also seeks leave to further amend so that it can allege that it "fully performed." Not only are such allegations a literal impossibility *(i.e,* there is

4

no way Plaintiff continued selling Ashley's products for the entire 2018 calendar year), but leave to amend should be denied altogether for the numerous reasons set forth in Section III below. Suffice it to say that far from constituting "manifest error," this Court's rejection of Plaintiff's "full performance" argument was eminently correct.

### B. This Court did not Misunderstand Plaintiff's Allegations, Plaintiff is simply seeking to Change Them

Next, Plaintiff argues that this Court "misapprehended Plaintiff's allegations when it held that 'each supposed agreement also contains terms contemplating performance through the end of 2018.'" (D.E. 29, p. 8). The Court did not.

Specifically, Plaintiff suggests that its so-called end-of-2017 agreement did not contemplate performance through the end of 2018. But, according to the allegations of the Amended Complaint, the alleged "end-of-2017" oral agreement clearly did contemplate performance through the end of the 2018 calendar year:

> "19.    Towards the end of 2017, Ashley requested OJC update its catalogue of Ashley products with the thousands of new and updated items Ashley had rolled out for 2018. Ashley reiterated its promise that if OJC undertook this investment, it would provide OJC with greater access, increased merchandise, discounts, incentives, and support **through the 2018 calendar year** so that, in 2018, OJC would earn back all the money it invested, and more. Ashley knew this update would be very costly to OJC."

(D.E. 11 at ¶ 19) (emphasis added). Plaintiff's suggestion that these allegations can be read in some other manner defies credulity. Rather than establishing "manifest error" by the Court, Plaintiff's argument simply establishes yet again the disingenuous nature of Plaintiff's claims.[1]

---

[1] As set forth in Section III B below, Plaintiff's bad faith is further established through the proposed "alternate facts" sought to be pled in the Second Amended Complaint which, *inter alia,* would completely change this so-called end of year agreement.

### C. Plaintiff's New Argument Based on Carving Up Supposedly Enforceable and Non-Enforceable Portions of the Purported Oral Agreements Was Not Previously Raised and is Contrary to the Allegations of the Amended Complaint

Plaintiff's final attempt to establish "manifest error" in connection with this Court's Statute of Frauds determination is based on dividing up the so-called July, September, and November oral agreements into enforceable and non-enforceable portions ("green" and "red" portions). (D.E. 29, pp. 11-13). While Plaintiff suggests that this argument was previously made in its opposition to Ashley's motion to dismiss the Amended Complaint, it clearly was not. The pages of Plaintiff's response to the motion to dismiss cited by Plaintiff[2] simply have nothing to do with Plaintiff's new argument. And, certainly, none of the authorities cited on pages 11-12 of Plaintiff's Motion were previously cited to this Court by Plaintiff. Accordingly, this new argument--based on authorities that could have been cited to this Court before dismissal of the Amended Complaint and the closing of the case--is not an appropriate basis on which to seek reconsideration. *See, e.g. Marrero v. Benitez*, 2017 WL 6601468, * 1 (S.D. Fla. 2017)(Ungaro, J.)("A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision."). Accordingly, for this reason alone, this argument for reconsideration should be rejected in its entirety.

Moreover, even putting aside this dispositive issue, Plaintiff's belated attempt to further divvy up the purported oral agreement(s) (first from one oral agreement to five mini oral agreements, and now to sub-agreements within the five mini oral agreements) is completely counter to the allegations of the Amended Complaint. Plaintiff's suggestion that the purported

---

[2] Specifically, on page 11 of Plaintiff's Motion (D.E. 29), Plaintiff claims that this argument was raised on pages 10-12 of its opposition to Ashley's Motion to Dismiss the Amended Complaint.

promise to continue to do business with Plaintiff throughout the entire 2018 calendar years was "simply an added 'bonus' and not the 'primary promise' of the contracts" (D.E. 29, p. 13) again just defies credulity.  As alleged time and time again, the essence of each of the purported oral agreements alleged in the Amended Complaint was that Ashley would continue to do business with Plaintiff throughout the entire 2018 calendar year. *See, e.g.* D.E. 11 at ¶¶ 14, 16, 18, 19,20, 21, 22, 23, 35, 41, 47, 49, 55, 57).

As with each of Plaintiff's argument, this new argument would require the Court to ignore the existing allegations of the Amended Complaint, and just serves to further underscore the correctness of the Court's dismissal ruling.

