UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OJ COMMERCE, LLC, | ) |
| | ) |
| *Plaintiff,* | )   Case No.: 0:18-cv-61185-UU |
| vs. | ) |
| | ) |
| ASHLEY FURNITURE INDUSTRIES, INC. | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

### I.   The Statute of Frauds does not apply because Plaintiff has fully performed not just partially performed.

OJC's reconsideration motion argued this Court erred in focusing on Defendant's performance because full performance by one party (here Plaintiff) took the agreement out of the statute of frauds. Ashley's response does not dispute it was error to discuss Defendant's performance. Further, Ashley acknowledges (as it must) the full performance exception to the statute of frauds. Nevertheless, Ashley argues incorrectly (and for the first time) that this Court did not err because the full performance exception only applies when a plaintiff seeks equitable relief, not damages. D.E. 30 at 3. But as demonstrated below, Ashley confuses **partial** performance (that only works with equitable relief) with **full** performance (that works in damages cases too).

In fact, this Court has already resolved this issue against Ashley and found that the doctrine of *full* performance removes an agreement from the statute of frauds in damages cases. In S. Miami Holdings, LLC v. Fed. Deposit Ins. Corp., 10-CV-22032-UU, 2011 WL 13220688 (S.D. Fla. Aug. 1, 2011) (Ungaro, J.), plaintiff sued for damages stemming from defendant's breach of an oral loan agreement. Id. at 1. Defendant moved for summary judgement based on the statue of frauds. Id. at 2. This Court denied defendant's motion because plaintiff fully performed and "*full* performance by one party to an oral contract removes the contract from the statute of frauds." Id.

at *5, quoting Metro Bldg. Materials Corp. v. Rep. Nat'l Bank of Miami, 919 So.2d 595, 598 (Fla. 3d DCA 2006) (emphasis added).  To be sure, the Plaintiff in S. Miami Holdings, sued for "**actual, compensatory damages**" stemming from the loan agreement breach and was **not** seeking specific performance or other equitable remedies. Docket: 10-CV-22032-UU, D.E. 1-2, 5, Fourth Am. Compl. ¶ 25 (emphasis added). Thus, this Court has *already* rejected Ashley's argument and done *exactly* what OJC urges it do now.

This Court's prior holding is consistent with Eleventh Circuit precedent that clearly recognized this distinction between full and partial performance -- limiting only "partial performance" to cases in equity. Dwight v. Tobin, 947 F.2d 455 (11th Cir. 1991). In Dwight, the Eleventh Circuit criticized some Florida District Courts of Appeal cases that held both "partial or complete performance removes an oral contract from the statute of frauds . . ." because

> "[i]n neither case did the court specifically consider or reject *the rule limiting the **part** performance doctrine to cases in equity*. It does not appear that the parties raised the ***part** performance* issue in either case, nor did the courts even seem aware of the doctrine. Id. (emphasis added).

Thus, the Dwight court made a clear distinction between "part" and "full" performance, clearly implying that only **part** performance is limited to cases in equity.

This distinction between *partial* performance and *full* performance, is also evident in Fresh Capital Fin. Services, Inc. v. Bridgeport Capital Services, Inc., 891 So. 2d 1142 (Fla. 4th DCA 2005).  In Fresh Capital, defendant made a standing offer to pay plaintiff at least 10% of any income generated from its client referrals. Id. at 1144. Plaintiff referred ten clients. Id.  The defendant eventually stopped paying the promised commissions, plaintiff sued, and defendant asserted the statute of frauds. Id.  The trial court dismissed the case with prejudice, but the appellate court reversed because

> "[f]ull performance by one party to an oral contract removes the contract from the

statute of frauds . . . [and a]s alleged in the second amended complaint, [plaintiff]'s referral of each client to [defendant] amounted to a separate contract which [plaintiff] fully performed at the time of the referral. Id.

Importantly, the court's ruling expressly distinguished a factually similar commission fee case because "only a single contract existed" there and therefore the contract wasn't completely performed. *Id.* at 1145. Hence, the Fresh Capital court clearly distinguished between full and part performance.