## II. THIS COURT PROPERLY DETERMINED THAT PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS TO STATE A CAUSE OF ACTION AND THAT FURTHER AMENDMENT WOULD BE FUTILE

The Plaintiff also argues that the Court committed "manifest error" when it dismissed Plaintiff's claim for unjust enrichment and determined that further amendment would be futile. In making this ruling, the Court explained:

> The Court agrees with Defendant that this claim must be dismissed for failure to plausibly plead that "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.". . . As to retention of the benefit, Plaintiff asserted "Consumers didn't magically forget the marketing efforts when [Defendant] terminated its relationship with [Plaintiff]." . . . This does not plausibly allege that Defendant retained the benefit of the alleged marketing.  As Defendant rightly notes, there is no allegation that Defendant is receiving increased sales from the marketing, nor does Plaintiff allege that it "continues to market [Defendant's] products or, even if it did, why this would be beneficial to [Defendant] since [Plaintiff] is no longer authorized to sell its products."  Similarly, even if Plaintiff had plausibly alleged that Defendant had retained the benefit of the marketing, Plaintiff has not alleged that Defendant did so "without paying the value thereof to the plaintiff." . . . Despite Plaintiff's claims to the contrary, Plaintiff's complaint does not assert that Defendant failed to pay Plaintiff or otherwise provide consideration for the marketing and promotion.

D.E. 27, p. 18.  The Court's observations and rulings are all entirely correct.

7

In arguing for reconsideration, Plaintiff simply points to the same allegations already considered by the Court and debates the Court's conclusions as to whether these plausibly establish (i) retention of a benefit by Ashley (ii) without Plaintiff receiving the value thereof. This re-litigation of Plaintiff's previously rejected arguments is not an appropriate basis for seeking reconsideration. *See e.g. Marrero v. Benitez*, 2017 WL 6601468, * 1 (S.D. Fla. 2017)(Ungaro, J.)("A motion for reconsideration should not be used as a vehicle . . . to reiterate arguments previously made."). And, for the reasons discussed at length in Section III below, Plaintiff's belated request to further amend should be denied in its entirety.

### III. PLAINTIFF'S BELATED REQUEST TO FURTHER AMEND ITS COMPLAINT IS IMPROPER AND SHOULD BE REJECTED

#### A. Eleventh Circuit Precedent on Motions to Amend Filed After a Case is Closed

Plaintiff's Motion cites the Eleventh Circuit's opinion in *Higdon v. Fulton Cty., Georgia*, 2018 WL 3860472 (11th Cir. 2018) for the proposition that, even after a judgment of dismissal has been entered, leave to amend should be freely granted, and the extremely difficult standards necessary to obtain reconsideration under Rule 59(e) or 60(b) do not apply. *See* Plaintiff's Motion, p. 2. From the *Higdon* opinion, it is not clear whether the district court in *Higdon* had already entered an order closing the case at the time the Rule 59 (e) motion seeking leave to amend was filed. But there are numerous Eleventh Circuit decisions that expressly state that where a case already has been closed by the district court, the lenient Rule 15 standard does not apply and there is no abuse of discretion in denying such a post-judgment motion seeking leave to amend.

For example, in *David Johnson Construction Co., Inc. v. Cleaning Consulting Inc.,* 772 Fed. Appx. 934, 937-938 (11th Cir. 2018), the Eleventh Circuit explained:

8

> Post-judgment the plaintiff may seek leave to amend **if he is granted relief under Rule 59 (e)** . . . The District Court dismissed Plaintiff's complaint for failure to state a claim **and entered judgment prior to Plaintiff filing the motion for leave to amend at issue**. And, as explained above, the Court **properly denied Plaintiff's request for relief under Rule 59 (e)** [because the motion merely sought to supplement claims the court previously found to be insufficiently pleaded or to add new claims that could have been raised prior to entry of judgment]. **Thus, we cannot say the District Court abused its discretion in denying Plaintiff leave to amend its complaint post-judgment.**

*Id.* (emphasis added). *See also Freeman v. Rice,* 399 Fed. Appx. 540, 544 (11th Cir. 2005)( "a **motion for leave to amend is not appropriate** where 'the court has clearly indicated either that no amendment is possible **or that dismissal of the complaint also constitutes dismissal of the action**." )(emphasis added); *Czeremcha v. International Ass'n of Machinists and Aerospace Workers, AFL-Cio,* 724 F.2d 1552, 1555-56 (11th Cir. 1984) (same); *Montford v. Moreno,* 2005 WL 1369563, *8 (11th Cir. 2005)(same).