Finally, the authorities Ashley relies on are either expressly "**part** performance" cases or mistakenly rely on "part performance" cases. In Locke v. Wells Fargo Home Mortg., 10-60286-CIV, 2010 WL 4941456 (S.D. Fla. Nov. 30, 2010), plaintiff alleged a loan modification agreement, based on making "*four* payments," the breach occurred "[a]fter making *three* payments." Id. at *1 (emphasis added). Thus, there was only partial performance. Similarly, MY. P.I.I., LLC v. Tognum Am., Inc., 14-60701-CIV, 2016 WL 7626201 (S.D. Fla. Mar. 31, 2016), likewise refers exclusively to part and not full performance. Id. at *7 (emphasis added) ("the doctrine of **part performance** to excuse a failure to comply with the Statute of Frauds is not available in Florida to actions solely for money damages").  In fact, MY. P.I.I relies on 101 Monument Rd., Inc. v. Delta Prop. Mgmt., Inc., 993 So. 2d 181 (Fla. 4th DCA 2008), a case that explicitly allowed one party to recover monetary damages when it *fully* performed. Id. at 182 (emphasis added) ("as **full performance by one party** to the contract works to remove an oral agreement from the purview of the statute of frauds . . . the oral agreement . . . is enforceable, and the award of **monetary damages** . . . for breach is proper").

In Topp, Inc. v. Uniden Am. Corp., 483 F. Supp. 2d 1187 (S.D. Fla. 2007) the district court relied on plaintiff's failure to "distinguish[] or address[]" Eclipse Medical, Inc., v. American Hydro-Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1346 (S.D.Fla.1999) to find that the performance exception is limited to equitable cases. Id. at 1195. But Eclipse Medical specifically

3

concluded that "[b]ecause Plaintiffs here seek to obtain a remedy at law rather than equity, the **part performance** exception does not apply . . . ." Eclipse Med., 262 F. Supp. 2d at 1346 (emphasis added). Thus, unlike the plaintiff in Topp, who failed to distinguish or address Eclipse Medical, by failing to raise the distinction of full vs. part performance. OJC has raised this distinction and cited ample authority for it.[1] Similarly, in Roberts v. Stutman, 09-80490-CIV, 2011 WL 13225074, at *4 (S.D. Fla. Jan. 19, 2011), the district court relies on part performance cases. Specifically, Elsberry v. Sexton, 61 Fla. 162 (1911) (emphasis added) ("**Part performance** of such a contract tract is a ground of relief in equity only"), and Dwight, 947 F.2d at 459 (emphasis added) ("the **part performance** doctrine is inapplicable").

### A. Plaintiff adequately alleges full performance

Tacitly recognizing that OJC's first amended complaint ("FAC") should not have been dismissed if fully performed, Ashley contends OJC does not allege full performance. DE 30 at 4. But as discussed in OJC's motion, this is inaccurate. OJC expressly stated that it had "performed its obligations to Ashley." D.E. 11 at ¶ 36. At the motion to dismiss stage, when all reasonable inferences must be called in OJC's favor, this allegation alone plainly suffices to constitute allegations of full performance. Furthermore, OJC's motion lists several other allegations of performance that when read together clearly indicate OJC fully performed. D.E. 29, at 5-7.

In sum, Ashley's argument has no merit because it seeks to inappropriately shift the burden of a statute of frauds defense onto OJC. The statute of frauds, however, is an affirmative defense that OJC does not have to negate on the face of its complaint. La Grasta v. First Union Sec., Inc.,

---

[1] Thus, while Topp is actually dealing with claims of "full performance," the Court's decision is based exclusively on "partial performance" precedent, and the outcome (as the Topp court stated) is solely based on the litigants' failure to raise the distinction before the court. To be sure, Topp cites no case or authority for the proposition that the **full** performance exception is also limited to cases in equity – in that regard its holding would be making law contrary to the numerous Florida DCA cases OJC has cited, and contrary to this Court's own precedent.