Indeed, this Court has previously drawn this distinction, finding that a post judgment motion for leave to amend should be denied where grounds for reconsideration had not been established pursuant to Rule 59(e):

> [T]he Court notes that Plaintiff does no more than re-litigate old issues and raise arguments that could have been raised prior to the entry of the Order. Therefore, relief pursuant to Fed. R. Civ. P. 59 (e) is unavailable. . . Similarly, **Plaintiff's request for leave to amend the Complaint after it was dismissed and the case was closed is belated**. Therefore leave to amend must be denied.

*Melyvn H. Miller v. Houlihan Lokey Howard & Zukin*, 2006 WL 8433267, * 3 (S.D. Fla. 2006)(Ungaro, J)(emphasis added)(citing *Czeremcha v. International Ass'n of Machinists and Aerospace Workers, AFL-Cio,* 724 F.2d 1552, 1555-56 (11th Cir. 1984) and *Montford v. Moreno,* 2005 WL 1369563, *8-*9 (11th Cir. 2005)). *See also Caringondemand, LLC v. Ventive LLC,* 2018 WL 3778663, *2 (S.D. Fla. 2018)(Bloom, J.)("**In light of the Omnibus Order's**

9

**adjudication of all pending issues and closure of the case, the Court finds that Plaintiff's request for leave to amend is improper**. To find otherwise would allow parties to extend litigation *ad infinitum*, giving them free reign to re-litigate claims by amending a pleading after an adverse adjudication of the issues or upon the realization that a critical form of relief was never sought in the first instance. **Plaintiff's request for leave to amend must, therefore, be denied**.")(emphasis added); *Federal Housing Finance Agency v. Deloitte & Touche, LLP*, 2017 WL 1534948, *2 (S. D. Fla. 2017)(Scola, J.)(because plaintiffs did not establish manifest errors of law as required pursuant to Rule 59 (e) or Rule 60(b), court denied post-judgment request for leave to amend complaint).

Based on these authorities, Ashley submits that because Plaintiff has certainly not established manifest errors in the Court's Order as required for reconsideration under Rule 59 or Rule 60, the Court should deny Plaintiff's belated request to amend its Amended Complaint.

B. **Plaintiff's Proposed Second Amended Complaint Improperly Attempts to Allege "Alternate Facts"**

Regardless of which standard applies to Plaintiff's request for leave to amend, this Court should also deny Plaintiff's request because the new "facts" alleged in the proposed Second Amended Complaint are a blatant attempt to circumvent the Statute of Frauds and are contrary to the facts previously alleged in the Amended Complaint. The Eleventh Circuit recently emphasized something which should be obvious to any officer of the court: there is no such thing as "alternate facts:"

> [Plaintiff] argues that because Federal Rule of Civil Procedure 8(d) permits plaintiff to plead alternative theories, "it is difficult to conceive of how pleading inconsistent facts in an amended complaint can constitute bad faith." To the contrary, that is easy to conceive . . . **It is one thing to present inconsistent theories of relief in one pleading. It is another thing entirely to test a legal theory on one set of facts, lose and suffer an adverse judgment, and then use**

10

> **the first decision as a roadmap to alter the alleged facts, and then re-plead post-judgment.** Our case law does not "countenance the old sporting theory of justice or the use of the federal courts as a forum for testing alternate legal theories <u>seriatim</u>." *Fla Evergreen Foliage v. EI DuPont De Nemours & Co.,* 470 F.3d 1036, 1042 (11th Cir. 2006) . . .; *see also Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 667 (5th Cir. July 1981)(holding that plaintiff's "attempt[] to establish a new factual basis and legal theory" a year after the suit filed supported denying a motion to amend).

*Marchelletta v. Bergstrom,* --- Fed. Appx.---, 2018 WL 4603133, * 7 (11th Cir. Sept. 25, 2018) (emphasis added).

In this case, just as in *Marchelletta*, the Second Amended Complaint contains wholly inconsistent facts to those previously pled by Plaintiff. In addition to simply deleting the January meeting previously referenced in the Amended Complaint (and in the original Complaint), in the proposed Second Amended Complaint Plaintiff purports to change and divide the oral promises allegedly made by Ashley at the various other meetings previously alleged in the Amended Complaint. Specifically, the alleged promise to continue to do business with Plaintiff through the end of the 2018 calendar year--which was previously the foundation of each of the so-called oral "agreements" and clearly violative of the Statute of Frauds--is suddenly something called a "separate subsidiary promise."