4

358 F.3d 840, 845 (11th Cir. 2004).  Thus, so long as the complaint's allegations could mean OJC fully performed, this Court cannot dismiss Plaintiff's claims based on the statute of frauds. Id. (Plaintiff need not negate affirmative defenses); D.E. 27, at 11 n6 (statute of frauds can only bar complaint if it shows the "conclusive applicability of such defense"); Wilson v. Strong, 156 F.3d 1131, 1133 (11th Cir. 1998) (all reasonable inferences in Plaintiff's favor).

In a final desperate attempt to convince this Court not to reconsider its prior decision to conform with its own prior decision, decisions of the Eleventh Circuit, and numerous other Florida District Courts of Appeal, Ashley fabricated an obligation OJC never undertook and then argued OJC could not complete this "obligation" within a year. Specifically, Ashley claims OJC couldn't have fully performed "the allegation that Plaintiff would continue to sell Ashley's products for the entire 2018 calendar year." [DE 30, at 4].  But OJC never undertook such an obligation. Some of the agreements, placed an obligation on Ashley (among other obligations) to sell to OJC for the entire 2018 calendar year. They did not, however, place an obligation on OJC to sell for the entire calendar year. Said differently, Ashley tries to change a *benefit* OJC was to receive into an *obligation* to perform. It cannot do so.

At the end of the day, OJC promised investments and fully performed on its promises. In contrast, Ashley breached its promises and then tried to hide behind the statute of frauds. But this is the exact situation that this Court (and others) have repeatedly held constitutes an exception to the statute of frauds. S. Miami Holdings, 2011 WL 13220688; Burke v. Napieracz, 674 So. 2d 756, 758 (Fla. 1st DCA 1996) ("when a party to an oral contract has fully performed . . . the statute of frauds may not be employed as a defense"); McDonough v. Greer, CV 14-61526-CIV, 2015 WL 12532634, at *4 (S.D. Fla. Sept. 18, 2015) ("when an oral agreement has been fully performed, the party who received the benefit of that full performance cannot avoid its obligation under contract by invoking the statute of frauds"). Any other result is unfair and manifest error.

## II. This Court committed manifest error when it found as a matter of law that OJC couldn't amend to plead unjust enrichment

Ashley asserts that OJC's arguments over its unjust enrichment claim are merely "the same allegations already considered." D.E. 30, at 8. But OJC's arguments could not have already been considered because they were raised for the first time on reconsideration after the Court issued its opinion and misapprehended Plaintiff's ability to allege damages. OJC then provided a mathematical example demonstrating how it **can** amend to add proper damages. Such arguments are clearly appropriate for reconsideration. *Sanzone v. Hartford Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007). Furthermore, Ashley's response that OJC shouldn't be entitled to amend after a dismissal with prejudice misses the point. OJC's argument is that this Court shouldn't have dismissed with prejudice **in the first place** because amendment wouldn't have been futile, and therefore a dismissal with prejudice was manifest error that should be corrected on reconsideration.

## III. Failing to sever out the unenforceable promises and instead striking each agreement in its entirety was a manifest error of law

In its motion for reconsideration, OJC argued this Court should have severed the unenforceable portions of the agreements, instead of invalidating each agreement in its entirety. Ashley's response fails to cite a single authority in opposition to this substantive argument, apparently conceding it. Instead, Ashley's argues that (1) this Court should ignore its error for a procedural reason, i.e., because OJC waived the argument by allegedly failing to raise it until its motion for reconsideration. And (2) Ashley quibbles with OJC's assertion of what the primary purpose of the contracts were. Specifically, Ashley claims the primary purpose was to keep the relationship open through the end of 2018, not for OJC to recover its investments. D.E. 30, at 7. Both arguments must be rejected.