For example, in the Amended Complaint, Plaintiff alleges that to induce Plaintiff to enter into an "LTL shipping relationship" with a non-party shipping company, Ashley purportedly promised at the July Meeting to continue to do business with Plaintiff through the end of the 2018 such that Plaintiff would earn back its "substantial investment" in this LTL shipping relationship in 2018:

> "14. Ashley induced OJC into making this substantial investment by promising OJC that if it undertook this investment**, Ashley would grant OJC access to its very large product line of LTL only items through the end of 2018**. Ashley promised OJC that if it undertook this investment, **Ashley would provide OJC**

11

> **with sufficient merchandise, discounts, incentives, and support that, in 2018, OJC would earn back all the money it invested, and more**."

(D.E. 11 at ¶ 14)(emphasis added).

Yet, in the proposed Second Amended Complaint, the alleged promise which was the foundation of the entire oral agreement supposedly reached at the July Meeting--Ashley's purported promise to continue to do business with Plaintiff through the end of 2018--is now merely "a separate subsidiary promise," and the alleged promise that Plaintiff would earn back its investment is now completely divorced of any timeframe whatsoever:

> "12.   Ashley induced OJC into making this substantial investment by promising OJC that if it undertook this investment, Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that OJC would, at a minimum, earn back all the money it invested. **As a separate subsidiary promise, Ashley also promised OJC that in return for this investment, Ashley would grant OJC access to its very large product line of LTL only items through the end of 2018**."

(D.E. 29-1 at ¶ 12)(emphasis added).

The same blatant attempt to change the "facts" to plead around the Statute of Frauds can be seen with the respect to the so-called September Meeting, November Meeting, and the end-of-2017 Meeting.  As to the September Meeting, the Amended Complaint alleges:

> "16. At the September Meeting, Ashley requested OJC run, at great cost, various marketing promotions for the coming 2018 calendar year. **Ashley promised OJC that if it undertook these expenses, OJC would be able to sell Ashley products throughout the entire 2018 calendar year and thereby earn back these investments.** Ashley reiterated its promise that if OJC undertook this investment, Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that, in 2018, OJC would earn back all the money it invested in these marketing promotions, in addition to the LTL investment."

(D.E. 11 at ¶ 16)(emphasis added).

But now, again, the Second Amended Complaint seeks to change the alleged promise at the September Meeting to continue to do business through the entire 2018 calendar year to a

mere "separate subsidiary promise," and to divorce the alleged promise that Plaintiff would earn back its investment from any timeframe whatsoever:

> "15. At the September Meeting, the parties entered into an agreement. Ashley requested OJC run various marketing promotions for the coming 2018 calendar year. Ashley know (sic) OJC would have to expend substantial resources to accomplish these marketing promotions. **Ashley promised OJC that if it undertook these expenses, Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that OJC would, at a minimum, earn back all the money it invested in these marketing promotions in addition to the LTL investments discussed. As a separate subsidiary promise, Ashley assured OJC it would be able to sell even non-LTL Ashley products throughout the entire 2018 calendar year**."

(D.E. 29-1 at ¶ 15)(emphasis added).

As to the November Meeting, the Amended Complaint alleges:

> "18. Ashley induced OJC into making this substantial investment by promising OJC that if it undertook this investment, OJC would have**, throughout 2018,** "live" access to Ashley's inventory, and would therefore be able to list products as soon as Ashley received them, delist products no longer in-stock, and focus real-time marketing efforts on in-stock products. Ashley **further promised that with this greater access, and increased merchandise, discounts, incentives, and support throughout the 2018 calendar year, OJC would earn back, in 2018, all the money it invested, and more.**"

(D.E. 11 at ¶ 18)(emphasis added).

But, now, the Second Amended Complaint likewise seeks to change the alleged promise at the November Meeting to continue to do business through the entire 2018 calendar year to a mere "separate subsidiary promise," and to divorce the alleged promise that Plaintiff would earn back its investment from any timeframe whatsoever:

> "18. At the November Meeting, the parties entered into an agreement. Ashley requested OJC integrate with its inventory system to improve inventory communication between the parties (the "ATP System"). Ashley knew establishing this ATP System required OJC to invest in expensive custom information technology development. Ashley promised OJC that if it undertook this investment, **Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that OJC would, at a minimum, earn back**

13

**all the money it invested in the ATP system in addition to the marketing and LTL investments discussed above. As a separate subsidiary promise, Ashley assured OJC it would have "live" access to Ashley's inventory through the end of 2018**."