As to the first, OJC did argue the essence of the severability argument. Specifically, OJC

6

made it abundantly clear that each agreement consisted of two distinct and separate promises: (1) allowing OJC to sell through the end of the 2018 calendar year and (2) Ashley's promise to provide sufficient discounts so that OJC could recoup its investment. D.E. 18, at 10-11, 18. Next, Plaintiff specifically argued that even if the statute of frauds barred the first promise of each agreement, "the statute cannot bar the second agreement to provide sufficient merchandise to turn a profit as that could've possibly been performed within a year." D.E. 18, at 12. Thus, OJC expressly asked the Court to enforce the second promise even if the first is barred. All OJC "failed" to do was provide specific case cites to "severability" cases. But that's not required to avoid waiver. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

As to the second issue, the primary purpose of the agreement is a question of fact. When parties suggest different interpretations for the meaning of a contract, it becomes a question of fact to be determined by their intent. In re Ranch House Motor Inn Intern., Inc., 335 B.R. 894, 898 (Bankr. M.D. Fla. 2006) (citing AT&T Wireless Services of Fla., Inc. v. WCI Communities, Inc., 932 So.2d 251, 2005 WL 2140234, at *2 (Fla. 4th DCA Sept.7, 2005)). Here, while OJC repeatedly points to the recovery of investment as the primary intent, Ashley suggests that sales through the end of 2018 was the primary intent. As such, this issue cannot be resolved at the motion to dismiss stage.[2]

### A. No separate consideration is required for severability

Ashley contends that in order to sever promises, each promise must have separate

---

[2] But if the Court were inclined to delve into this issue, OJC's asserted interpretation makes much more sense. The promise to recoup your investment is worth significantly more than a promise to keep sales open through the end of 2018. Why would the more valuable promise, be the subsidiary one?

7

consideration. D.E. 30, at 15. But the case Ashley cites for this proposition simply doesn't say that. Instead, Local No. 234 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Henley & Beckwith, Inc., 66 So.2d 818 (Fla. 1953) states that illegal clauses may be severed when the

> illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other. Local No. 234., 66 So. 2d 818 at 821–22.

There isn't a requirement that each severable promise have separate consideration. Id. Here, the purpose of all the agreements was for OJC to invest, and for Ashley to (1) ensure OJC recovered its investment and (2) hold open the relationship until the end of 2018 as a "bonus" to OJC so it might profit. As between these two agreements, however, the first is not dependent on the second. And if the second is severed as illegal, "there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." Id. Thus, this Court's failure to sever the illegal terms as OJC requested was manifest error.

### IV. This Court must freely grant leave to amend, even after dismissal

OJC cited to *binding precedent* holding unequivocally that a district court's discretion to deny leave to amend is severely restricted even after a judgement of dismissal. Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988); See Higdon v. Fulton Cty., Georgia, No. 17-11154, 2018 WL 3860472, at *4 (11th Cir. Aug. 14, 2018) (unpublished).[3]

In response, Ashley cited to *unpublished* and *non-binding* precedent that doesn't directly contradict OJC's authorities. In fact, the only published decision Ashley cites, Czeremcha v. Int'l

---

[3] Inexplicably, Ashley claims that "it is not clear whether the district court in Higdon had already entered an order closing the case at the time the [motion] was filed." D.E. 30, at 8. But a simple docket search reveals that an order closing the case was entered prior to the motion for reconsideration. See United States District Court for the Northern District of Georgia, 1:15-cv-03001-TWT, DE 30 (dismissal entered) and DE 32 (motion for reconsideration).

Ass'n of Machinists & Aerospace Workers, AFL-CIO, 724 F.2d 1552 (11th Cir. 1984), merely stands for the proposition that "after a complaint is dismissed the right to amend under Rule 15(a) terminates." This says nothing about the standard to apply when deciding motions to amend under Rule 59, the issue OJC has cited binding precedent on. In fact, Czeremcha expressly recognized that the "plaintiff may also move for relief under Rule[] 59 . . . on the basis of proposed amendments even after the action is dismissed and final judgment is entered." Id. at 1556. The balance of Ashley's authorities (all unpublished) either regurgitate Czeremcha or similarly don't address the standard applicable to a motion for leave to amend under Rule 59(e). For example, David Johnson Construction Co., Inc. v. Cleaning Consulting Inc., 772 Fed. Appx. 934 (11th Cir. 2018) (unpublished), simply held the district court did not abuse its discretion by denying leave to amend because plaintiff's motion did not "allege manifest errors of law" and did nothing more than "ask the district court to reexamine an unfavorable ruling."