(D.E. 29-1 at ¶ 18)(emphasis added).

As to the "end-of-2017 meeting," the Amended Complaint alleges:

"19. Towards the end of 2017, Ashley requested OJC update its catalogue of Ashley products with the thousands of new and updated items Ashley had rolled out for 2018. **Ashley reiterated its promise that if OJC undertook this investment, it would provide OJC with greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, OJC would earn back all the money it invested, and more.** Ashley knew this update would be very costly to OJC."

(D.E. 11 at ¶ 19)(emphasis added).

But, now the Second Amended Complaint seeks <u>to entirely change the end-of-2017 meeting so that there is no reference whatsoever to continuing to do business throughout the 2018 calendar year</u>, and the alleged promise that Plaintiff would earn back its investment is divorced from any timeframe whatsoever:

"21.   At the End-of-2017 Meeting, the parties entered into an agreement. Ashley requested OJC update its catalogue of Ashley products with the thousands of new and updated items Ashley had rolled out for 2018. Ashley knew this would be very expensive for OJC. **Ashley promised OJC that if it did this update, Ashley would provide OJC with sufficient merchandise, discounts, incentives, and support that OJC would, at a minimum, earn back all the money it invested in the update, in addition to the marketing, LTL, and ATP investments discussed above.**"

(D.E. 29-1 at ¶ 21)(emphasis added).

And, finally, as if to emphasize the completely disingenuous nature of Plaintiff's claims, the supposedly critical December Meeting has <u>now been deleted altogether</u> from the proposed Second Amended Complaint. There is literally no reference to it whatsoever. Yet, according to

14

the Amended Complaint, this was the meeting (one of only two alleged in-person meetings) wherein Ashley supposedly repeatedly reiterated each of its prior promises to continue to business with Plaintiff *through the entire 2018 calendar* year such that Plaintiff would earn back all of its supposed investment and earn a profit in 2018 (*see* D.E. 11, ¶¶ 20-23)(emphasizing "through the end of 2018," "for the full 2018 calendar year," "throughout the entire 2018 calendar year," "support through the 2018 calendar year" "the *entire* 2018 calendar year" and "the year of 2018.")(emphasis in original).

It is difficult to conceive of a more brazen attempt to play with the supposed "facts." This type of gamesmanship should not be countenanced anywhere, but certainly not in federal district court. As in *Marchelletta,* Plaintiff's request for leave to amend based on "alternate" facts should be denied.

C. **Plaintiff's Proposed Second Amended Complaint Establishes that Further Amendment is Futile**

Finally, regardless of which standard applies to Plaintiff's request for leave to amend, this Court should also deny Plaintiff's request to amend because the proposed Second Amended Complaint, now consisting of 12 different counts, only serves to underscore that amendment is futile.

For example, even putting aside the fact that Plaintiff's new proposed "factual" allegations completely contradict the allegations of the Amended Complaint, Plaintiff's strained attempt to divide up the purported promises made as part of each alleged oral agreement is improper because, *inter alia,* there is no allegation whatsoever as to the purported separate consideration alleged for each promise. *See, e.g. Local No. 234 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith,*

15

*Inc.*, 66 So.2d 818, 821 (Fla. 1953)(holding complaint based on illegal contract should be dismissed and rejecting argument that illegal portion of the agreement could be severed so that the remainder of the contract could be enforced: "a contract should be treated as entire when, by a consideration of its terms, nature and purpose, each and all of its parts appears to be interdependent and common to one another **and to the consideration**.")(emphasis added); *Slusher v. Greenfield*, 488 So.2d 579, 581-582 (Fla. 4th DCA 1986)(reversing trial court's decision to "sever" certain portions of employment contract and holding that the agreement was indivisible and thus void in its entirety). Thus, because the purported promise to continue to do business through the end of the 2018 calendar year cannot plausibly be divorced as a "separate subsidiary promise," each of the claims other than the claim for unjust enrichment continues to be barred by the Statute of Frauds.