V.     **OJC's proposed amendment does not allege "alternate facts"**

Ashley points to a few areas in the proposed second amended complaint ("PSAC") to suggest that Plaintiff attempts to plead "alternate facts." But Ashley's histrionics are simply unjustified.  Ashley justifies its ridiculous accusation by pointing out that (1) OJC removed the January and December meeting and (2) OJC has now expressly divided up Ashley's promises into primary and subsidiary agreements. But neither amendment contradicts the FAC.

As an initial matter, OJC removed these meetings from the PSAC because OJC concedes no binding agreement was reached in January and the December agreement was unenforceable under the statute of frauds. Deleting these agreement doesn't contradict the FAC, it simply demonstrates an acceptance of this Court's ruling. Furthermore, OJC's allegations in the PSAC clarified that each agreement resulted in two promises, one primary, the other subsidiary. The FAC never contained any allegations about which agreement was primary or subsidiary. It simply stated

9

that the two agreements had been reached. Thus, contrary to Ashley's assertions, simply clarifying the nature of the promises as they relate to each other, is not a change in facts, it's a clarification of fact. In re W. Caribbean Airways Crew Members, 07-22015-CIV, 2010 WL 11601240, at *1 (S.D. Fla. Mar. 15, 2010) (Ungaro, J.) ("the proposed amendments simply clarify affirmative defenses already pled"). Finally, OJC's removal of the fact that Ashley promised it would recoup its investment "in 2018" doesn't affect the statute of frauds analysis (if anything the removed language helped defeat the statute). But more importantly, OJC maintains its position unequivocally that it was Ashley's intention this recoupment would occur in 2018. If that was ever in doubt, OJC clarifies again here.

### VI. The proposed amendment properly alleges course of dealing

Ashley challenges the PSAC's allegations of a pre and post-contract course of dealing. But the PSAC alleges a relationship that lasted four years and consisted of thirteen million dollars in sales before the contracts were agreed to. D.E. 29-1, ¶¶ 7-9. Similarly, it alleges the contracts consummated between July and the end-of-2017 (D.E. 29-1, ¶¶ 10-21) and lasted from then until February 2018. D.E. 29-1, ¶ 25.

For the forgoing reasons, Plaintiff respectfully requests this Court grant its motion for reconsideration.[4]

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff respectfully requests that oral argument be held on this Motion as Plaintiff believes oral argument will assist the Court in understanding the complex facts and issues. Plaintiff estimates argument would take no more than 30 minutes.

---

[4] In its response, Ashley re-argues many of the same arguments it previously raised in the motion to dismiss. Plaintiff addressed each one of those claims in depth in its opposition to Ashley's motion. See, e.g., D.E. 18, at 10-20 (section IV-VI).

Dated November 6, 2018                    Respectfully submitted,

                                                          By: *s/ Velvel (Devin) Freedman*
                                                              Velvel (Devin) Freedman, Esq.
                                                              Florida Bar No. 99762
                                                              BOIES SCHILLER FLEXNER LLP
                                                              100 S.E. 2nd Street, Suite 2800
                                                              Miami, FL 33131
                                                              Tel: 305-539-8400
                                                              Fax: 305-539-1307
                                                              E-Mail: vfreedman@bsfllp.com

                                                              Shlomo Y Hecht
                                                              Florida Bar No. 127144
                                                              SHLOMO Y. HECHT, P.A.
                                                              11651 Interchange Cir S
                                                              Miramar, FL 33025
                                                              Phone: 954-861-0025
                                                              Fax: 615-413-6404
                                                              Email: sam@hechtlawpa.com

                                                          ***Counsel for Plaintiff, OJ Commerce LLC***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on November 6, 2018 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

                                                              *s/ Velvel (Devin) Freedman*
                                                              Velvel (Devin) Freedman