Further, in an effort to supply missing essential terms, the completely new counts for "breach of contract implied in fact" all rely on purported "long-term course of dealing" and "post contract" course of conduct. *See, e.g.* D.E. 29-1 at ¶¶ 35, 47, 59, 71. However, such purported course of dealing and course of conduct remains entirely unpled. *Id.*

Indeed, all of the breach of contract counts in the proposed Second Amended Complaint continue to suffer from the fundamental deficiency that the essential terms of the alleged oral contracts simply are not alleged -- even though Ashley has raised this point since the inception of this case. For example, the Second Amended Complaint still does not allege the terms on which Ashley was required to fulfill customer orders sent by Plaintiff throughout the 2018 calendar year. Was Ashley required to fulfill any customer order sent by Plaintiff throughout the 2018 calendar year no matter what the price, credit issues, or other terms? And how could Ashley ever possibly know what it would take for Plaintiff to earn profits, let alone what "sufficient

16

merchandise, discounts, incentives and support" it would take for Plaintiff to do so? Indeed, Plaintiff does not allege how Ashley would have known how much Plaintiff invested based on the purported oral agreements so as to know what it would take for Plaintiff to earn back its investment. These are same pleading deficiencies discussed at length in Ashley's prior motions to dismiss which obviously Plaintiff is simply unable to remedy. *See, e.g.* D.E. 7, pp. 9-10; D.E. 13, pp. 14-17; D.E. 19, pp. 7-8.

Similarly, none of the previously identified pleading deficiencies with respect to Plaintiff's intentional and negligent misrepresentation, promissory estoppel, and unjust enrichment claims have been remedied despite the fact that these deficiencies have also been raised since the inception of the case. *See,* D.E. 7, pp. 10-14; D.E. 13, pp. 16-19, D.E. 19, pp. 8-10. For example, for the same reasons previously argued, Plaintiff's misrepresentation claims still fail to comply with requirements of Rule 9(b)[3], and still involve alleged promises as to the future without any allegations establishing how Ashley could possibly know, let alone have superior knowledge of,[4] the level of business that Plaintiff would generate from customers and

---

[3] Indeed, Plaintiff had previously admitted "[m]any of these communications happened over the phone, and it would be unreasonable for OJC to guess exactly which one of Ashley's agents made which promises." (D.E.18 at 15). This admission simply underscores that the pleading deficiencies of Plaintiff's misrepresentation claims cannot be corrected and that this is not a valid fraud case.

[4] As explained in the prior briefing, the exception to the rule against predicating a fraud claim on future promises requires that the plaintiff plausibly allege that "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false." *Felicia Davis v. Boston Scientific Corp.,* 2018 WL 2183885, *6 (M.D. Fla. 2018). *See also Silver v. Countrywide Home Loans, Inc.,* 760 F.Supp.2d 130, 1343 (S.D. Fla. 2011)(dismissing misrepresentation claims because, *inter alia,* representations that the value of plaintiff's home would continue to rise and she would not have a problem refinancing were not statements of material fact); *Kearney v. Travelers Casualty and Surety Co. of America*, 2010 WL 745619 * 3 (M.D. Fla. 2010)(dismissing misrepresentation claim based on allegation that defendant "would continue to do business with Plaintiffs in the future" because "these

whether this business would be sufficient for Plaintiff to be profitable. Nor has Plaintiff included any factual allegations that would make plausible its conclusory allegation that Ashley knew the alleged representations as to the future were false at the time the alleged representations were allegedly made.

The proposed Second Amended Complaint simply underscores that none of the now 12 counts which Plaintiff seeks to plead can be plausibly pled and that further amendment would be futile.

## Conclusion

Both the Eleventh Circuit and this Court have emphasized on countless occasions that a motion for reconsideration is not a vehicle for simply re-litigating previously rejected arguments or for raising new arguments and authorities that could have been, but were not, raised prior to judgment. Plaintiff's Motion, however, does just that, raising arguments that have already been correctly rejected by this Court or new (equally meritless) arguments that were never raised prior to judgment. Plaintiff's Motion should be denied in its entirety.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Defendant Ashley Furniture Industries, Inc.*
1450 Brickell Ave, Suite 2300
Miami, Florida 33131
Tel.: (305) 374-7580
Fax: (305) 374-7593

BY:   */s/ Raquel M. Fernandez*
**MITCHELL E. WIDOM**
Florida Bar No. 473911

---

misrepresentations are nothing more than promises to perform in the future and are not actionable.").

mwidom@bilzin.com
**RAQUEL M. FERNANDEZ**
Florida Bar No. 55069
rfernandez@bilzin.com
eservice@bilzin.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2018, I caused the foregoing documents to be served on all counsel of record via CM/ECF system.

By: */s/ Raquel M. Fernandez*
      Raquel M. Fernandez, Esq.